Case 1:06-cv-00856-RBW    Document 11-8    Filed 09/27/2006    Page 1 of 50

1.  MIDN 4/C ██████ see CAS-REP 028-04.
2.  MIDN 4/C ██████ returned from sailing cruise for treatment with Dr. Demaio, currently berthing in 6th Wing Medical and is on 10th Company's 0800.
3.  MIDN 3/c ██████ 6th company was caught trying to drive through Gates 8 and 3 in a car with officer DOD decals. Midn ██████ was in civilian clothes at the time of the offense.
4.     MIDN 1/C ██████ is on intersessional liberty and will not call in TAPS from the Naval Station until he returns on Wednesday, 19MAY04.
5.  MIDN 1/C Stainback did not call in for taps.
6.  A leak in the ceiling in Main Office Hallway on Deck 4-1 was reported to Public Works on 13MAY04.
7.  Leaky chill water pipes in 7th Wing Basement were reported to Public Works and the 1st LT was notified.
8.  MIDN 4/c ██████ forgot her passport and will not be going to Korea with the Korean American Midn Club. She is accounted for in her company 0800 report.

Submitted:                    Reviewed:
    Off-Going MOOW                    Off-Going OOW
    MIDN 2/C Spring, USN       MAJ Finley, USMC


    On-Coming MOOW                    On Coming OOW
    MIDN 2/C Adams, USN       LT Fox, USN

**From:**     Richard Davis
**To:**       Waters, Mike
**Date:**     5/19/04 3:38PM
**Subject:**  Re: MIDN STAINBACK and AACRAO materials regarding transcripts

I will need a formal request in writing to place in the student's record before I can undertake the changes. Thanks Richard Davis

>>> Mike Waters 5/19/2004 3:27:01 PM >>>
Mr. Davis: I understand your concerns regarding truthfully recording and reporting all grades for MIDN Stainback and every MIDN. I note that MIDN Stainback's granted request to withdraw from ES419; FE437; FE475C; and NS403, permission transmitted to him from an official source at USNA and upon which he could rely to assume a "W" would be entered in his record for those courses would equate to his not "officially" attempting the course. Of course mere attendance at a course does not constitute an attempt (as someone could sit in a course all year, take a final and otherwise participate; but would not be given a grade by your office).

The SUPT, the Dean and the CMDT concurred MIDN Stainback was authorized to withdraw from those classes and his transcript should be so annotated.

I note, for example, this sword cuts both ways. I am sure MIDN Stainback will contact me in the future to ask he get credit for attending ES419 (where he received a "C") and NS403 (where his "I" is a bit of a mystery as his record indicates he passed the course with a "B" in his final). He will want these grades to transfer them to another university. However, he did ask to withdraw from the courses, was authorized to withdraw, so his good performance in the courses was also not, in my mind, an "official" attempt at the course and he must be given a "W."

Thanks for your looking into this matter.

V/R Mike


MICHAEL A. WATERS
CAPT, JAGC, U.S. Navy
Staff Judge Advocate
United States Naval Academy
Superintendent's Office

(Ph) 410-293-1564
(Fax) 410-293-0005
(Cell) 410-562-4616
(DSN prefix) 281


>>> Frederic Davis 5/19/2004 12:55:17 PM >>>
Dear Captain Waters,

Forwarded as additional information related to my last note.

-fid

>>> Richard Davis 5/19/2004 12:15:27 PM >>>
While thinking about what arrangements may be in place for Stainback I turned to the guidelines under which we operate to see this more clearly.

From the document relating to transcripts:                               00252

"All courses officially attempted, rather than only courses completed or passed, should be listed. ....Grades of other marks for all attempted courses should be recorded; failing and incomplete grades should not be omitted. "

"...it is the responsibility of the issuing institution to be certain that the document transmitted as a transcript is appropriate for the use intended, that it contains at least the essential data elements specified in this publication, and that it is consistent with the legal guidelines under which the institution operates."

I hope the wording used in any document directing my actions is chosen carefully so that we are not in violation of any of the regulations under which we operate. To see this suggested action from a slightly different point of view imagine that this is a prime athlete who still has eligibility remaining and is envisioning playing for another school. Could the identical action for an athlete possibly cause the NCAA any concern? I continue to have an uncomfortable feeling about changing completed course to make it appear they were not completed. But that's part of my job.

Recall when B.S. directed an OOM be changed? It was not done and life went on.

**CC:**           Davis, Frederic

# Conduct Offenses

## Matthew Kilpatrick Stainback/046582/06

| | |
|---|---|
| **Case Number:** | 043776 |
| **Alpha:** | 046582 |
| **Name:** | Matthew Kilpatrick Stainback |
| **Company:** | 06 |
| **Ac Yr Ending:** | 2004 |
| **Semester:** | SPRING |
| **Commit Date:** | 06-MAY-2004 |
| **Creation Date:** | 07-MAY-2004 |
| **Created By:** | M046390 |
| **Level Awarded:** | MINOR |
| **Primary Offense:** | 1806    MINOR    ABSENT WITHOUT AUTHORITY, THROUGH NEGLIGENCE, FROM MILI |
| **Secondary Offense(s):** | |
| **Other Cases Awaiting Adjudication:** | 042561, 043839, 043814, 043820 |
| **Reporter Type:** | MIDSHIPMAN |
| **Status:** | UNDER INVESTIGATION |
| **PIO Assigned:** | |
| **Other PIO:** | |
| **Date PIO Notified:** | |
| **PIO Completion Date:** | |
| **PIO Status:** | UNASSIGNED |
| **Incident Summary:** | MIDN STAINBACK FAILED TO CALL IN FOR TAPS LAST NIGHT. |
| **Validated:** | NO |
| **Adjudicator:** | |
| **Award Date:** | |
| **Commandant Hearing Date:** | |

00254

Case 1:06-cv-00856-RBW     Document 11-8     Filed 09/27/2006     Page 5 of 50

| | Awarded | Suspended | In Effect For | End Date | Deferred | Deferred Date | Vacated | Vacated Date |
|---|---|---|---|---|---|---|---|---|
| Restriction: | (Days) | (Days) | (Months) | | NO | | NO | |
| Tour Type: | | | (Months) | | NO | | NO | |
| Loss of Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Loss of Car Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Lost Leave: | (Months) | (Months) | (Months) | | NO | | NO | |
| Extra Duty: | (Hours) | (Hours) | (Months) | | NO | | NO | |
| Conduct/Honor Probation: | (Months) | | | | | | | |
| Remediation Award: | (Months) | | | | | | | |

**Related Case Commit Date:**

**Award Comment:**

**Accussed Midshipmen Statement:**

**Rights Acknowledged:**

**Primary Offense Plea:**

**Plead By:**

**Plead Date:**



00255

Case 1:06-cv-00856-RBW     Document 11-8     Filed 09/27/2006     Page 6 of 50

# Conduct Offenses

## Matthew Kilpatrick Stainback/046582/06

| | |
|---|---|
| **Case Number:** | 043814 |
| **Alpha:** | 046582 |
| **Name:** | Matthew Kilpatrick Stainback |
| **Company:** | 06 |
| **Ac Yr Ending:** | 2004 |
| **Semester:** | SPRING |
| **Commit Date:** | 13-MAY-2004 |
| **Creation Date:** | 14-MAY-2004 |
| **Created By:** | JROGERS |
| **Level Awarded:** | MINOR |
| **Primary Offense:** | 1806    MINOR    ABSENT WITHOUT AUTHORITY, THROUGH NEGLIGENCE, FROM MILI[ |
| **Secondary Offense(s):** | |
| **Other Cases Awaiting Adjudication:** | 042561, 043839, 043776, 043820 |
| **Reporter Type:** | OFFICER |
| **Status:** | UNDER INVESTIGATION |
| **PIO Assigned:** | |
| **Other PIO:** | |
| **Date PIO Notified:** | |
| **PIO Completion Date:** | |
| **PIO Status:** | UNASSIGNED |
| **Incident Summary:** | MIDN STAINBACK DID NOT CALL IN FOR TAPS ON THE NIGHT OF MAY 13. |
| **Validated:** | NO |
| **Adjudicator:** | |
| **Award Date:** | |
| **Commandant Hearing Date:** | |

00256

| | Awarded | Suspended | In Effect For | End Date | Deferred | Deferred Date | Vacated | Vacated Date |
|---|---|---|---|---|---|---|---|---|
| Restriction: | (Days) | (Days) | (Months) | | NO | | NO | |
| Tour Type: | | | (Months) | | NO | | NO | |
| Loss of Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Loss of Car Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Lost Leave: | (Months) | (Months) | (Months) | | NO | | NO | |
| Extra Duty: | (Hours) | (Hours) | (Months) | | NO | | NO | |
| Conduct/Honor Probation: | (Months) | | | | | | | |
| Remediation Award: | (Months) | | | | | | | |

