## MIDSHIPMEN SEPARATIONS PENDING

| ALPHA | MAJ | CO | NAME | ST | |
|-------|-----|-----|------|-----|---|
| | | | **CLASS OF 2004** | | |
| 044746 | FPS | 25 | MILLS, DANNY DOUGLAS | SC | QUAL.RES.-HONOR |
| 045196 | HHS | 27 | OLGIN, MATTHEW | TX | DISCH-APTITUTE |
| 046582 | FEC | 06 | ~~STAINBACK~~ MATTHEW KILPATRICK | VA | ACAD DISCH-APT |
| | | | **CLASS OF 2005** | | |
| 053240 | FEC | 20 | HULL, JOHN TRENHOLM | AL | ACAD DISCH-PE |
| 053390 | HHS | 06 | JEFFERIES, CHRISTINE MERCER | VA | QUAL.RES.-CON |
| 056288 | EME | 02 | SILL, JEFFREY GLENN | SC | ACAD DISCH |
| 056762 | HEG | 28 | THOMAS, REGINALD EDWARD | NY | QUAL.RES.-HONOR |
| 057200 | SGS | 07 | WARREN, ANDREW ROBERT | KS | ACAD DISCH |
| | | | **CLASS OF 2006** | | |
| 060114 | SOC | 18 | AHUE, WILLIAM KAIMANA MCWAYNE | HI | ACAD DISCH-PE |
| 060324 | HEG | 15 | BALLOCH, JAMES BROOK | CT | VOL.RES.-MOT. |
| 060396 | SQE | 08 | BARTELT, SHANE BURT | WI | VOL.RES.-MOT. |
| 060444 | SGS | 25 | BEATTY, LUKE WILLIAM | FL | ACAD DISCH |
| 060606 | HHS | 19 | BLACK, IAN WILLIAM | PA | ACAD DISCH |
| 060612 | HHS | 16 | BLAKE, CHRISTOPHER ROBERT | NC | ACAD DISCH |
| 60822 | EAS | 16 | BUEHLER, MICHAEL JONATHAN | WI | VOL.RES.-MOT. |
| 061266 | FPS | 18 | CORRENTI, JILL SUZANNE | CA | VOL.RES.-MOT. |
| 061278 | EAS | 16 | CORTES, MICHAEL | IL | ACAD DISCH |
| 061422 | FPS | 23 | DAVIS, HANNAH MCTIGHE | VA | VOL.RES.-MOT. |
| 061434 | SPH | 22 | DAVIS, JIMMY | TX | ACAD DISCH-PE |
| 062190 | SQE | 08 | GATTO, JENNA LEIGH | IL | VOL.RES.-MOT. |
| 062442 | FPS | 28 | GRIFFITH, MARCUS EDGAR LEROY | OR | VOL.RES.-MOT. |
| 062694 | EAS | 06 | HAUCK, DEAN ANDREW | FL | ACAD DISCH |
| 063240 | FPS | 11 | JOHNSON, MORNING DAWN | AZ | ACAD DISCH |
| 063462 | SCS | 02 | KIRCHNER, MIRANDA LYNN | OH | VOL.RES.-MOT. |
| 063780 | FEC | 22 | LAWTON, MOLLY BURKE | MA | VOL.RES.-MOT. |
| 063906 | FEC | 22 | LOE, JOHN CLAYTON | MO | VOL.RES.-MOT. |
| 063978 | FPS | 11 | LUSTED, PHILIP SUTLIFF | OR | ACAD DISCH |
| 064356 | SCS | 25 | MCLAUGHLIN, ADAM LEONARD | PA | MEDICAL |
| 065508 | HEG | 17 | RANEY, JEREMIAH ROBERT | IL | VOL.RES.-MOT. |
| 065628 | SCS | 10 | REXROAD, ANDREW | KS | VOL.RES.-MOT. |
| 065886 | SGS | 02 | RUNDY, JOHN | NJ | ACAD DISCH |
| 066138 | HHS | 16 | SEAL, ROB NORRIS | AR | VOL.RES.-MOT. |
| 066300 | FEC | 12 | SHUSKO, KRISTIN LEE | VA | VOL.RES.-MOT. |
| 066936 | SPH | 08 | TYLER, LYDIA HART | TX | VOL.RES.-MOT. |
| 067224 | FPS | 16 | WHIDDON, CHRISTOPHER JACKSON | NC | ACAD DISCH |
| 067248 | EEE | 30 | WHITE, WILLIAM | FL | ACAD DISCH |

00301

### MIDSHIPMEN SEPARATIONS PENDING CONT'D

| ALPHA | MAJ | CO | NAME           CLASS OF 2007 | ST | |
|-------|-----|-----|------------------------------|-----|------|
| 070456 | FEC | 15 | BENITZ, ELISA LYDIA | CA | VOL.RES.-MOT. |
| 070918 | SOC | 23 | CALLIS, DANIEL ALAN | TX | ACAD DISCH |
| 071944 | SQE | 18 | ERIKSEN, HEATHER DAWN | OH | VOL.RES.-MOT. |
| 072346 | FPS | 30 | GILBERT, COREY REMI | GA | ACAD DISCH |
| 072520 | IT | 18 | GUION, DANIEL | NC | ACAD DISCH |
| 072880 | FPS | 29 | HOLLAND, PETER THOMAS | WI | VOL.RES.-MOT. |
| 072916 | SCS | 08 | HORTON, DUSTIN THOMAS | GA | ACAD DISCH |
| 073768 | IT | 12 | LEWIS, JOSHUA DREW | TX | VOL.RES.-MOT. |
| 073834 | IT | 08 | LIOGER, LUIS ENRIQUE R. | PR | ACAD DISCH |
| 073984 | EME | 10 | MACDONNELL, DANIEL PATRICK | NJ | ACAD DISCH-PE |
| 073996 | HEG | 13 | MACI, JONATHAN WALLACE | IN | ACAD DISCH |
| 074320 | IT | 22 | MCCRARY, PHILLIP CLINTON | GA | ACAD DISCH |
| 074410 | IT | 14 | MCWILLIAMS, BEVEN JANE | CO | VOL.RES.-MOT. |
| 074722 | FEC | 09 | MORROW, JAKE JEFFERSON | AZ | ACAD DISCH |
| 074884 | FEC | 21 | NEWSOME, KEVIN JARVIS | FL | ACAD DISCH |
| 074992 | SOC | 06 | OHANIAN, MICHAEL JAMES | CA | QUAL.RES.-CON |
| 075316 | ENA | 08 | POLAND, ERIC GEORGE | IA | VOL.RES.-MOT. |

### MIDSHIPMEN DISCHARGES EFFECTIVE

| LPHA | NAME           CLASS OF 2004 | DISCHARGE DATE |
|------|------------------------------|----------------|
| 042046 | FAULKNER, RAYMOND HOWELL | 30 APRIL 2004 |
| 044776 | MIXON, JODY | 30 APRIL 2004 |

#### CLASS OF 2005

| | | |
|------|------------------------------|----------------|
| 052814 | HAMME, JOSHUA PAUL | 30 APRIL 2004 |
| 057422 | WILSON, NICK | 30 APRIL 2004 |

#### CLASS OF 2006

| | | |
|------|------------------------------|----------------|
| 060012 | ABBAS, WAEL MOHAMMED | 30 APRIL 2004 |
| 060036 | ABREU, DAVID ANTHONY | 30 APRIL 2004 |
| 060756 | BREIDENBACH, BRIDGET | 30 APRIL 2004 |
| 061152 | COAKLEY, BILLY WAYNE | 07 MAY 2004 |
| 062286 | GOENAGA, EDDIE ANTONIO | 30 APRIL 2004 |
| 062346 | GORMAN, CHRISTOPHER LOUIS | 30 APRIL 2004 |
| 063150 | JAMES, MATTHEW BENJAMIN | 30 APRIL 2004 |
| 063462 | KIRCHNER, MIRANDA LYNN | 12 MAY 2004 |
| 064356 | MCLAUGHLIN, ADAM LEONARD | 25 MAY 2004 |
| 064710 | MUNNO, CLEMENT JAMES | 30 APRIL 2004 |
| 064908 | NORRIS, CAMREN | 30 APRIL 2004 |
| 065790 | RODRIGUEZ, LUIS CORTES | 30 APRIL 2004 |
| 066786 | THOMPSON, ALEXIS VICTORIA | 30 APRIL 2004 |
| 066936 | TYLER, LYDIA HART | 20 MAY 2004 |
| 67236 | WHITE, TRAVIS DONNELL | 30 APRIL 2004 |

## MIDSHIPMEN DISCHARGES EFFECTIVE CONT'D

| ALPHA | NAME          CLASS OF 2007 | DISCHARGE DATE |
|-------|------------------------------|----------------|
| 070960 | CANO, DWAYNE OCHOA | 30 APRIL 2004 |
| 071272 | COKER, CHRISTOPHER DOUGLAS | 30 APRIL 2004 |
| 071794 | DRONSON, KEVIN JOHN | 30 APRIL 2004 |
| 072490 | GRIMES, BRIAN THOMAS | 30 APRIL 2004 |
| 072796 | HILL, JULIUS BERNARD | 30 APRIL 2004 |
| 074074 | MANNING, CHRISTOPHER WILLIAM | 30 APRIL 2004 |
| 076030 | SEAL, BENJAMIN ALLEN | 07 MAY 2004 |
| 076828 | TROOP, CRAIG DANIEL | 30 APRIL 2004 |
| 077020 | VOLLONO, WILLIAM MICKLER | 30 APRIL 2004 |