**Related Case Commit Date:**

**Award Comment:**

**Accussed Midshipmen Statement:**

**Rights Acknowledged:**

**Primary Offense Plea:**

**Plead By:**

**Plead Date:**



00257

# Conduct Offenses

## Matthew Kilpatrick Stainback/046582/06

| | |
|---|---|
| **Case Number:** | 043820 |
| **Alpha:** | 046582 |
| **Name:** | Matthew Kilpatrick Stainback |
| **Company:** | 06 |
| **Ac Yr Ending:** | 2004 |
| **Semester:** | SPRING |
| **Commit Date:** | 14-MAY-2004 |
| **Creation Date:** | 15-MAY-2004 |
| **Created By:** | M041578 |
| **Level Awarded:** | MINOR |
| **Primary Offense:** | 1806    MINOR    ABSENT WITHOUT AUTHORITY, THROUGH NEGLIGENCE, FROM MILIT |
| **Secondary Offense(s):** | |
| **Other Cases Awaiting Adjudication:** | 042561, 043839, 043776, 043814 |
| **Reporter Type:** | MIDSHIPMAN |
| **Status:** | UNDER INVESTIGATION |
| **PIO Assigned:** | |
| **Other PIO:** | |
| **Date PIO Notified:** | |
| **PIO Completion Date:** | |
| **PIO Status:** | UNASSIGNED |
| **Incident Summary:** | MIDSHIPMAN STAINBACK WAS CHECKED INTO BANCROFT HALL FOR THE NIGHT OF 14MAY TO SIGN TAPS IN MAIN OFFICE. |
| **Validated:** | NO |
| **Adjudicator:** | |
| **Award Date:** | |
| **Commandant Hearing Date:** | |

00258

| | Awarded | Suspended | In Effect For | End Date | Deferred | Deferred Date | Vacated | Vacated Date |
|---|---|---|---|---|---|---|---|---|
| Restriction: | (Days) | (Days) | (Months) | | NO | | NO | |
| Tour Type: | | | (Months) | | NO | | NO | |
| Loss of Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Loss of Car Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Lost Leave: | (Months) | (Months) | (Months) | | NO | | NO | |
| Extra Duty: | (Hours) | (Hours) | (Months) | | NO | | NO | |
| Conduct/Honor Probation: | (Months) | | | | | | | |
| Remediation Award: | (Months) | | | | | | | |

**Related Case Commit Date:**

**Award Comment:**

**Accussed Midshipmen Statement:**

**Rights Acknowledged:**

**Primary Offense Plea:**

**Plead By:**

**Plead Date:**



00259

# Conduct Offenses

## Matthew Kilpatrick Stainback/046582/06

| | |
|---|---|
| **Case Number:** | 043839 |
| **Alpha:** | 046582 |
| **Name:** | Matthew Kilpatrick Stainback |
| **Company:** | 06 |
| **Ac Yr Ending:** | 2004 |
| **Semester:** | SPRING |
| **Commit Date:** | 12-MAY-2004 |
| **Creation Date:** | 17-MAY-2004 |
| **Created By:** | KUHRT |
| **Level Awarded:** | MAJOR |
| **Primary Offense:** | 0501    MAJOR    VIOLATION ORAL OR WRITTEN ORDERS ADDRESSED TO AN INDIVII |
| **Secondary Offense(s):** | 1806    MINOR    ABSENT WITHOUT AUTHORITY, THROUGH NEGLIGENCE, FROM MILIT |
| **Other Cases Awaiting Adjudication:** | 042561, 043776, 043814, 043820 |
| **Reporter Type:** | MIDSHIPMAN |
| **Status:** | UNDER INVESTIGATION |
| **PIO Assigned:** | |
| **Other PIO:** | |
| **Date PIO Notified:** | |
| **PIO Completion Date:** | |
| **PIO Status:** | UNASSIGNED |
| **Incident Summary:** | ON 12 MAY STGCS(SW) KUHRT RECEIVED A CALL FROM THE NAVAL STATION BEQ MANAG HIM THAT THERE WAS A FEMALE IN MR. STAINBACK'S ROOM IN BLDG 168 AND THAT HIS R WAS BRIEFED ON THE BEQ REGULATIONS AND WAS GIVEN A COPY HIS RESPONSIBILITIES HAS ALSO NOT CALLED IN FOR TAPS ON THE FOLLOWING DATES: 6,11,13,14, AND 16-17 M/ |
| **Validated:** | NO |
| **Adjudicator:** | |
| **Award Date:** | |
| **Commandant Hearing Date:** | |

00260

| | Awarded | Suspended | In Effect For | End Date | Deferred | Deferred Date | Vacated | Vacated Date |
|---|---|---|---|---|---|---|---|---|
| Restriction: | (Days) | (Days) | (Months) | | NO | | NO | |
| Tour Type: | | | (Months) | | NO | | NO | |
| Loss of Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Loss of Car Privs: | (Days) | (Days) | (Months) | | NO | | NO | |
| Lost Leave: | (Months) | (Months) | (Months) | | NO | | NO | |
| Extra Duty: | (Hours) | (Hours) | (Months) | | NO | | NO | |
| Conduct/Honor Probation: | (Months) | | | | | | | |
| Remediation Award: | (Months) | | | | | | | |

**Related Case Commit Date:**

**Award Comment:**

**Accussed Midshipmen Statement:**

**Rights Acknowledged:**

**Primary Offense Plea:**

**Plead By:**

**Plead Date:**

Help   Return   MIDS Home   General Academic   Academic Center

Academic Dean   Commandant's Staff   Department Chair   Faculty   Battalion

Midshipmen   PRSB   MDPersonnel Office   PRSS Services   Tools Z

Physical Education   Register

00261

Personal Information     Academic Information     Military Information

# Academic Information

Absences and Excuses     Current Semester Grades     QPRs and Standings     Final Course Grades
MAPRs     Special MAPRs

## Schedule

| Title | Course | Section | Meeting Time | Building Room | Primary Instructor |
|-------|--------|---------|--------------|---------------|--------------------|
| PRINCIPLES OF PROPULSION | EM300 | 1111 | MWF1,T12 | EWD01 | TUTTLE |
| WEAPONS | ES419 | 2122 | MWF2,R12 | MU001 | SUPKO |
| MONETARY THEORY AND POLICY | FE437 | 5001 | MWF5 | EWH01 | CUNNINGHAM |
| RESEARCH SEMINAR | FE475C | 5043 | TR10 | SA101 | SWOPE |
| THE PSYCHOLOGY OF CRIME | NL313 | 3001 | TR9 | LU101 | RALPH |
| JUNIOR OFFICER PRACTICUM (AVIATION) | NS403 | 6122 | MF6,F34 | TBA | ABRAMS |
| KAYAKING | PE422 | 0411 | M4 | MH NATATORIUM | BOYLE |

**Total Credits:** 20

**Free Periods:** M 37 T 7 W 3467 R 7 F 7 S 1234567

Back to Top

# Absences and Excuses

00262

| Course | Section | Meeting Da... | Period | Absence Category | Minutes | Excu... Category | Excuse | Minutes |
|--------|---------|---------------|--------|------------------|---------|------------------|--------|---------|
| EM300 | 1111 | 25-FEB-2004 | 1 | ABSENT | | ABSENT | UA | |
| EM300 | 1111 | 26-APR-2004 | 1 | ABSENT | | | | |
| EM300 | 1111 | 27-APR-2004 | 1 | ABSENT | | | | |
| ES419 | 2122 | 11-FEB-2004 | 2 | ABSENT | | ABSENT | WATCH (BRIGADE) | |
| ES419 | 2122 | 25-FEB-2004 | 2 | TARDY | 5 | | | |
| ES419 | 2122 | 29-APR-2004 | 2 | ABSENT | | | | |
| ES419 | 2122 | 29-MAR-2004 | 2 | ABSENT | | | | |
| FE475C | 5043 | 15-APR-2004 | 10 | ABSENT | | | | |
| NS403 | 6122 | 23-FEB-2004 | 6 | ABSENT | | | | |
| NS403 | 6122 | 23-APR-2004 | 3 | ABSENT | | | | |
| NS403 | 6122 | 02-FEB-2004 | 6 | ABSENT | | | | |
| NS403 | 6122 | 06-FEB-2004 | 3 | ABSENT | | | | |
| NS403 | 6122 | 06-FEB-2004 | 6 | ABSENT | | | | |
| NS403 | 6122 | 09-FEB-2004 | 6 | ABSENT | | | | |
| NS403 | 6122 | 13-FEB-2004 | 3 | ABSENT | | | | |
| NS403 | 6122 | 13-FEB-2004 | 6 | ABSENT | | | | |
| NS403 | 6122 | 20-FEB-2004 | 3 | ABSENT | | | | |
| NS403 | 6122 | 20-FEB-2004 | 6 | ABSENT | | | | |