00303

# GRADUATION - CLASS OF 2004
## 28 MAY 2004

CLASS OF 2004                                        CLASS SIZE - 1005

**TOTAL NUMBER OF GRADUATES** ..................................... **990**
                        WOMEN ..................................... 157
                        MEN ....................................... 833


**TOTAL NUMBER COMMISSIONED** ...................................... **975**
                        WOMEN ..................................... 154
                        MEN ....................................... 821


**DELAYED GRADUATES**          ..................................... **11**
**DELAYED COMMISSION(S)**       ..................................... **02**

ACADEMIC DISCHARGE(S)        ..................................... 01

DISCHARGE(S)                 ..................................... 02

NPQ                          ..................................... 02

INTERNATIONAL STUDENTS       ..................................... 11

UNDETERMINED                 ..................................... 01

--------------------------------------------------------------------

## COMMISSIONINGS

NAVY - ENSIGNS
                TOTAL   ..................................... **779**
                WOMEN   ..................................... 118
                MEN     ..................................... 661


MARINE CORPS - 2nd LIEUTENANTS
                TOTAL   ..................................... **190**
                WOMEN   ..................................... 32
                MEN     ..................................... 158


AIR FORCES - 2nd LIEUTENANTS
                TOTAL   ..................................... **03**
                WOMEN   ..................................... 01
                MEN     ..................................... 02


ARMY - 2nd LIEUTENANTS
                TOTAL   ..................................... **02**
                WOMEN   ..................................... 02
                MEN     ..................................... 00


UNITED STATES COAST GUARD
                TOTAL   ..................................... **01**
                WOMEN   ..................................... 01
                MEN     ..................................... 00

00304

UNITED STATES NAVAL ACADEMY MIDSHIPMEN ATTRITION SUMMARY

AS OF
MAY 31, 2004

| | CLASS DATE ENTERED | 2004 JUNE 30 00 CUR YR | 2004 CUM | 2005 JUNE 29 01 CUR YR | 2005 CUM | 2006 JUNE 28 02 CUR YR | 2006 CUM | 2007 JULY 01 03 CUR YR | 2007 CUM |
|---|---|---|---|---|---|---|---|---|---|
| NEW ADMISS | 1 | | 1221 | | 1238 | | 1212 | | 1228 |
| READMISS-NEW APPT | 2 | | 3 | | 1 | | 2 | | |
| TTL ADMISS-PLEBE YR | 3 | | 1224 | | 1239 | | 1214 | | 1228 |
| ADV TO HIGHER CLASS | 4 | | | | | | | | |
| ADV FROM LOWER CLASS | 5 | | | | | | | | |
| TB INTO CLASS-READMITS | 6 | 4 | 12 | 7 | 7 | 3 | 3 | | |
| TB TO LOWER CLASS-TURNBACKS | 7 | | 1 | | | | | | |
| MAXIMUM MEMBERSHIP | 8 | | 1237 | | 1246 | | 1217 | | 1228 |
| PLEBE SUMMER LOSSES | 9 | 5.7% | 70 | 3.7% | 46 | 3.9% | 48 | 3.6% | 44 |
| MAX MBRSHP LESS SUMMER LOSSES | 10 | | 1167 | | 1200 | | 1169 | | 1184 |
| LEAVE OF ABSENCE | 10a | | | | | | 2 | | |
| | 10b | | 1167 | | 1200 | | 1169 | | 1184 |
| VOLUNTARY RESIGNATIONS-VOLUNTARY | | | | | | | | | |
| MOTIVATION | 11 | 1 | 86 | 16 | 106 | 30 | 62 | 24 | 24 |
| ACADEMIC | 12 | | | | | | | | |
| PERSONAL | 13 | | 3 | 2 | 2 | | | | |
| OTHER | 14 | | | | | | | | |
| TOTAL VOLUNTARY | 15 | 1 | 89 | 18 | 108 | 30 | 62 | 24 | 24 |
| DISMISSAL | 16 | | | | | | | | |
| QUALIFIED RESIGNATIONS | | | | | | | | | |
| CONDUCT | 17 | 3 | 10 | 9 | 20 | 2 | 3 | 1 | 1 |
| HONOR | 18 | 1 | 4 | 1 | 2 | | | | |
| CONDUCT/HONOR | 19 | | | | | | | | |
| APTITUDE | 20 | | | | | | | | |
| CONDUCT/APTITUDE | 21 | | | | | | | | |
| TOTAL QUALIFIED | 22 | 4 | 14 | 10 | 22 | 2 | 3 | 1 | 1 |
| DISCHARGES-INVOLUNTARY | | | | | | | | | |
| ACADEMIC | 23 | 7 | 45 | 19 | 56 | 27 | 40 | 17 | 17 |
| ACAD/APTITUDE | 24 | 3 | 3 | | | | | | |
| ACAD/CONDUCT | 25 | | | | | | | | |
| ACAD/APT/CON(M.P.) | 26 | | | | 1 | | 1 | | |
| TOTAL ACADEMIC | 27 | 10 | 48 | 19 | 57 | 27 | 41 | 17 | 17 |
| APTITUDE | 28 | 3 | 3 | 1 | 1 | | | | |
| APTITUDE/COND(C.M.) | 29 | | | | | | | | |
| CONDUCT(M.P.) | 30 | 3 | 8 | 6 | 7 | 2 | 3 | | |
| HONOR | 31 | | | | | | | | |
| TTL APT/CON/HONOR | 32 | 6 | 11 | 7 | 8 | 2 | 3 | 0 | 0 |
| MEDICAL | 33 | | 1 | 1 | 1 | 1 | 1 | | |
| TOTAL DISCHARGES | 34 | 16 | 60 | 27 | 66 | 30 | 45 | 17 | 17 |
| DECEASED | | | | | | | | | |
| ACCIDENTAL | 35 | | 2 | | | | | 1 | 1 |
| PHYSICAL | 36 | | | | | | | | |
| TOTAL DECEASED | 37 | 0 | 2 | | | | | 1 | 1 |
| TOTAL INVOLUNTARY | 38 | 20 | 76 | 37 | 88 | 32 | 48 | 19 | 19 |
| TOTAL LOSSES | 39 | 21 | 165 | 55 | 196 | 62 | 110 | 43 | 43 |
| ADJUSTED MBRSHIP LESS TURNBACKS | 43 | | 1237 | | 1246 | | 1217 | | 1228 |
| TOTAL LOSSES LESS TURNBACKS | 44 | 21 | 165 | 55 | 196 | 62 | 110 | 43 | 43 |
| PRESENT MEMBERSHIP | 45 | | 1002 | | 1004 | | 1059 | | 1141 |
| PERCENT ATTRITION | 46 | | 13.3% | | 15.7% | | 9.0% | | 3.5% |

TOTAL BRIGADE STRENGTH                4206

INTERNATIONAL MIDSHIPMEN:            11(1-F)            8(2-F)            5(0-F)            12(3-F)
TOTAL 36 (M-30 F-6)

CLASS OF 2004 = GRADUATED - 990(M-833/F-157), COMMISSIONED - 975(M-821/F-154), LATE GRADS - 11(M-11)

NDW-USNA-REGISTRAR-1900/99(REV.7-77)                                    ENCLOSURE 2
SOURCE:REGISTRAR'S OFC, clm

00305

## MEMORANDUM OF MIDSHIPMAN FIRST CLASS MATTHEW K. STAINBACK

**TO:**  The Honorable Gordon R. England
**Secretary of the Navy**
100 Navy Pentagon
Washington, DC 20350-1000

**FROM:**  Thomas McCarthy, Jr.
**McCarthy & McCarthy, LLC**
79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016

Legal counsel to Midshipman First Class Matthew K. Stainback

**DATE:**  June 3, 2004

**SUBJECT:**  **Revised Memorandum in response to recommendation for discharge from USNA by Superintendent dated May 10, 2004.**

---

The following is provided in response to the United States Naval Academy Superintendent's Memorandum Report to the Secretary of the Navy dated May 10, 2004, in the case of Midshipman First Class Matthew K. Stainback.

In short, Midshipman First Class Stainback requests that the results of the Academic Board be set aside. Alternatively, Midshipman First Class Stainback requests that this case be disposed of as a discharge for physical disability, and that his recoupment be waived based thereon, in accordance with SECNAVINST 1521.1B.

As a preliminary matter, prior to this semester, Midshipman First Class Stainback had never received an aptitude grade lower than a C. His grade point average as of the date of his Academic Board was a 2.43. In short, overcoming attention deficit disorder, Midshipman Stainback's performance from his Plebe year to mid-way through his senior year was considered satisfactory, and in many respects exemplary. However, on April 27, 2004, *31 days prior to graduation*, the Academic Board, based solely on the materials submitted by the Commandant and his staff, found that Midshipman Stainback's performance was no longer satisfactory and recommended that he be separated from the Brigade.

Admittedly, a review of the materials submitted by the Commandant and his staff to the Academic Board reveals mixed performance by Midshipman First Class Stainback during his time at Navy. However, a closer inspection of those materials reveals what can only be described as a shocking attempt to create a one-sided, results-driven picture for the Board. Additionally, the Commandant's staff violated the regulations and instructions pertaining to the

00306

Academic Board process and federal law pertaining to the conduct of administrative procedures within the Federal Government, under 5 USCA § 511 *et seq.* Moreover, the Academic Board completely disregarded the tremendous effort Midshipman Stainback has put forth in overcoming his Attention Deficit Disorder ("ADD") to realize the success he has achieved at USNA. The improprieties and oversights listed more fully below materially disadvantaged Midshipman First Class Stainback and demand the relief sought herein.