**Absent:** 17
**Tardy:** 1
**Left Early:** 0

Back to Top

# Spring 2004 Grades

| Course | Section | 6 Week | 12 Week | End of Term | Exam | Course |
|--------|---------|--------|---------|-------------|------|--------|
| EM300 | 1111 | C | C | C | F | D |
| ES419 | 2122 | C | C | C | C | C |
| FE437 | 5001 | A | B | B | F | D |
| FE475C | 5043 | B | D | F | | F |
| NL313 | 3001 | A | B | C | C | C |
| NS403 | 6122 | F | F | D | B | I |
| PE422 | 0411 | | | | | |

*(handwritten annotations to right of table:)*
PROPULSION
WEPS
MONETARY THEORY
RESEARCH SEM
PSYCH OF CRIME
PRACTICUM

| Ac Yr Ending | Sem | SQPR | Proj CQPR | CQPR |
|--------------|-----|------|-----------|------|
| 2004 | SPRING | 1.85 | 2.42 | |

Back to Top

# QPRs and Standings

00263

| Ac Yr Ending | Sem | Class | SQPR | CQPR | Sem MQPR | Cum MQPR | Class Size | GOM | AOM | MOM | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2001 | SUMMER | 4/C | 0 | 0 | 0 | 0 | | | | | |
| 2001 | SUMMER | 4/C | 0 | 0 | 0 | 0 | | | | | |
| 2001 | FALL | 4/C | 2.25 | 2.25 | 3.13 | 3.13 | 1138 | 813 | 893 | 741 | |
| 2001 | SPRING | 4/C | 2.44 | 2.35 | 2.72 | 2.89 | 1127 | 788 | 831 | 662 | |
| 2002 | FALL | 3/C | 2.32 | 2.34 | 2.74 | 2.84 | 1096 | 775 | 879 | 747 | |
| 2002 | SPRING | 3/C | 2.38 | 2.35 | 2.44 | 2.73 | 1071 | 809 | 884 | 829 | |
| 2003 | SUMMER | 2/C | 2 | 2.43 | 0 | 2.73 | | | | | |
| 2003 | FALL | 2/C | 1.73 | 2.31 | 2.51 | 2.69 | 1026 | 878 | 901 | 853 | |
| 2003 | SPRING | 2/C | 1.74 | 2.2 | 1.97 | 2.56 | 1019 | 950 | 952 | 951 | BOARD CASE - RETAINED AFTER APPEAL |
| 2004 | SUMMER | 1/C | 4 | 2.36 | 0 | 2.56 | | | | | |
| 2004 | FALL | 1/C | 2.93 | 2.43 | 1.92 | 2.47 | 1018 | 954 | 853 | 991 | Probation |
| 2004 | SPRING | 1/C | 1.85 | | 1.14 | 2.36 | 0 | 0 | 0 | 0 | BOARD CASE - PENDING |
| 2005 | FALL | 1/C | | | | | | | | | Probation |

Back to Top

# Final Course Grades

| Ac Yr Ending | Sem | Courses and Grades |
|---|---|---|
| 2001 | SUMMER | |
| 2001 | SUMMER | SM121 V |
| 2001 | FALL | HE111W D SM122 C FP130 B PE101 A NL112 C SC111 B SB251 V A101 B X101 A |
| 2001 | SPRING | PE102 A NS100 B HH104 B HE112W D SM221 B SC112 C A102 C X102 A |
| 2002 | FALL | SP211 C HH205 D NN204 D FE210 B FG101 A SM230 B PE201 A X201 A A201 B |
| 2002 | SPRING | NE203 C FG102 A FE341 A PE202 A SP212 C HH206 F A202 C X202 A |
| 2003 | SUMMER | HH206 C |
| 2003 | FALL | PE301 A EE301 D FG201 B FE311 D NS310 C FE363 C A301 C X301 B |
| 2003 | SPRING | NL302 B EE302 F EM300 F FG202 B FE331 B FE334 A FE310 B A302 C X302 F |
| 2004 | SUMMER | EE302 A |
| 2004 | FALL | NL211 A PE406 B FE220 C NL400 B EN200 C FE431 A A401 C X401 F |
| 2004 | SPRING | EM300 D FE475C F NL313 C FE437 D ES419 C PE422 NS403 I |
| 2005 | FALL | |

Back to Top

# MAPRs

00264

| Course | Course Title | Section | Mark Period | Created By | Creation Date |
|---|---|---|---|---|---|
| FE310 | ECONOMIC GEOGRAPHY | 2001 | END OF TERM | CANTRELL | 10-MAY-2003 |
| FE331 | ECONOMIC STATISTICS | 5041 | END OF TERM | BOWMAN | 12-MAY-2003 |
| FG202 | INTERMEDIATE GERMAN II | 4001 | END OF TERM | FLETCHER | 10-MAY-2003 |
| HH205 | WESTERN CIVILIZATION: CULTURE TO 1776 | 5003 | 12 WEEK | CAMPBELG | 09-NOV-2001 |
| HH205 | WESTERN CIVILIZATION: CULTURE TO 1776 | 5003 | END OF TERM | CAMPBELG | 20-DEC-2001 |
| HH206 | CIVILIZATION AND THE ATLANTIC COMMUNITY SINCE 1776 | 1001 | 6 WEEK | KOLP | 21-FEB-2002 |
| HH206 | CIVILIZATION AND THE ATLANTIC COMMUNITY SINCE 1776 | 1001 | END OF TERM | KOLP | 11-MAY-2002 |
| HH206 | CIVILIZATION AND THE ATLANTIC COMMUNITY SINCE 1776 | 1001 | 12 WEEK | KOLP | 09-APR-2002 |
| NL302 | LEADERSHIP: THEORY AND APPLICATION | 1034 | END OF TERM | BROOKES | 11-MAY-2003 |
| NS100 | FUNDAMENTALS OF NAVAL SCIENCE | 4112 | 6 WEEK | PETHYBRI | 26-FEB-2001 |
| SP211 | GENERAL PHYSICS I | 2126 | 12 WEEK | SCHNEIDE | 05-NOV-2001 |
| SP212 | GENERAL PHYSICS II | 5531 | 6 WEEK | CORRELL | 22-FEB-2002 |
| SP212 | GENERAL PHYSICS II | 5531 | 12 WEEK | CORRELL | 10-APR-2002 |
| NN204 | NAVIGATION AND PILOTING | 1118 | END OF TERM | KEIL | 26-DEC-2001 |
| HE111W | RHETORIC AND INTRODUCTION TO LITERATURE I | 5002 | 6 WEEK | ESBENSHA | 05-OCT-2000 |
| HE111W | RHETORIC AND INTRODUCTION TO LITERATURE I | 5002 | 12 WEEK | ESBENSHA | 09-NOV-2000 |
| EM300 | PRINCIPLES OF PROPULSION | 3312 | 6 WEEK | SPENCE | 28-FEB-2003 |
| EM300 | PRINCIPLES OF PROPULSION | 3312 | END OF TERM | SPENCE | 12-MAY-2003 |
| EM300 | PRINCIPLES OF PROPULSION | 3312 | 12 WEEK | SPENCE | 09-APR-2003 |
| EE301 | ELECTRICAL FUNDAMENTALS AND APPLICATIONS | 6605 | 12 WEEK | DULLA | 07-NOV-2002 |
| EE301 | ELECTRICAL FUNDAMENTALS AND APPLICATIONS | 6605 | END OF TERM | DULLA | 18-DEC-2002 |
| EE302 | DIGITAL COMMUNICATIONS AND COMPUTER TECHNOLOGY | 1102 | 6 WEEK | DHUTCHIN | 28-FEB-2003 |
| EE302 | DIGITAL COMMUNICATIONS AND COMPUTER TECHNOLOGY | 1102 | 12 WEEK | DHUTCHIN | 07-APR-2003 |
| EE302 | DIGITAL COMMUNICATIONS AND COMPUTER TECHNOLOGY | 1102 | END OF TERM | DHUTCHIN | 09-MAY-2003 |
| NS403 | JUNIOR OFFICER PRACTICUM (AVIATION) | 6122 | 12 WEEK | ABRAMS | 05-APR-2004 |
| FE475C | RESEARCH SEMINAR | 5043 | 12 WEEK | SWOPE | 07-APR-2004 |

Back to Top

# Special MAPRs

No Records returned

Back to Top

00265




Academic Dean | Commandant's Staff | Department Chair | Faculty | Institute

MOS Library | MISO | HR Personnel Office | IDP Schedules | PROPs

Physical Education | Register

00266

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
themccarthyfirm@aol.com

Thomas McCarthy, Jr., PC, *Member*
Thomas McCarthy, Sr., PC, *Member*

Brennan G. McCarthy
*Associate Member*

*Via Telecopier*
*(410) 293-0055*

Captain Michael Waters                                    May 21, 2004
**Superintendent, United States Naval Academy**
Buchanan Road
Annapolis, MD 21402

Re: Midshipman Matthew K. Stainback

Dear Captain Waters:

Further to our recent discussion, I would like to secure for Midshipman Stainback an extension of time in which to submit his memorandum to be included in the Admiral's report to the Secretary of the Navy until Tuesday, May 25, 2004. As we discussed, the extension is requested due to the demands placed on Midshipman Stainback to properly complete his academic obligations since being in front of the Academic Board, and difficulties naturally present in gathering necessary information at this time of the Academic year. I do not believe that an extension of time will prejudice or inconvenience the Academy, since Midshipman Stainback is currently on separation leave, and has returned home to his family in Virginia.