## A.    Incomplete and Misleading Material Submitted to the Academic Board

Even a cursory review of the materials concerning Midshipman First Class Stainback submitted to, and considered by, the Academic Board clearly indicate that this process was less than even handed, with information of superior performance withheld from the Board and evidence of areas of required improvement highlighted to the Board.

The following pertain:

### 1. The Award of a Navy and Marine Corps Achievement Medal in August, 2001:

Specifically, Midshipman First Class Stainback was awarded the medal for coming to the aid of a heart attack victim in a local restaurant. Acting upon his USNA training, Midshipman Stainback immediately took charge of the situation and began administering life-saving CPR. Through his cool headedness under stress, a characteristic sought in every Midshipmen and Naval Officer, Midshipman First Class Stainback was able to avert a tragedy. *See Enclosure 1.* Shockingly, the award of this medal was completely withheld from the materials submitted to the Academic Board. Considering the few Midshipmen who are awarded such medals during their time at the Naval Academy, this deficiency in the record is nothing less than outrageous and materially disadvantaged Midshipman Stainback before the Academic Board.

### 2. Selection as Midshipman of the Month, October 2003:

On November 2, 2003, Midshipman First Class Stainback was awarded the October 2003 6th Company Midshipman of the Month award by his Company Commander. In the citation, Midshipman First Class Stainback is commended for his leadership and involvement in numerous Company activities. *See Enclosure 2.* Yet, in the submission to the Academic Board, the Commandant's staff fails to advise the Board members of this fact, leaving the impression that Midshipman Stainback's performance failed to improve following his September 4, 2003 Brigade Aptitude Board.

### 3. Anonymous Notations and Redactions in the Record:

Additionally, the package submitted to the Academic Board contained adulterated documents with unexplained and material redactions. First, the record contained an email from Midshipman First Class Stainback wherein he provides an explanation for being absent from his Naval flight practicum without authority, the subject of a conduct hearing on March 31, 2004. Midshipman Stainback's explanation is flatly contradicted in a handwritten note added to the email, the author of which is not identified. *See Exhibit 3.* Secondly, portions of emails from Midshipman

Stainback's instructors providing background on the incident are redacted, in a manner to suggest that comments from these instructors that would support Midshipman Stainback's explanation have been removed. *See Enclosure* 4. In short, Midshipman Stainback was effectively denied the ability to refute the anonymous notations as was his right under USNAINST 5420.24E.

## B.    Procedural Irregularities.

Midshipman Stainback was provided with no opportunity to present evidence, documents, or witnesses to the Board to contradict the one-sided nature of the performance record submitted by the Commandant's staff. Midshipman Stainback was only informed of the "possibility" of having to go before the Academic Board at 12:55 PM on Friday, April 23, 2004.

When he was first advised that he may have to go before the Academic Board, Midshipman Stainback was informed by Lt. Olson, the Aptitude Officer, that the decision to bring him before the Aptitude Board was not yet made, and that the Commandant "has not made up his mind what to do with you yet". *See Enclosure 5*. Midshipman Stainback was told by Lt. Olson that the notice of the Academic Board meeting was only being given to him so that the Academy could keep its options open, and that the date and time listed on the notice sheet was arbitrarily chosen by Lt. Olson, just to fill in a time and date. *See Enclosures 5 and 6*. Lt. Olson told Midshipman Stainback that he would be informed if he was actually scheduled to go before the Board, and the scheduled date and time of the meeting.

The Aptitude Officer provided Midshipman First Class Stainback with an electronic copy of the materials that were intended for the potential Board, *via* e-mail, just before 4:00 PM on Friday, April 23, 2004. At that time, Midshipman Stainback was in class and the email was not received and opened by him until after 7:00 PM that evening. It was not until after noon meal on Monday, April 26, 2004, that he was advised that his case was, in fact, being submitted to the Academic Board at noon the next day– less than 24 hours away. While Midshipman Stainback made immediate arrangements to meet with his legal counsel on the morning of Tuesday, April 27, 2004, he was unable to do so because he was sequestered by Naval Academy officials over an hour before the Academic Board was to meet.

The USNA Instructions concerning the procedures of the Academic Board mandate that Midshipmen be provided "advance notice of the scheduled appearance", and allowed "a minium of 24 hours to prepare" for such appearance. *USNAINST 5420.24E*. Additionally, while USNA instructions provide Midshipman Stainback the opportunity to present to the Academic Board for its consideration facts on his own behalf, including documentary evidence and written statements of third parties, he was required to submit such documentary evidence to the Aptitude Officer 24 hours prior to the commencement of the Board. *See Enclosure 6*. Midshipman First Class Stainback was not informed that he was actually required to go before the Academic Board on Tuesday, April 27, 2004 at Noon, until the afternoon of Monday, April 26, 2004– less than 24 hours before the Board appointment, and after the expiration of the time by which he could submit documentary evidence on his own behalf.

Consequently, Midshipman First Class Stainback was denied any opportunity to effectively prepare any defense, whatsoever, for the Board. It is hardly surprising, based upon the one-sided nature of the case that was presented, that the Academic Board voted unanimously to deny Midshipman Stainback a commission and to separate him from the Naval Academy.

Additionally, Midshipman First Class Stainback was not provided with certain necessary documents relating to his referral to the Academic Board by the Commandant, as required in USNAINST 5420.24E. The Academy Instruction relating to the procedures of the Academic Board mandate that a midshipman referred to the Board for aptitude deficiency is to be provided with copies of documentary evidence presented to the Board for its consideration. The Notice Sheet provided to Midshipman First Class Stainback on Friday, April 23, 2004 states that the Commandant had submitted a letter to the Academic Board dated April 9, 2004. At no time has a copy of the Commandant's letter to the Board of April 9, 2004 been provided to Midshipman Stainback, despite several requests, and in violation of USNAINST 5420.24E. *See Enclosures 6 and 7.*

On May 6, 2004, Cmdr (Ret.) Joseph Rubino, who is the Special Assistant to the Superintendent for External Affairs at the Naval Academy, and who personally knows Midshipman First Class Stainback, wrote to the Superintendent challenging the package supplied to the Academic Board. Cmdr. Rubino specifically challenged the package as being incomplete, containing charges and guilty findings which he personally knew to be untrue, and also accentuating negative aspects of Midshipman Stainback's record, while omitting crucial positive information. Cmdr. Rubino supplied additional information concerning Midshipman First Class Stainback's character, revealed during a family off-shore sailing trip in the Carribean, when Cmdr. Rubino's daughter fell overboard while 8 miles off Tortola, unnoticed by anyone except Midshipman Stainback. Midshipman Stainback took immediate action to alert the crew, and dived into the ocean to rescue the nine year old girl: *"(t)his is a simple illustration, but tells volumes about the kind of person Matt is. He is cool under pressure, he reacts quickly with perfect judgment and he looks out for his shipmates. If I were to go into harms way, Matt would be my first choice to have next to me." See Enclosure 11 (emphasis supplied).*

Cmdr. Rubino's assessment, and indeed the assessment that must be reached by any reasonable person reviewing this matter, is that the record presented to the Academic Board was limited, and does not fairly reflect the character and aptitude of Midshipman First Class Stainback.

**C.    Failure to Consider the Effect of Midshipman Stainback's ADD, and/or to Treat the Condition:**

While in high school, Midshipman First Class Stainback was observed to experience distractability and difficulty staying on task, especially during periods of high academic pressure, and in 1997 his family doctor diagnosed him as suffering from mild attention deficit disorder, which was treated first by Dexedrine, and later with Adderall. *See Enclosure 8.* With medication, Midshipman Stainback was an exceptional performer, and achieved a grade point average of 3.93 upon his graduation from Gonzaga College High School in Washington, DC.

00309

Midshipman Stainback's condition was fully disclosed to DODMERB, and additional information was requested relative to the condition and was evaluated by a medical board, which then cleared Midshipman Stainback medically for admission to the Naval Academy. Midshipman Stainback is not allowed to take any medications to treat his ADD while at the Academy, and has still achieved a final 2.45 gpa .   At no time has the Academy provided any treatment to Midshipman Stainback for his mild ADD.

More troubling, however, is the Academy's lack of consideration of Midshipman Stainback's ADD in its decision to recommend him for separation.   The actions of the Academic Board, and the Superintendent's recommendation, are premised on the belief that Midshipman Stainback's minimal academic and aptitude performance were the result of a complacent and dismissive attitude towards his obligations at Navy.   The Superintendent clearly states that the Board's decision that Midshipman Stainback does not possess the aptitude to receive a commission is based on its perception that Midshipman Stainback's record of "marginal performance" "reflect(s) complacency with minimally acceptable performance."   Superintendent's Memorandum, ¶¶ 3 and 5.   What the Board clearly did not take into consideration was whether Midshipman  Stainback's performance difficulties were not the result of a complacent attitude, *but in fact* the result of his ADD.   Midshipman Stainback's ADD challenge should have been taken into consideration by the Board, so that it could properly determine if his performance was the result of a poor or undesirable attitude, or the result of his ADD.   Under law and the Academy Instructions, the Board was required to determine if there was reasonable evidence that Midshipman Stainback "has the attitude and personal characteristics that are needed to become an officer in the naval service." *See USNAINST 5420.24E.*     This determination cannot have been properly made without some analysis and consideration of the effects of the ADD on Midshipman Stainback's performance, versus the results of a poor or complacent attitude.