Thank you for your anticipated cooperation and assistance in this matter.

With best wishes I remain,

Very Truly yours,

Thomas McCarthy, Jr.

TMJr.
cc:          Midshipman Matthew Stainback

00267

**From:** &lt;Themccarthyfirm@aol.com&gt;
**To:** &lt;mwaters@usna.edu&gt;
**Date:** 5/24/04 9:49:51 AM
**Subject:** Midshipman Stainback

Mike: I realized this morning that the following letter I sent last week for
an extension of time to submit Midshipman Stainback's memroandum did not
transmit.

Captain Michael Waters          May 21, 2004
United States Naval Academy
Buchanan Road
Annapolis, MD 21402

     Re: Midshipman Matthew K. Stainback

Dear Captain Waters:

    Further to our recent discussion, I would like to secure for Midshipman
Stainback an extension of time in which to submit his memorandum to be included
in the Admiral's report to the Secretary of the Navy until Tuesday, May 25,
2004.   As we discussed, the extension is requested due to the demands placed
on Midshipman Stainback to properly complete his academic obligations since
being in front of the Academic Board, and difficulties naturally present in
gathering necessary information at this time of the Academic year.   I do not
believe that an extension of time will prejudice or inconvenience the Academy,
since Midshipman Stainback is currently on separation leave, and has returned
home to his family in Virginia.

    Thank you for your anticipated cooperation and assistance in this matter.

    With best wishes I remain,

        Very Truly yours,

        Thomas McCarthy, Jr.

TMJr.
cc:    Midshipman Matthew Stainback

**From:**    Mike Waters
**To:**      Themccarthyfirm@aol.com
**Date:**    5/24/04 4:50:09 PM
**Subject:**  EXTENSION OF TIME ICO MIDN 1/C STAINBACK

Mr. McCarthy: I have recevied your request for extension from 18May04-25May04, as we discussed. Your request was verbally approved on 18May04 and this confirms that approval.

To clarify, MIDN Satinback has until close of business 25May04 to submit his written statement or his waiver of that right. If there is no submission by that deadline, his package will be forwarded to the Secretary of the Navy without a written statement from MIDN Stainback.

V/R Mike

MICHAEL A. WATERS
CAPT, JAGC, U.S. Navy
Staff Judge Advocate
United States Naval Academy
Superintendent's Office

(Ph) 410-293-1564
(Fax) 410-293-0005
(Cell) 410-562-4616
(DSN prefix) 281

**CC:**      Olson, Niels

00269

24 MAY 2004

From: First Class Matthew Stainback, USN, 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, Class of 2004
To:     Chief of Naval Personnel
Via:    Superintendent, United States Naval Academy

Subj:  VOLUNTARY RESIGNATION

1.    I hereby tender my voluntary resignation as a midshipman in the United States Naval
      Academy.

2.    I came to the United States Naval Academy with the specific intent to serve my country to
      the best of my abilities.  I am hoping to resign so that I may avoid being discharged, and
      thereby avoid having a mark on my record that will hinder further pursuit of a
      commission in the United States Navy.

3.    The contents of Department of Defense Directive 1304.25, Fulfilling the Military Service
      Obligation; Department of Defense Directive 1332.23, Service Academy Disenrollment;
      SECNAVINST 1532.1A, U.S. Naval Academy Midshipman Disenrollment; and
      NAVMILPERSMAN articles 104015 and 3640415 have been explained to me and I
      understand the military requirements imposed upon me by these directives, and by
      Section 651, Title 10 U.S. Code.

4.    I understand that I have incurred a three-year active duty obligation by entering First
      Class Academic Year.

5.    I understand that submission of this resignation may be prejudicial in the event that I
      subsequently apply for a Navy officer-producing program.  I further acknowledge that
      future enrollment in a Navy-subsidized educational program will be precluded in all but
      unusual circumstances.

6.    I understand that this resignation, whether or not accepted, may only be withdrawn in
      writing and that once I have departed the Naval Academy on separation pending leave it
      may only be withdrawn with the consent of the higher reviewing authority to whom this
      resignation has forwarded or a person in the reviewing chain superior to him.

7.    I am not in debt to the government.

Very Respectfully,

Matthew Stainback
MIDN        USN

00270

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*                                      Brennan C. McCarthy
Thomas McCarthy, Sr., PC, *Member*                                      *Associate Member*

### Hand Delivered

Vice-Admiral Rodney P. Rempt                              May 25, 2004
**Superintendent**
United States Naval Academy
Annapolis, Maryland  21402

### Re:  Midshipman First Class Matthew K. Stainback

Dear Admiral Rempt:

As you are aware, I am assisting Midshipman First Class Matthew K. Stainback in responding to the recommendation for separation originating from the Academic Board, and pending submittal to the Secretary of the Navy.   I have enclosed herewith Midshipman Stainback's memorandum and enclosures to accompany your report and recommendation. I have also submitted for your consideration and approval Midshipman Stainback's voluntary resignation from the Academy.   I respectfully urge you to accept Midshipman Stainback's resignation, in lieu of submitting your report for separation to the Secretary, for the reasons set forth below.

When Midshipman Stainback graduated from Gonzaga high school, he was granted acceptances and scholarships by Virginia Tech, Villanova, and the University of Virginia.   He was also accepted by Johns Hopkins University . Midshipman Stainback, however, has a strong and dedicated desire to serve his county as a military officer, and made acceptance at the Naval Academy his first and foremost desire. As you are aware, Midshipman Stainback suffers from mild attention deficit disorder, for which he is not able to take medications while at the Academy, and consequently, Midshipman Stainback has successfully struggled through four academic years with the challenge of overcoming his focus and distractability issues. Midshipman Stainback's has achieved a final GPA of  2.45.

There can be little serious debate concerning Midshipman Stainback's mediocre performance record.   It is clear that Midshipman Stainback has continuously had difficulty with his personal organization, leading to a series of academic and performance deficiencies. These deficiencies, however, should not reflect a lack of a dedicated and committed attitude of Midshipman Stainback towards his obligations at the Academy.   Midshipman Stainback has

Vice Admiral Rodney P. Rempt
May 25, 2004
Page 2

---

always– and still– wanted to serve his country to the best of his abilities.  While at the Academy, Midshipman Stainback worked diligently to obtain a billet in the Marine Corps, and his desire to be a Marine Corps officer remains unabated.   Should Midshipman Stainback not be able to graduate from the Naval Academy, or receive a commission at this time, he has every intention to complete his studies at a civilian university, and to enter into the officer corps through an OCS program.   The purpose of the voluntary resignation is to allow Midshipman Stainback the fullest opportunity achieve his goal of receiving a commission as an marine or naval officer.

I also respectfully request that you recommend a waiver of the reimbursement obligation for Midshipman Stainback, with a finding that he is physically disqualified, due to his continuing struggle with ADD, or for humanitarian reasons.  Midshipman Stainback's  ADD has presented him with significant– and perhaps insurmountable-- challenges at the Academy, in personal organization and distractability. Despite these problems, Midshipman Stainback has achieved a passing GPA, and achieved other honors and awards relating to his performance. Considering the many demands of the Academy on its midshipmen, which demands require the highest degree of organization and focus, and his ADD challenges, Midshipman Stainback's achievements, such as they are, are remarkable.   The effects of the ADD on Midshipman Stainback's performance can most easily be ascertained by reviewing his performance in the one area where it would not be a factor– physical fitness. Midshipman Stainback's fitness record is exemplary, and clearly demonstrates a determined desire to meet and exceed the Academy's physical fitness requirements.  I suggest that Midshipman Stainback's less noteworthy achievements in academics and performance are not the result of any lesser desire to excel, but a physical inability to pursue such excellence.

Thank you for your careful consideration of these requests.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.
Enclosures

## MEMORANDUM OF MIDSHIPMAN FIRST CLASS MATTHEW K. STAINBACK

**TO:**     The Honorable Gordon R. England
           **Secretary of the Navy**
           100 Navy Pentagon
           Washington, DC 20350-1000

**FROM:**   Thomas McCarthy, Jr.
           **McCarthy & McCarthy, LLC**
           79 Franklin Street
           Annapolis, Maryland 21401
           (410) 268-4016

           Legal counsel to Midshipman First Class Matthew K. Stainback

**DATE:**   May 25, 2004

**SUBJECT:** Memorandum in response to recommendation for discharge from USNA by
            Superintendent dated May 10, 2004.