## D.    Relief Sought

Midshipman Stainback is an average midshipman who will make an above average officer in the Fleet. One need only look to his reaction in the local restaurant when faced with an impending tragedy. Decisive and purposeful, he clearly possesses the leadership qualities the Navy requires in these tense times. One need only look to the words of those who know him best, such as Cmdr (Ret) Joseph Rubino, who strongly recommends him for retention in the Brigade, noting that "when push comes to shove, Matt is a hero." *See Enclosure 9.*  When interviewed by Shipmate in December, 2001, then Superintendent VADM John Ryan credited Midshipman Stainback as the reason that he was so enthusiastic about the Brigade: *"I could not be prouder of this young man who reacted in a heroic manner at a restaurant on a Sunday afternoon to save a shipmate. Bancroft Hall is full of Matt Stainbacks, young men and women who are very capable and ready to respond to life's challenges, yet they want to be even better. That's what keeps me so enthusiastic".* *See Enclosure 10.*

It is also important to recognize that Midshipman First Class Stainback has an unyielding desire to serve his country as a Naval or Marine Corps Officer.  Midshipman First Class Stainback had his choice of colleges to attend, with full scholarships.   Clearly Midshipman Stainback did not attend the Naval Academy just in order to receive a free education, as is suggested in the record submitted to the Academic Board.  Midshipman Stainback attends the Academy in order to be an

officer, and to serve his country. Speaking at the Naval Academy commencement ceremony on May 28, 2004, General Richard B. Myers, the Chairman of the US Joint Chiefs of Staff, saluted the attitude demonstrated by Midshipman First Class Stainback– the attitude of "put me in coach". An individual's dedication and commitment to the service, and their aptitude to be an outstanding military leader, is not always revealed in their training and performance evaluations. General Myers related how his own mandatory ROTC and summer camp training earned him poor evaluations: *"(I)n fact, (my performance evaluation) wasn't mediocre; it was really bad!." See Exhibit 12.* General Myers recalled that the words on his training report were *"Cadet Myers doesn't have much of a future in the military."* General Myers states that even after receiving negative evaluations in his training, he ignored the evaluations, and resolved to always give 100%, and focused on spending his career *"surrounded by people with high standards, a sense of purpose, and a noble cause."*

Midshipman Stainback's record as a midshipman does not evidence a lack of courage or character, but reflects the maturation process expected of young men. As the Naval Academy well knows, some young men mature more quickly than others and often times there are underlying reasons for this difference. Many times this difference can be explained by leadership, or a lack thereof. Other times, the difference can be explained by a physical ailment, such as ADD, from which Midshipman Stainback suffers. In fact, a cursory review of the summary attached to the Superintendent's memo of May 10, 2004, reflects a series of minor infractions that hardly amount to any reasonable basis underlying a decision to separate Midshipman First Class Stainback *three weeks before graduation.*

What important is that Midshipman Stainback has demonstrated clear leadership abilities, has consistently received high marks for his leadership in his company, and has that valued "put me in coach" attitude. Midshipman First Class Stainback has been dedicated to being a Naval or Marine Corps Officer, and remains dedicated to serving his country in that capacity. There is simply no compelling reason why the investment that the United States has made in Midshipman First Class Stainback, and the investment that Midshipman Stainback has made in his country, should be thrown away, days before his graduation and commissioning.

Based on the foregoing, I request on behalf of Midshipman Stainback that he be permitted to graduate in August 2004. The additional time at the Naval Academy will provide an ample opportunity to monitor Midshipman Stainback's performance and ultimately his aptitude for commissioned service. If the foregoing is not accepted, I would request that the Academic Board be reconvened to consider Midshipman Stainback's case, with the benefit of his full and complete record, and with notice sufficient for him to present meaningful materials and witnesses on his behalf. Failing these options, I would request that Midshipman Stainback be separated for medical reasons in view of his ADD and that his repayment obligation be waived, accordingly.

Thank you for your careful consideration of this important matter.

# ENCLOSURE 1

NAVSO 1650/16 (REV 7-90)
S/N 0104-LF-982-3000

# DEPARTMENT OF THE NAVY

## THIS IS TO CERTIFY THAT

### THE SECRETARY OF THE NAVY HAS AWARDED THE

# NAVY AND MARINE CORPS ACHIEVEMENT MEDAL

TO

## MIDSHIPMAN THIRD CLASS MATTHEW K. STAINBACK, UNITED STATES NAVY

FOR



PROFESSIONAL ACHIEVEMENT IN THE SUPERIOR PERFORMANCE OF HIS DUTIES WHILE SERVING AS A MIDSHIPMAN AT THE UNITED STATES NAVAL ACADEMY ON 19 AUGUST 2001. MIDSHIPMAN STAINBACK, WHILE IN A LOCAL ANNAPOLIS, MARYLAND RESTAURANT, TOOK CHARGE OF A LIFE THREATENING SITUATION AND ADMINISTERED CARDIOPULMONARY RESUSCITATION TO A HEART ATTACK VICTIM, LATER IDENTIFIED TO BE THE DEAN OF ADMISSIONS, UNITED STATES NAVAL ACADEMY. HIS TIMELY EFFORTS STABILIZED THE VICTIM UNTIL PARAMEDICS COULD ARRIVE AND TAKE OVER THE SITUATION. FURTHERMORE, UPON BEING RELIEVED BY THE PARAMEDICS, HE PROVIDED COMFORT TO THE VICTIM'S WIFE UNTIL FAMILY MEMBERS COULD ARRIVE. DUE TO HIS QUICK REACTION AND INITIATIVE, MIDSHIPMAN THIRD CLASS STAINBACK IS CREDITED WITH SAVING THE VICTIM'S LIFE. MIDSHIPMAN THIRD CLASS STAINBACK'S EXCEPTIONAL PROFESSIONAL ABILITY, PERSONAL INITIATIVE, AND UNSWERVING DEVOTION TO DUTY REFLECTED GREAT CREDIT UPON HIMSELF AND WERE IN KEEPING WITH THE HIGHEST TRADITIONS OF THE UNITED STATES NAVAL SERVICE.

GIVEN THIS    28th    DAY OF    AUGUST 2001

FOR THE SECRETARY OF THE NAVY

J. R. RYAN
Vice Admiral, United States Navy
Superintendent, U.S. Naval Academy

00313

# ENCLOSURE 2

# 6TH COMPANY

## October Midshipman of the Month

is hereby granted to:

### 1/c Matt Steinback

for outstanding performance in Sixth Company. Matt has been highly involved with the Company, from planning events to helping with spirit related activities. Through his work as Assistant Hot 6 Camping Trip Liaison Officer, Matt provided assistance in the planning and execution of the Hot 6 Camping Trip. As Battalion Action Officer for the "Haunted Hall", Matt was in charge of setting up, manning, and cleaning the "Haunted Hall". Not only did his work provide many children with [...] organized by him, Sixth Company camaraderie.

Date: 02 November 2003

MIDN LT Clay Blackburn
Sixth Company Commander

00315

# ENCLOSURE 3

SquirrelMail

**Current Folder: Sent**

Compose  Addresses  Folders  Options  Search  Help

Sign Out
SquirrelMail

Message List | Delete | Edit
Message as New                          Previous | Next          Forward | Forward as Attachment | Reply | Reply All

       **Subject:** Course change
         **From:** m046582@usna.edu
         **Date:** Wed, February 18, 2004 10:14 am
           **To:** bowman@usna.edu
 **Priority:** Normal
 **Options:** View Full Header | View Printable Version

Coach,

    I did not get my marine service selection even after the extra billets
came out a week ago, so i have been trying to find an aviation
practicum class that fits my schedule, but there arent any. My Marine
practicum teacher told me to stop coming to class because there is no
point anymore, but since that class has not been dropped from my
matrix yet, I got an "I" for a grade. I also do not have an aviation
class that I can fit into.

    My capstone class stopped meeting last week, so today i am going to
start going to the aviation practicum class that i can now attend
because of that opening in my schedule. I know that this is a
drop/add nightmare, so i was wondering how to go about this. I dont
want to get in trouble and I have no idea what to do. Please let me
know what kind of action I should take. I can meet with you later
today if that helps.

Thanks,

Matt

*Class was meeting. He had not attended for 2½ weeks at this point.*

*Did not attend for another week, the 23rd of February*

00317

8

# ENCLOSURE 4

**From:**      Stephen Gozzo
**To:**        Spring 2004 SeaNav All Instructors + Adjuncts
**Date:**      2/17/2004 9:32:23 AM
**Subject:**   MIDSHIPMAN INCORRECTLY ENROLLED IN NS40X

All,

As you can see by this e-mail, mids that may have changed practicums on their own and never came through me are still causing problems.

~~Please review your class rosters.  Try to find the mid who shows up and is not on your roster, and the mid~~ who is on the roster, yet is absent.  I need to know about them and they need to be directed to see me ASAP to make practicum scheduling changes.  I direct each mid I reschedule to touch base with both his former and new practicum instructors.  Info to be passed between instructors includes grades and instructor input assessments.

If you can believe it, we still have new changes ongoing as mids have medical and NR interviews as late as this week.  Hang in there.

Thank you for your help.

r/
LCDR Gozzo


>>> Richard Davis 02/17/04 09:16AM >>>
Midshipman Stainback should have seen MAJ Gozzo for a MIDREC card for the change.  All such changes need to go thru MAJ Gozzo.

Thanks  Richard Davis

>>> "John W Hatala" <hatalas@comcast.net> 2/16/2004 9:51:00 AM >>>
Registrar,
    MIDN 1/C Stainback is on my roster for NS404 when I entered grades.  However, he was not selected for the Marine Corps during service assignment and was subsequently changed to another NS class.

                      Maj J.W. Hatala


CC:            Davis, Richard;  Vint, Charles

00319

# ENCLOSURE 5

MEMORANDUM                                                          24 MAY 2004

From:  MIDN 1/C Stainback
To:    Tom McCarthy Jr.