---

The following is provided in response to the United States Naval Academy Superintendent's
Memorandum Report to the Secretary of the Navy dated May 10, 2004, in the case of
Midshipman First Class Matthew K. Stainback. .

In short, Midshipman First Class Stainback requests that the results of the Academic Board be set
aside. Alternatively, Midshipman First Class Stainback requests that this case be disposed of as
a discharge for physical disability, and that his recoupment be waived based thereon, in
accordance with SECNAVINST 1521.1B.

As a preliminary matter, prior to this semester, Midshipman First Class Stainback had never
received an aptitude grade lower than a C. His grade point average as of the date of his Academic
Board was a 2.43. In short, overcoming attention deficit disorder, Midshipman Stainback's
performance from his Plebe year to mid way through his senior year was considered satisfactory,
and in many respects exemplary. However, on April 27, 2004, *31 days prior to graduation*, the
Academic Board, based solely on the materials submitted by the Commandant and his staff,
found that Midshipman Stainback's performance was no longer satisfactory and recommended
that he be separated from the Brigade.

Admittedly, a review of the materials submitted by the Commandant and his staff to the
Academic Board reveals mixed performance by Midshipman First Class Stainback during his
time at Navy. However, a closer inspection of those materials reveals what can only be described
as a shocking attempt to create a one-sided, results-driven picture for the Board. Additionally,

00273

the Commandant's staff violated the regulations and instructions pertaining to the Academic Board process and federal law pertaining to the conduct of administrative procedures within the Federal Government, under 5 USCA § 511 *et seq.* Moreover, the Academic Board completely disregarded the tremendous effort Midshipman Stainback has put forth in overcoming his Attention Deficit Disorder ("ADD") to realize the success he has achieved at USNA. The improprieties and oversights listed more fully below materially disadvantaged Midshipman First Class Stainback and demand the relief sought herein.

## A.    Incomplete and Misleading Material Submitted to the Academic Board

Even a cursory review of the materials concerning Midshipman First Class Stainback submitted to, and considered by, the Academic Board clearly indicate that this process was less than even handed, with information of superior performance withheld from the Board and evidence of areas of required improvement highlighted to the Board.

The following pertain:

### 1. The Award of a Navy-Marine Corps Achievement Medal in August, 2001:

Specifically, Midshipman First Class Stainback was awarded the medal for coming to the aid of a heart attack victim in a local restaurant. Acting upon his USNA training, Midshipman Stainback immediately took charge of the situation and began administering life-saving CPR. Through his cool headedness under stress, a characteristic sought in every Midshipmen and Naval Officer, Midshipman First Class Stainback was able to avert a tragedy. *See Enclosure* 1. Shockingly, the award of this medal was completely withheld from the materials submitted to the Academic Board. Considering the few Midshipmen who are awarded such medals during their time at the Naval Academy, this deficiency in the record is nothing less than outrageous and materially disadvantaged Midshipman Stainback before the Academic Board.

### b. Selection as Midshipman of the Month, October 2003:

On November 2, 2003, Midshipman First Class Stainback was awarded the October 2003 6th Company Midshipman of the Month award by his Company Commander. In the citation, Midshipman First Class Stainback, is commended for his leadership and involvement in numerous Company activities. *See Enclosure* 2. Yet, in the submission to the Academic Board, the Commandant's staff fails to advise the Board members of this fact, leaving the impression that Midshipman Stainback's performance failed to improve following his September 4, 2003 Brigade Aptitude Board.

### c. Anonymous Notations and Redactions in the Record:

Additionally, the package submitted to the Academic Board contained adulterated documents with unexplained and material redactions. First, the record contained an email from Midshipman First Class Stainback wherein he provides an explanation for being absent from his naval flight practicum without authority, the subject of a conduct hearing on March 31, 2004. Midshipman

Stainback's explanation is flatly contradicted in a handwritten note added to the email, the author of which is not identified. *See Exhibit* 3. Secondly, portions of emails from Midshipman Stainback's instructors providing background on the incident are redacted, in a manner to suggest that comments from these instructors that would support Midshipman Stainback's explanation have been removed. *See Enclosure* 4. In short, Midshipman Stainback was effectively denied the ability to refute the anonymous notations as was his right under USNAINST 5420.24E.

**B.    Procedural Irregularities.**

Midshipman Stainback was provided with no opportunity to present evidence, documents, or witnesses to the Board to contradict the one-sided nature of the performance record submitted by the Commandant's staff. Midshipman Stainback was only informed of the "possibility" of having to go before the Academic Board at 12:55 PM on Friday, April 23, 2004.

When he was first advised that he may have to go before the Academic Board, Midshipman Stainback was informed by Lt. Olson, the Aptitude Officer, that the decision to bring him before the Aptitude Board was not yet made, and that the Commandant "has not made up his mind what to do with you yet". *See Enclosure* 5. Midshipman Stainback was told by Lt. Olson that the notice of the Academic Board meeting was only being given to him so that the Academy could keeps its options open, and that the date and time listed on the notice sheet was arbitrarily chosen by Lt. Olson, just to fill in a time and date. *See Enclosures 5 and 6.* Lt. Olson told Midshipman Stainback that he would be informed if he was actually scheduled to go before the Board, and the scheduled date and time of the meeting.

The Aptitude Officer provided Midshipman First Class Stainback with an electronic copy of the materials that were intended for the potential Board, *via* e-mail, just before 4:00 PM on Friday, April 23, 2004. At that time, Midshipman Stainback was in class and the email was not received and opened by him until after 7:00 PM that evening. It was not until after noon meal on Monday, April 26, 2004, that he was advised that his case was, in fact, being submitted to the Academic Board at noon the next day– less than 24 hours away. While Midshipman Stainback made immediate arrangements to meet with his legal counsel on the morning of Tuesday, April 27, 2004, he was unable to do so because he was sequestered by Naval Academy officials over an hour before the Academic Board was to meet.

The USNA Instructions concerning the procedures of the Academic Board mandate that Midshipmen be provided "advance notice of the scheduled appearance", and allowed "a minimum of 24 hours to prepare" for such appearance. *USNAINST 5420.24E.* Additionally, while USNA instructions provide Midshipman Stainback the opportunity to present to the Academic Board for its consideration facts on his own behalf, including documentary evidence and written statements of third parties, he was required to submit such documentary evidence to the Aptitude Officer 24 hours prior to the commencement of the Board. *See Enclosure 6.* Midshipman First Class Stainback was not informed that the he was actually required to go before the Academic Board on Tuesday, April 27, 2004 at Noon, until the afternoon of Monday, April 26, 2004– less than 24 hours before the Board appointment, and after the expiration of the time by which he could submit documentary evidence on his own behalf.

Consequently, Midshipman First Class Stainback was denied any opportunity to effectively prepare any defense, whatsoever, for the Board. It is hardly surprising, based upon the one-sided nature of the case that was presented, that the Academic Board voted unanimously to deny Midshipman Stainback a commission and to separate him from the Naval Academy.

Additionally, Midshipman First Class Stainback was not provided with certain necessary documents relating to his referral to the Academic Board by the Commandant, as required in USNAINST 5420.24E. The Academy Instruction relating to the procedures of the Academic Board mandate that a midshipman referred to the Board for aptitude deficiency is to be provided with copies of documentary evidence presented to the Board for its consideration. The Notice Sheet provided to Midshipman First Class Stainback on Friday, April 23, 2004 states that the Commandant had submitted a letter to the Academic Board dated April 9, 2004. At no time has a copy of the Commandant's letter to the Board of April 9, 2004 been provided to Midshipman Stainback, despite several requests, and in violation of USNAINST 5420.24E. *See Enclosures 6 and 7.*

### C.    Failure to Consider the Effect of Midshipman Stainback's ADD, and/or to Treat the Condition:

While in high school, Midshipman First Class Stainback was observed to experience distractability and difficulty staying on task, especially during periods of high academic pressure, and in 1997 his family doctor diagnosed him as suffering from mild attention deficit disorder, which was treated first by Dexedrine, and later with Adderall. *See Enclosure 8.* With medications, Midshipman Stainback was an exceptional performer, and achieved a grade point average of 3.93 upon his graduation from Gonzaga High School in Washington, DC.

Midshipman Stainback's condition was fully disclosed to DODMERB, and additional information was requested relative to the condition and was evaluated by a medical board, which then cleared Midshipman Stainback medically for admission to the Naval Academy. Midshipman Stainback is not allowed to take any medications to treat his ADD while at the Academy, and has still achieved a final 2.45 gpa . At no time has the Academy provided any treatment to Midshipman Stainback for his mild ADD.