Subj:  EVENTS LEADING TO ACADEMIC BOARD

1.  Friday, 23 April, I was told by LT McKenna to report to LT Olson's office at 1300.
    When I reported, I was told by LT Olson that there was a possibility that I would be sent
    to an academic board. LT Olson said that the Commandant did not know what to do with
    my case, but they were notifying me of the academic board as a possibility. He gave me a
    document acknowledging this notification, and I signed it. This was the only document
    that I received. When I asked about the date and time that was on the sheet, he told me
    that they just put that there because they had to put something down, and that they did not
    know when the academic board would go, if it went at all. I asked LT Olson when I
    would find out if I were going to the board, and he told me that I would be notified as
    soon as they knew. He told me that they would give me my packet that afternoon as soon
    as it was compiled.
2.  At roughly 1900 on 23 April, I opened an e-mail from Mr. Albert Wardlaw. He attached
    a PDF file containing my packet. The e-mail had been sent at roughly 1545.
3.  Shortly after noon meal formation on Monday, 26 April I was notified by LT McKenna
    that I was indeed going before an academic board. LT Olson further instructed me that
    afternoon to be ready for the board at 1200 on 27 April.
4.  The following day, LT McKenna sent MIDN joslyn Hemler to pull me from class at
    roughly 1100. I was then told to change and was escorted to the academic board by LT
    McKenna.

                                    Very Respectfully,

                                    Matthew Stainback
                                    MIDN      USN

00321

# ENCLOSURE 6

00322

U.S. Naval Academy
Annapolis, MD 21412
*1266   23 APR 2004*
(Time/Date)

From:   Midshipman First Class Matthew K. Stainback, USN,
        Class of 2004
To:     Commandant of Midshipmen

Subj:   ACKNOWLEDGMENT OF APPEARANCE BEFORE THE NAVAL ACADEMY
        ACADEMIC BOARD DUE TO INSUFFICIENT APTITUDE

1.   I hereby acknowledge receipt of advanced notice to appear
~~before a Naval Academy Academic Board at 1200, 27 April 2004~~
in Room 300, Leahy Hall.

2.   I further acknowledge that I will:

     a.   Be present while the record of academic and military
performance is presented to the board and when the decision of
the board is announced, but not during the deliberation of the
Board.

     b.   Be allowed to examine or be provided a copy of any
documentary evidence, including any summary of my academic and
military performance, which is considered by the Board.

     c.   Be entitled to present any facts in my own behalf,
including documentary evidence and written statements of third
parties, concerning my academic and military performance.   Should
I elect to do so, twenty-four (24) hours prior to the
commencement of the Board, I will submit documentary evidence to
the Aptitude Officer for the Board's consideration.

     d.   Be entitled to consult freely with anyone, including
counsel, in preparing to appear before the Academic Board.   Upon
request, counsel may attend the Board, but not in a
representative capacity.   I understand that I must present my own
case.

3.   I further acknowledge receipt of the Commandant of
Midshipmen's letter to the Academic Board dated 9 April 2004. I
understand that the Board will consider the Commandant of
Midshipmen's letter, any additional written or oral evidence
received in open sessions of the Board and any facts which I
present in making a decision in my case.

                                        (Signature)

Copy to:
2ND Battalion Officer
6th Company Officer
Commandant's SJA
Secretary, Naval Academy Academic Board

00323

# ENCLOSURE 7

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*
Thomas McCarthy, Sr., PC, *Member*

Brennan C. McCarthy
*Associate Member*

**Via Telecopier**
**(410) 293-7029**

Captain Charles Leidig, Jr.                                    May 4, 2004
**Commandant**
United States Naval Academy
Annapolis, Maryland  21402

Re:  **Midshipman Matthew Stainback**
       **M046582**

Dear Captain Leidig:

As you are aware, I represent Midshipman Matthew Stainback.

On Friday, 23 April, 2004 at 12:55 PM, my client was provided with an Acknowledgment of Appearance, which he was asked to sign.  The Acknowledgment provided notice to appear before the USNA Academic Board at Noon the following business day, Monday, 27 April, 2004.

Paragraph numbered 3 of the Acknowledgment states *"I further acknowledge receipt pf the Commandant of midshipman's letter to the Academic Board dated 9 April, 2004."*   At no time has my client been provided with the letter from you of April 9, 2004.

In order to assist my client in evaluating the actions of the Board, I would appreciate being provided with a copy of the letter referred to in the Acknowledgment.

Thank you.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.

# ENCLOSURE 8

00326

## NORTHERN VIRGINIA PEDIATRIC ASSOCIATES, P.C.

Pediatrics • Adolescent Medicine • Pediatric Nephrology

James H. Stallings, Jr., M.D., F.A.A.P.          Lynne D. Myers, M.D., F.A.A.P.          Beverley J. Bayes, M.D., F.A.A.P.
Amin J. Barakat, M.D., F.A.A.P.          Bassam A. Atiyeh, M.D., F.A.A.P.

DOD Medical Examination Review Board                         March 7, 2000
8034 Edgerton Drive, Suite 132
USAF Academy, Colorado
80840-2200

Attention, Petty Officer Evans
Navy Section

Matthew Stainback, DOB 7/15/81, has been under my care since birth. I have also followed his older brother, David. Matt has been generally healthy and active. He has done well in school and sports and has got on well with peers. At times when academic pressures were high, he experienced distractibility and difficulty staying on task. Upon my evaluation 1997, I diagnosed mild Attention Deficit without hyperactivity. He was treated first with Dexedrine and later with Adderall because of side effects.

While Adderall did improve his ability to stay on task for homework, we decided to discontinue the medication upon learning of his interest in a Service Academy. He found that he could maintain focus without the medication.

This young man is socially, athletically and academically gifted. It would be a mistake not to enroll him.

It is my opinion that he is fully qualified to participate in a physically and academically rigorous program at U.S.N.A.

If you wish more information, please contact me.

Sincerely,

James H. Stallings, MD

107 North Virginia Avenue • Falls Church, Virginia 22046 • Telephone: (703) 532-4446 • Fax: (703) 532-8426

00327

# ENCLOSURE 9

00328

26 April 2004

From:  Joe Rubino
To:    Secretary, U.S. Naval Academy Academic Board

Subj:  MIDN MATTHEW STAINBACK

1. I am Matt Stainback's sponsor. My family and I have come to know Matt as a friendly, gregarious, fine young man with great loyalty and a great heart. I would like to respectfully offer some additional background on Matt for the Board's consideration.

2. Matt has a conduct offense on his record from the summer of 2003 involving an incident at a concert at Merriwhether Post Pavillion. I wish to shed some light on the incident because on its face it sounds more disrespectful to the public than it in fact was. I was at the concert and met Matt there. This facility (Pavillion) is a typical open air amphitheater with a capacity of about 40,000, but whose perimeter is entirely wooded. Inside, they serve food and drink, but maintain only two fixed rest rooms. Consequently the rest areas are jammed with crowds of patrons, tremendously long lines, and are virtually not functional. Pavillion personnel patrol the wooded perimeter, but actively disregard the literally thousands of patrons who go into the wooded area to relieve themselves. Matt and I lost each other in the huge crowd, but had agreed to meet at the men's room. Matt, finding an impossibly huge crowd, went to the perimeter. Matt found some bushes that were, in fact, private and away from the crowd, so he was not in public. Unfortunately for Matt, the area he chose was secluded because it was near the back stage, thus triggering Pavillion security. In the misunderstanding that followed Matt was ejected. Later, I explained these circumstances to Pavillion personnel and the police and the incident was completely dropped. All involved noted that Matt was polite and respectful throughout the incident. I would also like to note that Matt was on weekend at the time (this was 4th of July weekend). I spoke to the watch by phone and I brought Matt back to Bancroft Hall not because he was ordered to return, but because I wanted the watch to see he was not exhibiting any signs of drunkenness and had responsibly used alcohol. Matt then returned to my house for the remainder of the weekend. For the incident, Matt was placed on restriction and 4th Class privileges for the year. I know this made for a hard year.

3. I witnessed another significant event that truly demonstrates MIDN Stainback's character. One weekend when Matt was a Third Class, I took him to a local restaurant for lunch. Suddenly, a couple at the next table became distressed and Matt asked if we could help. The man at the table seemed to have feinted. Matt and a waitress determined that there was no pulse and cleared the floor to lay the man down. People began to scream for a doctor or someone with CPR training. There was confusion and chaos in the restaurant. Matt stood up, raised his hands, and calmed the crowd saying in a loud voice "I can do this". Matt then directed the waitress and me as to how to help Matt administer CPR. Matt proceeded to perform CPR on the unconscious man. Paramedics arrived some time later and credited Matt's CPR with saving the life of the man who had suffered a massive heart attack. I was new to the Academy then and hadn't recognized the man

who Matt saved. It was the Naval Academy's Dean of Admissions. Matt was lauded as a hero by the Naval Academy and he was awarded a Navy Achievement Medal for lifesaving. I will never forget the moment of doubt in the restaurant. And I will never forget the guts that a young 3rd class showed to stand up and say, "I can do this," and save a life.

4. Matt is not remarkable in academics or in his personal organization. He is very laid back and sometimes overly easygoing. Unfortunately, Matt's written record apparently reflects this. But Matt can be counted on to act heroically when called upon. Few are actually tested with life and death in their hands at a young age. I've seen Matt with life and death in front of him. I would place my life or my family's in Matt's hands without hesitation. And I would consider my children fortunate to one day serve with Matt in the United States Navy. He can be counted on to be absolutely loyal to his shipmates, to the service, and to the country. When push comes to shove, Matt is a hero. I respectfully request that the Board consider the totality of Matt's character in making your final determination.