More troubling, however, is the Academy's lack of consideration of Midshipman Stainback's ADD in its decision to recommend him for separation. The actions of the Academic Board, and the Superintendent's recommendation, are premised on the belief that Midshipman Stainback's minimal academic and aptitude performance were the result of a complacent and dismissive attitude towards his obligations at Navy. The Superintendent clearly states that the Board's decision that Midshipman Stainback does not possess the aptitude to receive a commission is based on its perception that Midshipman Stainback's record of "marginal performance" "reflect(s) complacency with minimally acceptable performance." Superintendent's Memorandum, ¶¶ 3 and 5. What the Board clearly did not take into consideration was whether Midshipman Stainback's performance difficulties were not the result of a complacent attitude, *but in fact* the result of his ADD. Midshipman Stainback's ADD challenge should have been taken into consideration by the Board, so that it could properly determine if his performance was

the result of a poor or undesirable attitude, or the result of his ADD.   Under law and the Academy Instructions, the Board was required to determine if there was reasonable evidence that Midshipman Stainback "has the attitude and personal characteristics that are needed to become an officer in the naval service." *See USNAINST 5420.24E.*   This determination cannot not have been properly made without some analysis and consideration of the effects of the ADD on Midshipman Stainback's performance, versus the results of a poor or complacent attitude.

## D.    Relief Sought

Midshipman Stainback is an average midshipman who will make an above average officer in the Fleet. One need only look to his reaction in the local restaurant when faced with an impending tragedy. Decisive and purposeful, he clearly possesses the leadership qualities the Navy requires in these tense times. One need only look to the words of those who know him best, such as Cmdr (Ret) Joseph Rubino, who strongly recommends him for retention in the Brigade, noting that "when push comes to shove, Matt is a hero." *See Enclosure 9.*  When interviewed by Shipmate in December, 2001, then Superintendent VADM John Ryan credited Midshipman Stainback as the reason that he was so enthusiastic about the Brigade: *I could not be prouder of this young man who reacted in a heroic manner at a restaurant on a Sunday afternoon to save a shipmate. Bancroft Hall is full of Matt Stainbacks, young men and women who are very capable and ready to respond to life's challenges, yet they want to be even better. That's what keeps me so enthusiastic". See Enclosure 10.*

Midshipman Stainback's record as a midshipman do not evidence a lack of courage or character, they reflect the maturation process expected of young men. As the Naval Academy well knows, some young men mature more quickly than others and often times there are underlying reasons for this difference. Many times this difference can be explained by leadership, or a lack thereof. Other times, the difference can be explained by a physical ailment, such as ADD, from which Midshipman Stainback suffers. In fact, a cursory review of the summary attached to the Superintendent's memo of May 10, 2004, reflects a series of minor infractions that hardly amount to any reasonable basis underlying a decision to separate Midshipman First Class Stainback *three weeks before graduation.*

Based on the foregoing, I request on behalf of Midshipman Stainback that he be permitted to graduate on time, with his class, on May 28, 2004. Alternatively, I request that he be permitted to graduate in August 2004. The additional time at the Naval Academy will provide an ample opportunity to monitor Midshipman Stainback's performance and ultimately his aptitude for commissioned service. If the foregoing are not accepted, I request that Midshipman Stainback be separated for medical reasons in view of his ADD and that his repayment obligation be waived, accordingly.

Thank you for your careful consideration of this important matter.

# ENCLOSURE 1

00278



NAVDS 1650/18 (REV 7-89)
S/N 0104-LF-982-5500



# DEPARTMENT OF THE NAVY

## THIS IS TO CERTIFY THAT

### THE SECRETARY OF THE NAVY HAS AWARDED THE

# NAVY AND MARINE CORPS ACHIEVEMENT MEDAL

TO

## MIDSHIPMAN THIRD CLASS MATTHEW K. STAINBACK, UNITED STATES NAVY

FOR

PROFESSIONAL ACHIEVEMENT IN THE SUPERIOR PERFORMANCE OF HIS DUTIES WHILE SERVING AS A MIDSHIPMAN AT THE UNITED STATES NAVAL ACADEMY ON 19 AUGUST 2001. MIDSHIPMAN STAINBACK, WHILE IN A LOCAL ANNAPOLIS, MARYLAND RESTAURANT, TOOK CHARGE OF A LIFE THREATENING SITUATION AND ADMINISTERED CARDIOPULMONARY RESUSCITATION TO A HEART ATTACK VICTIM, LATER IDENTIFIED TO BE THE DEAN OF ADMISSIONS, UNITED STATES NAVAL ACADEMY. HIS TIMELY EFFORTS STABILIZED THE VICTIM UNTIL PARAMEDICS COULD ARRIVE AND TAKE OVER THE SITUATION. FURTHERMORE, UPON BEING RELIEVED BY THE PARAMEDICS, HE PROVIDED COMFORT TO THE VICTIM'S WIFE UNTIL FAMILY MEMBERS COULD ARRIVE. DUE TO HIS QUICK REACTION AND INITIATIVE, MIDSHIPMAN THIRD CLASS STAINBACK IS CREDITED WITH SAVING THE VICTIM'S LIFE. MIDSHIPMAN THIRD CLASS STAINBACK'S EXCEPTIONAL PROFESSIONAL ABILITY, PERSONAL INITIATIVE, AND UNSWERVING DEVOTION TO DUTY REFLECTED GREAT CREDIT UPON HIMSELF AND WERE IN KEEPING WITH THE HIGHEST TRADITIONS OF THE UNITED STATES NAVAL SERVICE.

GIVEN THIS    28th    DAY OF    AUGUST 2001

FOR THE SECRETARY OF THE NAVY

J. R. RYAN
Vice Admiral, United States Navy
Superintendent, U.S. Naval Academy

00279

# ENCLOSURE 2

# 6TH COMPANY

## October Midshipman of the Month

is hereby granted to:

## 1/c Matt Steinback

for outstanding performance in Sixth Company, Matt has been highly involved with the Company, from planning events to helping with spirit related activities. Through his work as Assistant Hot 6 Camping Trip Liaison Officer, Mat provided for the entire company in the planning and execution of the Hot 6 Camping Trip. As Battalion Action Officer for Halloween "Brigade Haunted Hall", Matt was in charge of setting up, manning, and cleaning up support for the Haunted Hall. Not only did his work provide many children with... ...organized by him, built Company camaraderie.

Dated: 02 November 2003

MIDN LT Clay Blackburn
Sixth Company Commander

00281

# ENCLOSURE 3

00282

Current Folder: Sent                Sign Out

Compose   Addresses   Folders   Options   Search   Help       SquirrelMail

Message List | Delete | Edit         Previous | Next       Forward | Forward as Attachment | Reply | Reply All
Message as New

**Subject:** Course change
**From:** m046582@usna.edu
**Date:** Wed, February 18, 2004 10:14 am
**To:** bowman@usna.edu
**Priority:** Normal
**Options:** View Full Header | View Printable Version

Coach,

    I did not get my marine service selection even after the extra billets
came out a week ago, so i have been trying to find an aviation
practicum class that fits my schedule, but there arent any. My Marine
practicum teacher told me to stop coming to class because there is no
point anymore, but since that class has not been dropped from my
matrix yet, I got an "I" for a grade. I also do not have an aviation
class that I can fit into.

    My capstone class stopped meeting last week, so today i am going to
start going to the aviation practicum class that i can now attend
because of that opening in my schedule. I know that this is a
drop/add nightmare, so i was wondering how to go about this. I dont
want to get in trouble and I have no idea what to do. Please let me
know what kind of action I should take. I can meet with you later
today if that helps.

Thanks,

Matt

*Class was meeting. He had not attended for 2½ weeks at this point.*

*Did not attend for another week, The 23rd of February*

00283

# ENCLOSURE 4

00284

**From:** Stephen Gozzo
**To:** Spring 2004 SeaNav All Instructors + Adjuncts
**Date:** 2/17/2004 9:32:23 AM
**Subject:** MIDSHIPMAN INCORRECTLY ENROLLED IN NS40X

All,

As you can see by this e-mail, mids that may have changed practicums on their own and never came through me are still causing problems.

Please review your class rosters. Try to find the mid who shows up and is not on your roster, and the mid who is on the roster, yet is absent. I need to know about them and they need to be directed to see me ASAP to make practicum scheduling changes. I direct each mid I reschedule to touch base with both his former and new practicum instructors. Info to be passed between instructors includes grades and instructor input assessments.

If you can believe it, we still have new changes ongoing as mids have medical and NR interviews as late as this week. Hang in there.

Thank you for your help.

r/
LCDR Gozzo


>>> Richard Davis 02/17/04 09:16AM >>>
Midshipman Stainback should have seen MAJ Gozzo for a MIDREC card for the change. All such changes need to go thru MAJ Gozzo.

Thanks  Richard Davis

>>> "John W Hatala" <hatalas@comcast.net> 2/16/2004 9:51:00 AM >>>
Registrar,
    MIDN 1/C Stainback is on my roster for NS404 when I entered grades. However, he was not selected for the Marine Corps during service assignment and was subsequently changed to another NS class.