Very Respectfully,


Joe Rubino

00330

# ENCLOSURE 10

00331

SUPERINTENDENT'S CALL



# Q&A WITH ACADEMY SUPERINTENDENT VADM JOHN RYAN '67

*By Commander Lawrence Heyworth III '70, U.S. Navy (Ret.)*

This month, *Shipmate* presents an exclusive "question and answer" session with Superintendent VADM John Ryan. Our own Skid Heyworth, Director of Communications, discussed the significant progress made at the Academy over the past three years.

*Shipmate:* Why are you so enthusiastic?

Superintendent: In a word: Midshipmen. Although our Brigade mirrors the society they serve, we expect them to conform to a different and higher standard and the great majority of Midshipmen do just that. They are energizing, bright, ambitious, motivated, and talented—the single best part of my job here. Each day I find several more gems in the mine.

Some of you may know that Dean Dave Vetter suffered a heart attack in August. Fortunately for us, he's making a good recovery and we expect he will continue on as Dean of Admissions. We wish Dave and Royce all the best in their recovery, and our thoughts and prayers are with them. What is noteworthy about this near tragic incident was that MIDN 3/C Matthew Stainback '04, responded to the emergency and saved Dave's life with CPR. When I personally congratulated him, he modestly said "thanks," but that his "CPR was a little rusty" and that he intended to renew and improve his skills as soon as possible. I could not be prouder of this young man who reacted in a heroic manner at a restaurant on a Sunday afternoon to save a Shipmate. Bancroft Hall is full of Matt Stainbacks, young men and women who are very capable and ready to respond to life's challenges, yet they want to be even better. That's what keeps me so enthusiastic.

*Shipmate:* Looking back over the past three years, what are the major success stories?

Superintendent: Well, there are about 3,000 of them—our graduates from the Classes of '99, '00, and '01. Our biggest accomplishment and greatest sense of pride come from providing outstanding Navy and Marine Corps officers for the Fleet and Fleet Marine Force each year. These patriotic men and women are volunteer warriors—*Leaders for the Nation*—serving around the world in exciting, challenging, and rewarding career fields. That is our mission and our graduates provide those of us privileged to serve at this great institution with an immense amount of job satisfaction.

But, there is much to be excited about inside the Yard as well. There are ongoing renovations and improvements to our facilities, curriculum, and processes Yard-wide. Many are already bearing fruit, and when they are all complete, the Naval Academy will be well positioned for the foreseeable future. For example, in the past three years, we have renovated Bancroft, Maury, Mahan, and Sampson Halls, built the Glenn Warner Soccer Facility, begun an extensive comprehensive campaign, funded and hired numerous Distinguished Faculty Chairs, totally upgraded many of our athletic and workout facilities, and modernized our academic curriculum. We are preparing graduates who can keep pace with emerging Fleet needs in the realms of Information Technology, geopolitical awareness, and the fundamental communication skills of writing and public speaking. We have revamped Plebe Summer to make it more challenging and purposeful for both the Plebes and the upperclass detailers. We have taken the initiative to keep our faculty salaries competitive with the private sector to attract and retain only the best professors. And we are not stopping here. The plan is not just to keep *going*, rather to make choices in light of the mission of USNA, and as a result, keep *growing* and improving every day!

*Shipmate:* How has the Strategic Plan factored into those successes?

Superintendent: Simply put, the Strategic Plan is the foundation upon which everything rests. It is and has been our shared roadmap for the future. Over the past three years, the Plan has been our navigation chart for success, improvements, change, and has ensured that we stay true to the great heritage, legacy, and professionalism of our graduates, this institution, the Navy and Marine Corps, and the nation we serve. We aren't resting on our laurels here, either. We recently finished a top-to-bottom review of the Strategic Plan, incorporating once again, input from faculty, staff, Alumni, Midshipmen, and all our stakeholders. This review provided a refreshing new energy to the Plan, an increased sense of ownership for all, and will allow us to use it as our roadmap to the USNA in 2012.

*Shipmate:* What's different about today's Academy and the one you attended in the '60s?

Superintendent: It is better—much better. It was a great institution when I graduated in 1967, but in many ways the Academy is a better place in 2001. We are winning the war for talent! Our Brigade and our faculty are both more diverse and talented. Our classrooms, laboratories and academic opportunities are world class. We are a forward-thinking institution that is well grounded in tradition. We believe our four-year immersion program must engage the minds and hearts of every Midshipman to learn about and practice the virtues of honesty, self-control, perseverance, respect, compassion, and service. *That* is why we have strengthened our leadership, ethics, and character development programs.

This is an institution that remains true to its heritage, while at the same time, staying current in an ever-changing academic and professional military environment.

That's my challenge as Superintendent—*to balance continuity and change.* We must guard against complacency and satisfaction with the status quo. We—as an institution, and as individuals—must continually improve.

00332

5

# EXHIBIT 11

6 May 2004

From: Joe Rubino
To:    VADM Rempt

Subj: MIDN MATTHEW STAINBACK

1. Admiral, the subject individual was separated by an Academic Board on 27 April 2004. I didn't see the Academic Board package until after the Board had completed its process. Having reviewed it, I believe strongly that the package is incomplete.

2. There are charges, and guilty findings in the record that are simply untrue. I have first hand knowledge that certain charges are wrong and should not be in his record, as do certain City leaders and their children who were present and would be happy to so testify. For example, regarding the majors from the summer of 2003, a Fire Department Captain who was present with Matt testified that Matt was not visibly intoxicated and did not trespass. These charges were the result of a misinterpretation and miscommunication.

3. Additionally, the package reflects only negative aspects of this Midshipman while leaving out crucial positive information. There's no question Matt had a weak Second Class year, but the record reflects improvement in grades and performance throughout his first class year.

- He has positive fitness reports throughout his four years at the academy. His latest fitness reports do not appear to be in the package.
- He has positive comments regarding leadership from all his reporting seniors and from his plebes.
- His Company officer nominated him for midshipman of the month in October.
- There is note that he saved a life, but the citation, articles, and praises placed on this midshipman were completely left out.

4. I know you've seen the letter I wrote the Board. I can give more examples of the strength of this young man. For example, I rented a 46 foot sailing yacht to take my family on a sailing vacation last summer. My children are young (Anthony 13, Jessica 9, and Caroline 8) and I knew my wife would be busy watching them. I needed someone I could trust to help me handle a large boat and remain cool, calm, and collected if something came up. I asked MIDN Stainback, because I know he is that kind of individual. At one point we were making the passage from Virgin Gorda to Jost Van Dyke and had gone wide around Tortola to pass around some localized storms. We were about 8 miles at sea north of Tortola. I was at the helm, on a broad reach, with about 18 kt winds, so we were moving pretty well, when my 9 year old daughter fell overboard. In an instant she was in our wake and would quickly be alone in the ocean. Without blinking an eye, Matt called out "Man overboard, I've got her." He dove over the side and swam right to her to make sure she wasn't injured and to make sure she wasn't alone in the ocean while we came back around. I tossed our ring and lifeline and came about. Matt hauled the two of them aboard. Matt is Jessica's hero. This is a simple illustration, but tells volumes about the kind of person Matt is. He is cool under pressure, he reacts

quickly with perfect judgment and he looks out for his shipmates. If I were to go into harms way, Matt would be my first choice to have next to me.

5. The record that was presented to the board is limited, and in no way reflects the character of this young man. I respectfully request that you consider the additional information provided and review the result of MIDN Stainback's Academic (aptitude) Board. I would be happy to discuss any aspect of this fine young man at your convenience.

                              Very Respectfully,



                              Joe Rubino

# EXHIBIT  12

00336

Remarks for

United States Naval Academy Commencement

Annapolis, Maryland

28 May 2004

by

General Richard B. Myers

Chairman of the Joint Chiefs of Staff

It really is a real honor and privilege to be here. I understand that one of the privileges that comes with the invitation to speak is granting amnesty for all minor offenses. I don't know what the definition of minor is, but so be it.

To all the graduates, after four challenging years as midshipmen, you're ready to lead and serve alongside an amazing group of American servicemen and women. The only thing standing between you and that dream come true ... is me.

So I'll tell you I take this duty and privilege very seriously, because you have a key role to play at this crucial moment in our Nation's history.

In my opinion, our Nation has never faced a more significant test than the War on Terrorism. The stakes couldn't be any higher. The stakes are the freedoms our predecessors fought so hard to defend for over two centuries. This is a long-term struggle between extremism on the one hand and freedom on the other. At its heart, it's a test of wills.

Someone in a group I was speaking to once told me we ought to call the War on Terrorism, the war for freedom from fear. You probably recognize the reference. He was referring to a speech that President Franklin Roosevelt gave to Congress in 1941. President Roosevelt said he looked for a world based on four freedoms: freedom of expression, freedom of religion, freedom from want, and freedom from fear.

We're fighting a war against extremists who use terrorism as their weapon to create fear. They attack the most visible targets they can, killing innocent men, women, and children. Our democracy and our prosperity depend on the confidence we have in our leaders, in the rule of law, and the stability of our economy. Terrorists want to destroy that confidence, and with it our way of life.

So there's never been a more important time to serve. There are plenty of ways to serve, in or out of uniform, to make America strong. Lawyers, doctors, business owners, and teachers all serve. When you get involved in your community, in local, state, or federal government, you also serve.

But because you're about to take an oath as a military officer, much more will be asked of you in the coming years. I can say with certainty that you will have a role in fighting this War on

00337

Terrorism. You'll face many enormous challenges. You'll go in harm's way. Sacrifice, as you've learned by now, is part of the job description. But I know you're ready for the challenge.

First of all, you've received what is by any measure an exceptional education. The dedication of your instructors and the quality of the curriculum are among the finest this Nation has to offer, or this world has to offer.