                    Maj J.W. Hatala

**CC:** Davis, Richard; Vint, Charles

00285

# ENCLOSURE 5

00286

MEMORANDUM                                                      24 MAY 2004

From:  MIDN 1/C Stainback
To:    Tom McCarthy Jr.

Subj:  EVENTS LEADING TO ACADEMIC BOARD

1.   Friday, 23 April, I was told by LT McKenna to report to LT Olson's office at 1300.
     When I reported, I was told by LT Olson that there was a possibility that I would be sent
     to an academic board.  LT Olson said that the Commandant did not know what to do with
     my case, but they were notifying me of the academic board as a possibility.  He gave me a
     document acknowledging this notification, and I signed it.  This was the only document
     that I received.  When I asked about the date and time that was on the sheet, he told me
     that they just put that there because they had to put something down, and that they did not
     know when the academic board would go, if it went at all.  I asked LT Olson when I
     would find out if I were going to the board, and he told me that I would be notified as
     soon as they knew.  He told me that they would give me my packet that afternoon as soon
     as it was compiled.

2.   At roughly 1900 on 23 April, I opened an e-mail from Mr. Albert Wardlaw.  He attached
     a PDF file containing my packet.  The e-mail had been sent at roughly 1545.

3.   Shortly after noon meal formation on Monday, 26 April I was notified by LT McKenna
     that I was indeed going before an academic board.  LT Olson further instructed me that
     afternoon to be ready for the board at 1200 on 27 April.

4.   The following day, LT McKenna sent MIDN joslyn Hemler to pull me from class at
     roughly 1100.  I was then told to change and was escorted to the academic board by LT
     McKenna.

                                   Very Respectfully,

                                   Matthew Stainback
                                   MIDN       USN

00287

# ENCLOSURE 6

U.S. Naval Academy
Annapolis, MD 21412
1256    23 APR 2004
(Time/Date)

From:  Midshipman First Class Matthew K. Stainback, USN,
       Class of 2004

To:    Commandant of Midshipmen

Subj:  ACKNOWLEDGMENT OF APPEARANCE BEFORE THE NAVAL ACADEMY
       ACADEMIC BOARD DUE TO INSUFFICIENT APTITUDE

1.   I hereby acknowledge receipt of advanced notice to appear
before a Naval Academy Academic Board at 1200, 27 April 2004
in Room 300, Leahy Hall.

2.   I further acknowledge that I will:

     a.  Be present while the record of academic and military
performance is presented to the board and when the decision of
the board is announced, but not during the deliberation of the
Board.

     b.  Be allowed to examine or be provided a copy of any
documentary evidence, including any summary of my academic and
military performance, which is considered by the Board.

     c.  Be entitled to present any facts in my own behalf,
including documentary evidence and written statements of third
parties, concerning my academic and military performance.  Should
I elect to do so, twenty-four (24) hours prior to the
commencement of the Board, I will submit documentary evidence to
the Aptitude Officer for the Board's consideration.

     d.  Be entitled to consult freely with anyone, including
counsel, in preparing to appear before the Academic Board.  Upon
request, counsel may attend the Board, but not in a
representative capacity.  I understand that I must present my own
case.

3.   I further acknowledge receipt of the Commandant of
Midshipmen's letter to the Academic Board dated 9 April 2004. I
understand that the Board will consider the Commandant of
Midshipmen's letter, any additional written or oral evidence
received in open sessions of the Board and any facts which I
present in making a decision in my case.

                                        (Signature)

Copy to:
2ND Battalion Officer
6th Company Officer
Commandant's SJA
Secretary, Naval Academy Academic Board

00289

# ENCLOSURE 7

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*                          Brennan C. McCarthy
Thomas McCarthy, Sr., PC, *Member*                          *Associate Member*

**Via Telecopier**
**(410) 293-7029**

Captain Charles Leidig, Jr.                              May 4, 2004
**Commandant**
United States Naval Academy
Annapolis, Maryland  21402

Re:  **Midshipman Matthew Stainback**
**M046582**

Dear Captain Leidig:

As you are aware, I represent Midshipman Matthew Stainback.

On Friday, 23 April, 2004 at 12:55 PM, my client was provided with an Acknowledgment of Appearance, which he was asked to sign.  The Acknowledgment provided notice to appear before the USNA Academic Board at Noon the following business day, Monday, 27 April, 2004.

Paragraph numbered 3 of the Acknowledgment states *"I further acknowledge receipt of the Commandant of midshipman's letter to the Academic Board dated 9 April, 2004."*  At no time has my client been provided with the letter from you of April 9, 2004.

In order to assist my client in evaluating the actions of the Board, I would appreciate being provided with a copy of the letter referred to in the Acknowledgment.

Thank you.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.

00291

# ENCLOSURE 8

00292



## NORTHERN VIRGINIA PEDIATRIC ASSOCIATES, P.C.

### Pediatrics • Adolescent Medicine • Pediatric Nephrology

James H. Stallings, Jr., M.D., F.A.A.P.          Lynne D. Myers, M.D., F.A.A.P.          Beverley J. Bayes, M.D., F.A.A.P.
            Amin J. Barakat, M.D., F.A.A.P.          Bassam A. Atiyeh, M.D., F.A.A.P.

DOD Medical Examination Review Board                          March 7, 2000
8034 Edgerton Drive, Suite 132
USAF Academy, Colorado
80840-2200

Attention, Petty Officer Evans
Navy Section

Matthew Stainback, DOB 7/15/81, has been under my care since birth. I have also followed his older brother, David. Matt has been generally healthy and active. He has done well in school and sports and has got on well with peers. At times when academic pressures were high, he experienced distractibility and difficulty staying on task. Upon my evaluation 1997, I diagnosed mild Attention Deficit without hyperactivity. He was treated first with Dexedrine and later with Adderall because of side effects.

While Adderall did improve his ability to stay on task for homework, we decided to discontinue the medication upon learning of his interest in a Service Academy. He found that he could maintain focus without the medication.

This young man is socially, athletically and academically gifted. It would be a mistake not to enroll him.

It is my opinion that he is fully qualified to participate in a physically and academically rigorous program at U.S.N.A.

If you wish more information, please contact me.

Sincerely,

James H. Stallings, MD

107 North Virginia Avenue • Falls Church, Virginia 22046 • Telephone: (703) 532-4446 • Fax: (703) 532-8426

00293

# ENCLOSURE 9

00294

26 April 2004

From: Joe Rubino
To:     Secretary, U.S. Naval Academy Academic Board

Subj: MIDN MATTHEW STAINBACK

1. I am Matt Stainback's sponsor. My family and I have come to know Matt as a friendly, gregarious, fine young man with great loyalty and a great heart. I would like to respectfully offer some additional background on Matt for the Board's consideration.

2. Matt has a conduct offense on his record from the summer of 2003 involving an incident at a concert at Merriwhether Post Pavillion. I wish to shed some light on the incident because on its face it sounds more disrespectful to the public than it in fact was. I was at the concert and met Matt there. This facility (Pavillion) is a typical open air amphitheater with a capacity of about 40,000, but whose perimeter is entirely wooded. Inside, they serve food and drink, but maintain only two fixed rest rooms. Consequently the rest areas are jammed with crowds of patrons, tremendously long lines, and are virtually not functional. Pavillion personnel patrol the wooded perimeter, but actively disregard the literally thousands of patrons who go into the wooded area to relieve themselves. Matt and I lost each other in the huge crowd, but had agreed to meet at the men's room. Matt, finding an impossibly huge crowd, went to the perimeter. Matt found some bushes that were, in fact, private and away from the crowd, so he was not in public. Unfortunately for Matt, the area he chose was secluded because it was near the back stage, thus triggering Pavillion security. In the misunderstanding that followed Matt was ejected. Later, I explained these circumstances to Pavillion personnel and the police and the incident was completely dropped. All involved noted that Matt was polite and respectful throughout the incident. I would also like to note that Matt was on weekend at the time (this was 4th of July weekend). I spoke to the watch by phone and I brought Matt back to Bancroft Hall not because he was ordered to return, but because I wanted the watch to see he was not exhibiting any signs of drunkenness and had responsibly used alcohol. Matt then returned to my house for the remainder of the weekend. For the incident, Matt was placed on restriction and 4th Class privileges for the year. I know this made for a hard year.

3. I witnessed another significant event that truly demonstrates MIDN Stainback's character. One weekend when Matt was a Third Class, I took him to a local restaurant for lunch. Suddenly, a couple at the next table became distressed and Matt asked if we could help. The man at the table seemed to have feinted. Matt and a waitress determined that there was no pulse and cleared the floor to lay the man down. People began to scream for a doctor or someone with CPR training. There was confusion and chaos in the restaurant. Matt stood up, raised his hands, and calmed the crowd saying in a loud voice "I can do this". Matt then directed the waitress and me as to how to help Matt administer CPR. Matt proceeded to perform CPR on the unconscious man. Paramedics arrived some time later and credited Matt's CPR with saving the life of the man who had suffered a massive heart attack. I was new to the Academy then and hadn't recognized the man

who Matt saved. It was the Naval Academy's Dean of Admissions. Matt was lauded as a hero by the Naval Academy and he was awarded a Navy Achievement Medal for lifesaving. I will never forget the moment of doubt in the restaurant. And I will never forget the guts that a young 3rd class showed to stand up and say, "I can do this;" and save a life.