You also learned leadership, teamwork, and integrity as you measured yourself against plebe summer and Sea Trials, summer cruises and late nights studying for "Double E" exams, and helping Annapolis recover from the fury of Hurricane Isabel. The US armed forces need exactly the kind of officers you're trained to be.

Sixty years ago today, our predecessors were on the verge of launching an enormous undertaking: the simultaneous invasions of Normandy in Europe and the Mariana Islands in the Pacific. One historian called this undertaking "the most titanic military effort put forth by any nation at any one time in history."

Next week I'll travel to Normandy to take part in some of the D-Day ceremonies and stand on what most people consider hallowed ground. I hope you've all studied your history enough to appreciate the magnitude of that mission. The odds, the geography, even the weather were against the Allies. Yet we succeeded. But the planning, the logistics, the tactics, and the strategy are only a part of that history lesson. The invasion succeeded because of leadership, plain and simple.

Nearly 8,000 Allied ships and landing craft took part in the operation. Facing deadly German fire, notorious coastal currents, mines, and a tangle of other deadly obstacles, the U.S. Navy managed to land 176,000 troops. More than 500 brave American sailors died on June 6th alone. Acts of heroism and leadership were the order of the day. Take, for example, Lieutenant Commander Joseph Gibbon, a Naval Academy graduate and commander of one of the Combat Demolition Units.

He led his unit through the dangerous task of demolishing obstacles the Germans had placed on the beach, many of which were mined. Commander Gibbon described how "sailors shinnied up the stakes and stood on each others' shoulders, all in the face of heavy enemy gunfire" to position explosive charges.

His efforts, and the efforts of officers like him, were essential to the success of the operation. There were hundreds and hundreds of other examples of leadership on the beaches of France that day. At the end of the day, the Army's Fifth Corps Commander, Major General Leonard Gerow, sent a message to General Omar Bradley that read, "Thank God for the United States Navy."

Just a few days after those brave Sailors launched the beginning of the end of Hitler's forces, half a world away in the Pacific another group of Sailors and Marines would turn the tide against the Japanese armed forces.

More than 800 ships helped land 130,000 Marines and Soldiers to take the Japanese stronghold of Saipan in the Mariana Islands. Facing rugged terrain under heavy fire, 31 of the 68 armored landing craft were disabled. The enemy fought hard, resorting to suicidal charges and hand-to-hand combat. Despite 16,000 casualties, US forces secured the island by July

12th, piercing Japan's last defensive perimeter.

At the helm of this heroic effort was the steady hand of Admiral Chester Nimitz. He must have learned his leadership lessons very well at Annapolis. The war in the Pacific was not, for the most part, a "joint" operation—at least not by today's standards. The Army and the Navy carved up the theater and fought side by side, but in separate lanes. It took Admiral Nimitz's great wisdom and leadership to create the teamwork that would make this operation a success. It was no small feat, harmonizing the efforts of such forceful personalities as General Douglas MacArthur and Admiral Bull Halsey.

As we fight the War on Terrorism, we're taking Admiral Nimitz's vision of teamwork to whole new heights. I'm very proud of how our services work together. I know the service academies have a healthy rivalry. I add my congratulate to Secretary England's on bringing home the Commander in Chief's Trophy for football this year. As the Chairman I represent all the services, so I celebrate whoever wins.

Our services still have separate cultures, and a healthy level of competition, but we've learned how to fight as one team very well, as the world saw in Iraq. Winning the war on terrorism is not simply a task for the Army, Navy, Air Force, Marines, and Coast Guard. It would be a mistake to think the military could win this war alone.

It's going to take virtually every agency of our government working closely together: the Department of Defense, the Department of State, Treasury, Justice, and all the organizations that deal with law enforcement, plus our Coalition partners. That's the complex environment where your leadership is needed.

We can scarcely imagine how history would have unfolded had the Allies lost, either in Europe or in the Pacific. Tom Brokaw realized that when he visited Normandy and coined the term, "The Greatest Generation." And we can scarcely imagine what our future would look like if the extremism terrorists try to spread replaced the freedoms we've successfully defended for over 200 years.

Fortunately, the next "Greatest Generation" won't let that happen. I could talk for hours about tremendous examples of leadership on the part of our servicemen and women today. But let me give you just one example.

A Marine Private First Class wrote a letter home to his parents, who then shared it with someone on my staff. This young man enlisted after 9-11—in fact at the time he was in college on an ROTC scholarship—but he was eager to make a difference. He's now serving in one of the more dangerous areas of Central Iraq.

He describes how he went on a mission to look at the structural integrity of some of the bridges. In the course of the patrol, they talked to many of the Iraqis, especially the children. They had their medical corpsman take care of some of the children with medical problems. By the time they drove off, the entire town was smiling and waving.

I'll quote, "What I am trying to say to you guys is this: We are making a difference here. An area smack dab in the infamous 'Sunni Triangle,' known for its ruthlessness, is gradually, patrol by patrol, becoming safe and free." End quote.

I'll tell you I just couldn't be prouder of all of our servicemen and women. I challenge you to find a finer institution, a finer group of men and women, anywhere on this planet. Our armed forces embody the absolute best of American values. That's the most powerful weapon that Marine carries with him on patrol.

If someone in our armed forces steps out of line, we hold them accountable and responsible for their actions. We have a system that brings the truth to light, and an institution that constantly strives to improve itself.

And you couldn't ask for a more focused, dedicated, talented group of leaders, from the commanding generals to the ensigns and lieutenants to the seamen and privates and airmen.

Graduates, you have the privilege of leading the Nation's next "Greatest Generation." In return, I charge you to take good care of your people. It's a sacred responsibility, and I'm sure you understand that.

That means more than just taking care of their basic needs, making sure they're fed and rested, trained and ready. It also means making sure every single one of them understands what this war against extremism and terrorism is all about, and why the Nation and the world require so much from them. It means taking care of their families, because as you all know, service in our business is always a team effort.

You'll have the opportunity to make a huge difference in the world. The question I have is, are you confident that you have what it takes to make that difference? Admiral Rempt says you're raring to go. "Put me in, coach" I think is the expression he uses.

Speaking of which, Secretary England mentioned I guess you have a pretty decent lacrosse team this year. I add my congratulations to the Secretary's. And I do hope you beat Princeton tomorrow. That could get us into trouble, because our boss, Secretary Rumsfeld, is a Princeton grad, but I do hope you beat Princeton.

But, "put me in, coach" is exactly the right attitude. My own military career started out at Kansas State University, as was mentioned, where ROTC was at that time mandatory. When I went through summer camp, the officer who wrote my evaluation gave me a pretty mediocre write-up.

In fact, it wasn't mediocre; it was really bad! As I recall, the words on my training report were, "Cadet Myers doesn't have much of a future in the military." Maybe he was right. After 39 years, here I am in a dead-end job.

But I didn't listen to that officer. I got my commission, and I resolved to always give 100%, and it turned out the way it did. I've certainly appreciated the opportunity to spend my career surrounded by people with high standards, a sense of purpose, and a noble cause.

Admiral Nimitz was a super star as a midshipman like some of you, and I understand Admiral Rempt was an overachiever from the beginning as well. But that's not necessarily a prerequisite for a successful career. There's hope for all of us, even the anchor man.

I guess my point is, the most important thing is to believe in yourself. You're exactly the right men and women to face this great threat that our Nation faces today.

00340

We shouldn't take it as a given that freedom and democracy are going to survive in this world. That's a pretty scary thought. But Americans have always stepped up to meet every challenge to our way of life, and as I look at our young men and women in uniform, and all of you here today, I'm very, very optimistic.

I know you'll accomplish great things, things we can't even imagine. And that definitely includes those graduates from allied countries. Defending freedom has to be an international effort. We're all in this together, and the relationships you've formed here are very, very important.

So, congratulations to all of you, and to your families as well, because without them none of your service would be possible.

Thank you for allowing me to be a part of this celebration. May God bless you all, and God bless America.

00341



**DEPARTMENT OF THE NAVY**
DEAN OF ADMISSIONS
UNITED STATES NAVAL ACADEMY
117 DECATUR ROAD
ANNAPOLIS MARYLAND 21402-5017

1920
12-44
4 Jun 04

From:  Dean of Admissions, United States Naval Academy
To:    Superintendent, United States Naval Academy

Subj:  MINUTES OF UNITED STATES NAVAL ACADEMY ACADEMIC
       BOARD OF 27 APRIL, 18, 19, 20, 21, 22, 25 MAY,
       AND 1 JUNE 04 TO CONSIDER CASES OF ACADEMIC
       DEFICIENCY IN CLASSES COMPLETING THE FALL SEMESTER,
       2003

Ref:   (a) USNAINST 5420.24E
       (b) 10 U.S.C. § 6962
       (c) 10 U.S.C. § 6963

Encl:  (1) Complete Record Review Report of Academic
           Deficiency Cases (94 Records)
       (2) Report of Board Reconsideration of Academic
           Deficiency Cases Where Member is Present (if
           Requested) After a Vote to Separate During
           Board Record Review
       (3) Report of Board Reconsideration of Physical
           Education Deficiency Cases Where Member is
           Present (if Requested) After a Vote to Separate
           During Board Record Review
       (4) Report of Board Consideration of Insufficient
           Aptitude Cases where Member is Present (if
           Requested)
       (5) Report of Board Consideration of Requests
           By Former Midshipmen to be Readmitted to the
           Naval Academy

1.  The U.S. Naval Academy Academic Board met on 27
April, 18, 19, 20, 21, 22, 25 May, and 1 June 2004 per
references (a), (b) and (c), and all Board members
were present for each meeting.  The Board included:

VADM R. P. Rempt          Superintendent
CAPT C. J. Leidig         Commandant of Midshipmen
Dean W. C. Miller         Academic Dean and Provost

00342

-1-

CAPT R. L. Thayer            Director, Division of Professional
                                      Development

CAPT D. H. Rau              Director, Division of Engineering
                                      & Weapons

CAPT K. S. Pugh             Director, Division of Mathematics
                                      & Science

COL K. A. Inman             Director, Division of Humanities
                                      and Social Sciences

2.  Also present were representatives from the Academy
Academic Center and the Athletic Department; CAPT E.
Hopkins, MC, USN (Senior Medical Officer); CAPT M. Waters,
JAGC, USN (Staff Judge Advocate); Company and Battalion
officers accompanying midshipmen appearing before the
Board; and interested staff and faculty members.