4. Matt is not remarkable in academics or in his personal organization. He is very laid back and sometimes overly easygoing. Unfortunately, Matt's written record apparently reflects this. But Matt can be counted on to act heroically when called upon. Few are actually tested with life and death in their hands at a young age. I've seen Matt with life and death in front of him. I would place my life or my family's in Matt's hands without hesitation. And I would consider my children fortunate to one day serve with Matt in the United States Navy. He can be counted on to be absolutely loyal to his shipmates, to the service, and to the country. When push comes to shove, Matt is a hero. I respectfully request that the Board consider the totality of Matt's character in making your final determination.

Very Respectfully,

Joe Rubino

# ENCLOSURE 10

**PERINTENDENT'S CALL**



# Q&A WITH ACADEMY SUPERINTENDENT VADM JOHN RYAN '67

*By Commander Lawrence Heyworth III '70, U.S. Navy (Ret.)*

This month, *Shipmate* presents an exclusive "question and answer" session with Superintendent VADM John Ryan. Our own Skid Heyworth, Director of Communications, discussed the significant progress made at the Academy over the past three years.

*Shipmate:* Why are you so enthusiastic?

Superintendent: In a word: Midshipmen. Although our Brigade mirrors the society they serve, we expect them to conform to a different and higher standard and the great majority of Midshipmen do just that. They are energizing, bright, ambitious, motivated, and talented—the single best part of my job here. Each day I find several more gems in the mine.

Some of you may know that Dean Dave Vetter suffered a heart attack in August. Fortunately for us, he's making a good recovery and we expect he will continue on as Dean of Admissions. We wish Dave and Royce all the best in their recovery, and our thoughts and prayers are with them. What is noteworthy about this near tragic incident was that MIDN 3/C Matthew Stainback '04, responded to the emergency and saved Dave's life with CPR. When I personally congratulated him, he modestly said "thanks," but that his "CPR was a little rusty" and that he intended to renew and improve his skills as soon as possible. I could not be prouder of this young man who reacted in a heroic manner at a restaurant on a Sunday afternoon to save a Shipmate. Bancroft Hall is full of Matt Stainbacks, young men and women who are very capable and ready to respond to life's challenges, yet they want to be even better. That's what keeps me so enthusiastic.

*Shipmate:* Looking back over the past three years, what are the major success stories?

Superintendent: Well, there are about 3,000 of them—our graduates from the Classes of '99, '00, and '01. Our biggest accomplishment and greatest sense of pride come from providing outstanding Navy and Marine Corps officers to the Fleet and Fleet Marine Force each year. These patriotic men and women are volunteer warriors—*Leaders for the Nation*—serving around the world in exciting, challenging, and rewarding career fields. That is our mission and our graduates provide those of us privileged to serve at this great institution with an immense amount of job satisfaction.

But, there is much to be excited about inside the Yard as well. There are ongoing renovations and improvements to our facilities, curriculum, and processes Yard-wide. Many are already bearing fruit, and when they are all complete, the Naval Academy will be well positioned for the foreseeable future. For example, in the past three years, we have renovated Bancroft, Maury, Mahan, and Sampson Halls, built the Glenn Warner Soccer Facility, begun an extensive comprehensive campaign, funded and hired numerous Distinguished Faculty Chairs, totally upgraded many of our athletic and workout facilities, and modernized our academic curriculum. We are preparing graduates who can keep pace with emerging Fleet needs in the

realms of Information Technology, geopolitical awareness, and the fundamental communication skills of writing and public speaking. We have revamped Plebe Summer to make it more challenging and purposeful for both the Plebes and the upperclass detailers. We have taken the initiative to keep our faculty salaries competitive with the private sector to attract and retain only the best professors. And we are not stopping there. The plan is not just to keep *going*, rather to make choices in light of the mission of USNA, and as a result, keep *growing* and improving every day!

*Shipmate:* How has the Strategic Plan factored into those successes?

Superintendent: Simply put, the Strategic Plan is the foundation upon which everything rests. It is and has been our shared roadmap for the future. Over the past three years, the Plan has been our navigation chart for success, improvements, change, and has ensured that we stay true to the great heritage, legacy, and professionalism of our graduates, this institution, the Navy and Marine Corps, and the nation we serve. We aren't resting on our laurels here, either. We recently finished a top-to-bottom review of the Strategic Plan, incorporating once again, input from faculty, staff, Alumni, Midshipmen, and all our stakeholders. This review provided a refreshing new energy to the Plan, an increased sense of ownership for all, and will allow us to use it as our roadmap to the USNA in 2012.

*Shipmate:* What's different about today's Academy and the one you attended in the '60s?

Superintendent: It is better—much better. It was a great institution when I graduated in 1967, but in many ways the Academy is a better place in 2001. We are winning the war for talent! Our Brigade and our faculty are both more diverse and talented. Our classrooms, laboratories and academic opportunities are world class. We are a forward-thinking institution that is well grounded in tradition. We believe our four-year immersion program must engage the minds and hearts of every Midshipman to learn about and practice the virtues of honesty, self-control, perseverance, respect, compassion, and service. *That* is why we have strengthened our leadership, ethics, and character development programs.

This is an institution that remains true to its heritage, while at the same time, staying current in an ever-changing academic and professional military environment.

That's my challenge as Superintendent—*to balance continuity and change.* We must guard against complacency and satisfaction with the status quo. We—as an institution, and as individuals—must continually improve.

00298



# DEPARTMENT OF THE NAVY

UNITED STATES NAVAL ACADEMY
121 BLAKE ROAD
ANNAPOLIS MARYLAND 21402-5000

2b-11
31 May 2004

Superintendent, USNA Separation Notice #920

From: Superintendent
To:   Distribution List

Subj: SEPARATION OF MIDSHIPMEN

Encl: (1)  List of midshipmen separations pending and effective
      (2)  Recapitulation of membership and separations


1.  <u>Purpose</u>.  To announce the separations and pending separation of
midshipmen.

2.  <u>Information</u>.

    a.  The separations of midshipmen listed in enclosure (1) include those
awaiting action by the Secretary of the Navy (Midshipmen Separations Pending)
and those that have been approved by the Secretary of the Navy (Midshipmen
Discharges Effective).

3.  <u>Cancellation</u>.  This notice is canceled when contents have been noted and
for record purposes 30 June 2004.

*R. L. Davis*

R. L. DAVIS
By direction


### BRIGADE MEMBERSHIP

| | | | |
|---|---|---|---|
| CLASS OF 2004... | 991 | 11 | 1002* |
| CLASS OF 2005... | 996 | 08 | 1004 |
| CLASS OF 2006... | 1054 | 05 | 1059 |
| CLASS OF 2007... | 1129 | 12 | 1141 |
| TOTAL | 4170 | 36 | 4206 |

*See enclosure for Class of 2004 graduation numbers.

00299

```
 1A-Superintendent
 3A-Commandant of Midshipmen (5)
 1C-Academic Dean (4)
 4A-Physical Education (10)
 1G-Public Affairs Ofc
 1H-Alumni Association (2)
10H-Archives
 3A-Midshipmen Personnel Ofc
 4D-NAAA Sked Ofc
 2C-Academic Center
 3K-Brigade Svcs Acct
21D-Laundry
20F-Comptroller
 6B-Director-Counseling Center
 18-Medical Records & PRECOMM
 3H-Midn Disbursing
 3A-Ron Hawkins
     SKED OFCR
     Academic Division Directors
     Chairman, Academic Department (3)
 7H+Security Manager
 2B+Institutional Research
 1C+Exec Asst-Ac Dean
 1F+Staff Judge Advocate
    +Nominations and Appointments (2)
    +Dean of Admissions
    +Registrar (4)
    +CAPT Ed Wallace, USNA FOUND., 25 MD AVE, Anna. MD 21401
    +Bupers Pers 7102, 2 Navy Annex, Rm 1731, Wash DC 20370-7100
    +Steve Sorce, CNO, 2 Navy Annex, Rm 3603, Wash DC  20370
    *HQ,USAFA/XPR,2304 Cadet Drive, USAF Academy,CO 80840-5025
    *Cadet Pers, USCC/CW2, USMA, West Point, NY  10996
    *Director of Admissions, USCGA, New London, CT  06320
    *Latrina Molton, 2 Navy Annex Wash DC 20370-7100


    *ENCLOSURE (2) only - 5
    +REASONS - 13
```