3.  The following are relevant statistics regarding action
taken and recommended by the Board.

## ACADEMIC DEFICIENCY CASES
### (Based Upon Academic Board Complete Record Review 18, 19, 20, 21, 22, 25 May and 1 Jun 04)

| | RECORD REVIEW ONLY | | | APPEARANCE OF MEMBER BEFORE BOARD (IF REQUESTED) | | | |
|---|---|---|---|---|---|---|---|
| | Complete Records Reviewed | Retained After Rec Review | Separated After Rec Review | Separated No Recon Requested | Retained After Reconsid. | Separated After Reconsid. | Total Separated |
| 2/C | 6 | 2 | 4 | 3 | 1 | 0 | 3 |
| 4/C | 53 | 15 | 38 | 5 | 24 | 9 | 14 |

* One 1/C MIDN separated and retained prior to reconsideration for having passed an exam.

00343

## PHYSICAL EDUCATION DEFICIENCY CASES
### (Based Upon Complete Record Review by the Academic Board 27 Apr and 22 May04)

| | RECORD REVIEW ONLY | | | APPEARANCE OF MEMBER BEFORE BOARD (IF REQUESTED) | | | |
|---|---|---|---|---|---|---|---|
| | Complete Records Reviewed | Retained After Rec Review | Separated After Rec Review | Separated No Recon Requested | Retained After Reconsid. | Separated After Reconsid. | Total Separated |
| 2/C | 18 | 9 | 9 | 0 | 6 | 3 | 3 |
| 3/C | | | | | | | |
| 4/C | 5 | 2 | 3 | 2 | 1 | 1 | 3 |

\* Four 1/C MIDN separated at record review but retained prior to reconsideration for having passed PRT.

## INSUFFICIENT APTITUDE CASE
### (Based Upon Referral from Brigade Aptitude Board 12 Mar, 27Apr, and 25May04)

#### APPEARANCE OF MEMBER BEFORE BOARD (IF REQUESTED)

| | Separated-No Hrg Requested | Retained After Hearing | Separated After Hearing | Total Separated |
|---|---|---|---|---|
| 2/C | 0 | 1 | 0 | 0 |
| 4/C | 0 | 0 | 1 | 1 |

00344

**Former Midshipmen Requesting Re-Admittance to Naval Academy**
**(Based Upon Complete Record Review by the Academic Board 27Apr04)**

RECORD REVIEW ONLY

| Previous Class | Complete Records Reviewed | Readmitted After Record Review | Denied Re-Admittance After Record Review |
|---|---|---|---|
| | | | |
| 2002 | 0 | 0 | 0 |
| | | | |
| 2004 | 4 | 4 | 0 |
| | | | |
| 2006 | 1 | 1 | 0 |
| | | | |
| | 14 | 7 | 7 |

4. Enclosure (1) reflects the total number of Academic deficiency records reviewed by the Board and action taken per that review.

5. Enclosure (2) reports the cases considered by the Board after the midshipmen involved requested reconsideration of the Board's decision to separate for Academic deficiency and the midshipmen personally appeared before the Board (if the Midshipman requested appearance) and action taken per that review.

6. Enclosure (3) reports the cases considered by the Board after the midshipmen involved requested reconsideration of the Board decision to separate for deficiency in physical education requirements and the midshipmen personally appeared before the Board (if the Midshipman requested appearance) and action taken per that review.

7. Enclosure (4) reports the cases considered by the Board to determine if the midshipman involved does not possess sufficient aptitude for commissioning and the midshipman involved is present before the Board (if the midshipman requested appearance) and action taken per that review.

00345

8.  Enclosure (5) reports the cases considered by the Board to review requests made by former midshipmen to be readmitted to the Academy and action taken per that review.

David A. Vetter

00346

MA\... , Academic Board Complete Record Review (94 Records)

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| **MIDN 1/C (2004)** | | | | |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | 3 to 4 |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | 7 to 0 |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | 6 to 1 |
| ▓▓▓▓ | ▓▓▓ | 5 to 2 | | 6 to 1 |
| ▓▓▓▓ | ▓▓▓ | | 6 to 1 | |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| **MIDN 2/C (2005)** | | | | |
| ▓▓▓▓ | ▓▓▓ | 5 to 2 | | 6 to 1 |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | 7 to 0 |
| ▓▓▓▓ | ▓▓▓ | | 6 to 1 | |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | 7 to 0 |
| ▓▓▓▓ | ▓▓▓ | | 6 to 1 | |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | 7 to 0 |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| **MIDN 3/C (2006)** | | | | |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | N/A |
| ▓▓▓▓ | ▓▓▓ | | 4 to 3 | |
| ▓▓▓▓ | ▓▓▓ | | 7 to 0 | |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | N/A |
| ▓▓▓▓ | ▓▓▓ | | 7 to 0 | |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | | 5 to 2 | |
| ▓▓▓▓ | ▓▓▓ | | 4 to 3 | |
| ▓▓▓▓ | ▓▓▓ | | 6 to 1 | |
| ▓▓▓▓ | ▓▓▓ | 5 to 2 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | N/A |
| ▓▓▓▓ | ▓▓▓ | | 6 to 1 | |
| ▓▓▓▓ | ▓▓▓ | 5 to 2 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 4 to 3 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 6 to 1 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 5 to 2 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 5 to 2 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 5 to 2 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |
| ▓▓▓▓ | ▓▓▓ | 7 to 0 | | N/A |

Encl 1

| NAME | SSN | Separate | Retain | Fulfill Obligation |
|---|---|---|---|---|
| **MIDN 4/C (2007)** | | | | |
| ▓ | ▓ | 4 to 3 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | | 5 to 2 | |
| ▓ | ▓ | | 7 to 0 | |
| ▓ | ▓ | | 5 to 2 | |
| ▓ | ▓ | | 6 to 1 | |
| ▓ | ▓ | | 6 to 1 | |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | | 6 to 1 | |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | | 6 to 1 | |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | 5 to 2 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | | 6 to 1 | |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | | 4 to 3 | |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 5 to 2 | | N/A |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | | 6 to 1 | |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | | 5 to 2 | |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | | 6 to 1 | |
| ▓ | ▓ | 5 to 2 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | | 5 to 2 | |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 6 to 1 | | N/A |
| ▓ | ▓ | 7 to 0 | | N/A |
| ▓ | ▓ | 4 to 3 | | N/A |
| ▓ | ▓ | | 5 to 2 | |

NARB Academic Board Reconsideration of Acad & Deficiency Cases
(54 Appeals Heard by Academic Board,  12 Did Not Request Reconsideration)

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|---|---|---|---|---|
| **MIDN 1/C (2004)** | | | | |
| ▉ | ▉ | | | |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | | 6 to 1 | |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|---|---|---|---|---|
| **MIDN 2/C (2005)** | | | | |
| ▉ | ▉ | | 6 to 1 | |
| | | | | |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|---|---|---|---|---|
| **MIDN 3/C (2006)** | | | | |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | 7 to 0 | | N/A |
| ▉ | ▉ | 7 to 0 | | N/A |
| ▉ | ▉ | 4 to 3 | | N/A |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | 5 to 2 | | N/A |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | 7 to 0 | | N/A |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | 4 to 3 | | N/A |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | 7 to 0 | | N/A |
| ▉ | ▉ | 4 to 3 | | N/A |
| ▉ | ▉ | 7 to 0 | | N/A |
| ▉ | ▉ | | 5 to 2 | |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | | 5 to 2 | |
| ▉ | ▉ | | 5 to 2 | |
| ▉ | ▉ | 4 to 3 | | N/A |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|---|---|---|---|---|
| **MIDN 4/C (2007)** | | | | |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | 4 to 3 | | N/A |
| ▉ | ▉ | | 4 to 3 | |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | | 6 to 1 | |
| ▉ | ▉ | 6 to 1 | | N/A |
| ▉ | ▉ | 5 to 2 | | N/A |
| ▉ | ▉ | 6 to 1 | | N/A |
| ▉ | ▉ | | 5 to 2 | |
| ▉ | ▉ | 7 to 0 | | N/A |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | | 7 to 0 | |
| ▉ | ▉ | | 7 to 0 | |

00349

Encl 2

| | | | |
|---|---|---|---|
| | | 7 to 0 | N/A |
| | | 5 to 2 | N/A |
| | | 7 to 0 | |
| | | 7 to 0 | N/A |
| | | 5 to 2 | N/A |
| | | 6 to 1 | |
| | | 5 to 2 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 6 to 1 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 7 to 0 | |
| | | 6 to 0* | |
| | | 7 to 0 | |

*The decision to Separate on these noted cases is Based Upon the prior Complete Record Review by the Academic Board, as the Member did not Request Reconsideration or Personal Appearance Before the Board. For 1/C and 2/C no Additional Vote was Taken on obligation, the Vote is Brought Forward from the Earlier Board Vote based upon a Complete Record Review.

Encl (2)

00350