**MAY04 Academic Board Reconsideration of Phys Ed Deficiency Cases (18 Records--Based Upon Complete Record Review May 04)**

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| MIDN 1/C (2004) | | | | |
| | | | | |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| MIDN 2/C (2005) | | | | |
| | | | 7 to 0 | |
| | | | 6 to 1 | |
| ✗ | | 5 to 2 | | 6 to 1 |
| ✗ | | 6 to 1 | | 7 to 0 |
| ✗ | | 7 to 0 | | 7 to 0 |
| | | | 7 to 0 | |
| | | | 7 to 0 | |
| | | | 6 to 1 | |
| | | | 6 to 1 | |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| MIDN 3/C (2006) | | | | |
| | | | 5 to 2 | |
| | | | 6 to 1 | |
| ✗ | | 7 to 0 | | |
| ✗ | | 6 to 1 | | |
| | | | 6 to 1 | |
| | | | 7 to 0 | |

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| MIDN 4/C (2007) | | | | |
| ✗ | | 5 to 2 | | |
| | | | 6 to 1 | |

NOTE: Per SECNAVINST 1531, Physical Education deficiencies are regarded the same as "pure" academic failures, like receipt of an "F" in a required course. These cases are segregated in the minutes because they involve similar input from Physical Education Personnel and the Board hears them as a group to promote efficiency. The Member is not present for these reviews. When the vote of the Board is to separate, that decision is final unless the member requests reconsideration by the Board either to personnally appear before the Board, or to present new evidence not yet considered. As 3/C and 4/C members do not have a service or monetary obligation from Academy attendance, no obligation vote is taken, hence the N/A. SECNAVINST 1531 allows the Board to determine that a member failed "despite determined efforts" and recommend no obligation arising from attendance at the Academy be enforced to ASN (M&RA).

Encl (3)

00351

**MAR, APR 04 Academic Board Consideration of Insufficiency for Aptitude Case (5 Records--Based Upon Referral from Brigade Aptitude Board)**

| NAME | SSN | Separate | Retain | Fullfill Obligation |
|------|-----|----------|--------|---------------------|
| **MIDN 1/C (2004)** | | | | |
| ███████████ | ███████ | 7 to 0 | | 7 to 0 |
| | | 7 to 0 | | 7 to 0 |
| ███████████ | 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 | 7 to 0 | | 7 to 0 |
| ███████████ | | 7 to 0 | | 7 to 0 |
| NAME | SSN | Separate | Retain | Fullfill Obligation |
| **MIDN 2/C (2005)** | | | | |
| ███████████ | | | 4 to 3 | |
| NAME | SSN | Separate | Retain | Fullfill Obligation |
| **MIDN 3/C (2006)** | | | | |
| ███████████ | ███████ | 7 to 0 | | N/A |
| NAME | SSN | Separate | Retain | Fullfill Obligation |
| **MIDN 4/C (2007)** | | | | |
| ███████████ | ███████ | 7 to 0 | | N/A |
| *Must be Unanimous Board Decision to Separate | | | | |

NOTE: Insufficient Aptitude cases are seen by the Board per 10 USC 6962. The Board must unanimously determine that the member does not possess the aptitude to become a commissioned officer. Any unanimous recommendation for separation based upon this statute must be reported to ASN (M&RA) for the ultimate decision on separation.

Encl (4)

00352

**MAY 04 Academic Board READMIT Case**
**(14 Records--Based Upon Complete Record Review May 04)**

| NAME | Previous Alpha | Readmit | Deny Readmit | Class |
|---|---|---|---|---|
| ███████ | ██████ | 6 to 1 | | |
| ███████ | ██████ | 6 to 1 | | |
| ███████ | ██████ | 6 to 1 | | |
| ███████ | ██████ | 6 to 1 | | |
| ███████ | ██████ | 6 to 1 | | |
| ███████ | ██████ | 6 to 1 | | |
| ███████ | ██████ | 5 to 2 | | |
| ███████ | ██████ | | 7 to 0 | |
| ███████ | ██████ | | 7 to 0 | |
| ███████ | ██████ | | 6 to 1 | |
| ███████ | ██████ | | 7 to 0 | |
| ███████ | ██████ | | 6 to 1 | |
| ███████ | ██████ | | 7 to 0 | |
| ███████ | ██████ | | 7 to 0 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

NOTE: Requests from former Midshipmen for Academy READMISSION are considered by the Board per USNAINST 5420.

Encl (5)

18 JUN 2004

From:  First Class Matthew Stainback, USN, 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, Class of 2004
To:    Chief of Naval Personnel
Via:   Superintendent, United States Naval Academy

Subj:  WITHDRAWAL OF VOLUNTARY RESIGNATION

    1.  I hereby withdrawal my 24 May 2004 request for voluntary resignation.

Very Respectfully

Matthew K. Stainback
MIDN          USN

00354

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*
Thomas McCarthy, Sr., PC, *Member*

Brennan C. McCarthy
*Associate Member*

**Hand Delivered**

Vice-Admiral Rodney P. Rempt                                    June 21, 2004
**Superintendent**
United States Naval Academy
Annapolis, Maryland  21402

## Re:  Midshipman First Class Matthew K. Stainback

Dear Admiral Rempt:

    As you are aware, I am assisting Midshipman First Class Matthew K. Stainback in responding to the recommendation for separation originating from the Academic Board, and pending submittal to the Secretary of the Navy.  I have enclosed herewith Midshipman Stainback's memorandum and enclosures to accompany your report and recommendation.

    Prior to submitting your recommendation to the Secretary, I would urge you to consider allowing Midshipman First Class Stainback the ability to obtain his degree from the Academy, while not granting him a commission.

    As you know, the Academic Board voted to separate Midshipman Stainback days before the end of the academic year, and his graduation.  The basis of the Board's decision was that Midshipman Stainback did not have the "aptitude" to be commissioned.  The Board's decision was not based on any finding of academic deficiency.   The day after the Board's decision, Midshipman Stainback was forced by the Academy to elect to take incompletes in three of his courses.  Midshipman Stainback successfully completed and passed the balance of his courses for the semester.   Consequently, Midshipman Stainback need only take the final exams in the courses in which he received incompletes, in order to fully complete all academic requirements for graduation, and to receive his degree.

    The Academy's failure to recognize Midshipman Stainback's lack of aptitude for commissioning until days before his graduation is unfairly prejudicial to Midshipman Stainback's ability to complete his undergraduate degree in a civilian university.  Due to the late action of the Academy, Midshipman Stainback is unable to submit transfer applications to other universities until 2005, and will only be able to transfer two years of credits from the Academy,

00355

forcing him to wait three years until he can obtain an undergraduate degree.

Should Midshipman Stainback be allowed to finish his undergraduate work, which I understand consists of taking three examinations, and to receive his degree from the Academy, he will not contest the Board's determination to deny him a commission.

As you may be aware, when Midshipman Stainback graduated from Gonzaga High School, he was granted acceptances and scholarships by Virginia Tech, Villanova, and the University of Virginia. He was also accepted by Johns Hopkins University. Midshipman Stainback, however, has a strong and dedicated desire to serve his county as a military officer, and made acceptance at the Naval Academy his first and foremost desire. As you are also aware, Midshipman Stainback suffers from mild attention deficit disorder, for which he is not able to take medications while at the Academy, and consequently, Midshipman Stainback has successfully struggled through four academic years with the challenge of overcoming his focus and distractability issues. Midshipman Stainback's has achieved a final GPA of 2.45.

I also respectfully request that you recommend a waiver of the reimbursement obligation for Midshipman Stainback, with a finding that he is physically disqualified, due to his continuing struggle with ADD, or for humanitarian reasons. Midshipman Stainback's ADD has presented him with significant– and perhaps insurmountable– challenges at the Academy, in personal organization and distractability. Despite these problems, Midshipman Stainback has achieved a passing GPA, and achieved other honors and awards relating to his performance. Considering the many demands of the Academy on its midshipmen, which demands require the highest degree of organization and focus, and his ADD challenges, Midshipman Stainback's achievements, such as they are, are remarkable. The effects of the ADD on Midshipman Stainback's performance can most easily be ascertained by reviewing his performance in the one area where it would not be a factor– physical fitness. Midshipman Stainback's fitness record is exemplary, and clearly demonstrates a determined desire to meet and exceed the Academy's physical fitness requirements. I suggest that Midshipman Stainback's less noteworthy achievements in academics and performance are not the result of any lesser desire to excel, but a physical inability to achieve such excellence.

Thank you for your careful consideration of these requests.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.
Enclosures

00356

**DEPARTMENT OF THE NAVY**

UNITED STATES NAVAL ACADEMY

121 BLAKE ROAD

ANNAPOLIS, MARYLAND 21402-5000

5730
1-155

JUN 2 3 2004

The Honorable John Warner
United States Senate
225 Russell Senate Office Building
Washington, DC  20510-4801

Attn:  Ms. Susan Berry

Dear Senator Warner,

Thank you for your letter of May 5, 2004, regarding the disenrollment of Midshipman Matthew K. Stainback, U.S. Navy, from the U.S. Naval Academy by the Academic Board.

At the Academy our mission is to instill in midshipmen the means to develop morally, mentally and physically so they can honorably serve the men and women of our Navy and Marine Corps as commissioned officers. In order to meet this mission, we must necessarily establish and strive to enforce the highest of standards for our midshipmen.

Senator, one of the most challenging duties performed at the Academy is reviewing cases that may result in the disenrollment of midshipmen for not maintaining standards. As you are aware, Midshipman Stainback was separated by decision of the Academic Board which found he does not possess aptitude for commissioning in the naval service. I assure you that the Academy's Academic Board is not a mere formality. I personally chair the Board, and its membership is made up of the Academic Dean, the Commandant of Midshipmen, and the four heads of what would be our "colleges" in a civilian university setting. The Board does not merely decide retention issues based upon any one aspect of a midshipman's record, but takes a great deal of time to consider objective and subjective input from the individual's chain of command, matters the member presents for Board review and, ultimately, information presented personally by the Midshipman before the Board. An Academic Board for Aptitude occurs when the Commandant of Midshipman awards a midshipman an "F" in aptitude for any given semester at the Naval Academy. Additionally, Academic Board members are required by statute to unanimously sustain a finding of substandard aptitude before a midshipman can be recommended for disenrollment. The Board takes a focused, deliberate look at any midshipman being considered for separation on the basis of failing to possess the aptitude for commissioning, and even more so for a first class (senior) midshipman like Midshipman Stainback approaching graduation.

As Midshipman Stainback released his privacy rights to your office in this matter, we provide the following information relevant to his case. You correctly emphasize Midshipman Stainback's meritorious actions in saving the life of our Dean of Admissions, Col. Dave Vetter, USMC (Ret.). Midshipman Stainback has our undying gratitude for his decisive action. His achievement certainly made an already difficult decision all the more challenging. Some particulars in his case may assist in understanding the ultimate outcome. For example, part of the Aptitude for Commissioning system assigns each midshipman a Peer, Upper-Class, and Company Officer ranking, which then is combined to compute an overall ranking for each midshipman amongst his classmates in company. Midshipman Stainback has been consistently ranked at the bottom of his class in each of the last three semesters. Throughout the past three years, both prior to and since receiving the Navy and Marine Corps Achievement Medal in August of 2001, his performance continually and steadily declined. Accompanying the aptitude rankings for his last semester were many negative comments from his classmates, includes descriptors like: sloppy, irresponsible, uncommitted, apathetic, careless and lackadaisical. Of the 18 total comments entered, 15 were negative. These rankings and comments were taken into account by the Company Officer responsible for assigning his military aptitude for commissioning grade.

00357

5730
1-156

JUN 2 3 2004

Unfortunately, Midshipman Stainback has also committed four major conduct violations during his tenure as a midshipman, including:

- Abuse of the 4/C indoctrination system for unprofessional actions with a plebe which precipitated his relief from Plebe Detail (where he was acting in a capacity akin to a drill instructor);
- Disorderly or discrediting public conduct (urinating in a wooded area of an outdoor concert hall that was restricted from public access and disregarding the direction of a security officer);
- Intentionally missing 8 academic classes during Spring Semester 2003; and,
- Intentionally missing an academic class required for graduation from January 28 to February 23, 2004, including an exam administered during that period.

Additionally, Midshipman Stainback committed nine minor conduct offenses which resulted in his amassing a total of 335 demerits, which is the maximum allowed for a first class midshipman. In fact, Midshipman Stainback has received an "F" in conduct for three straight semesters. It should also be noted that, while staying at the Naval Station Bachelor's Enlisted Quarters to finish classes and complete his written statement to the Secretary of the Navy following the Board's decision, Midshipman Stainback exhibited further conduct issues before he left the Academy, as he was being investigated for his failure to meet several required call-in musters and violating regulations by having a female in his room.

Midshipman Stainback's academic record also reflected his willingness to apply only minimal effort to this important mission area. Although his overall grade point average exceeded minimum standards for graduation, he failed three required courses and received a "D" in eight other courses over the past four years at the Academy. His excellent SAT scores (1410 total) attest to the fact that he certainly has the potential to apply more talent to academics. Following his second class (junior) year Spring semester, moreover, Midshipman Stainback appeared before the Academic Board for failing to achieve at least a 2.0 grade point average for two consecutive semesters. He appealed the Board's initial decision not to retain him, appeared before the Board and was ultimately retained in the Brigade and placed on Aptitude Remediation. While on remediation, however, he committed two of the major conduct offenses discussed above and was therefore considered an aptitude remediation failure by the Commandant of Midshipmen. His case was then forwarded to the Academic Board for review.

I hope this information is helpful for your communication with your constituent even though I know this response will be disappointing. We all clearly recognize that Midshipman Stainback has the potential to excel in any endeavor he undertakes and wish him only the best of luck in the future. If you or your staff should have any further questions, my Staff Judge Advocate, CAPT Mike Waters, JAGC, U.S. Navy, can be reached at 410-293-1564. I wish to thank you for your continued interest and support of the U.S. Naval Academy.

Sincerely,

RODNEY P. REMPT
Vice Admiral, U.S. Navy
Superintendent

2

00358

**DEPARTMENT OF THE NAVY**

UNITED STATES NAVAL ACADEMY

121 BLAKE ROAD

ANNAPOLIS, MARYLAND 21402-5000

5730
1-156

JUN 2 3 2004

The Honorable James P. Moran
Member, United States House of Representatives
6116 B Franconia Rd
Alexandria, VA 22310

Dear Mr. Moran:

Thank you for your letter of May 4, 2004, regarding the disenrollment of Midshipman Matthew K. Stainback, U.S. Navy, from the U.S. Naval Academy by the Academic Board.

At the Academy our mission is to instill in midshipmen the means to develop morally, mentally and physically so they can honorably serve the men and women of our Navy and Marine Corps as commissioned officers. In order to meet this mission, we must necessarily establish and strive to enforce the highest of standards for our midshipmen.

Congressman, one of the most challenging duties performed at the Academy is reviewing cases that may result in the disenrollment of midshipmen for not maintaining standards. As you are aware, Midshipman Stainback was separated by decision of the Academic Board which found he does not possess aptitude for commissioning in the naval service. I assure you that the Academy's Academic Board is not a mere formality. I personally chair the Board, and its membership is made up of the Academic Dean, the Commandant of Midshipmen, and the four heads of what would be our "colleges" in a civilian university setting. The Board does not merely decide retention issues based upon any one aspect of a midshipman's record, but takes a great deal of time to consider objective and subjective input from the individual's chain of command, matters the member presents for Board review and, ultimately, information presented personally by the Midshipman before the Board. An Academic Board for Aptitude occurs when the Commandant of Midshipmen awards a midshipman an "F" in aptitude for any given semester at the Naval Academy. Additionally, Academic Board members are required by statute to unanimously sustain a finding of substandard aptitude before a midshipman can be recommended for disenrollment. The Board takes a focused, deliberate look at any midshipman being considered for separation on the basis of failing to possess the aptitude for commissioning, and even more so for a first class (senior) midshipman like Midshipman Stainback approaching graduation.

As Midshipman Stainback released his privacy rights to your office in this matter, we provide the following information relevant to his case. You correctly emphasize Midshipman Stainback's meritorious actions in saving the life of our Dean of Admissions, Col. Dave Vetter, USMC (Ret.). Midshipman Stainback has our undying gratitude for his decisive action. His achievement certainly made an already difficult decision all the more challenging. Some particulars in his case may assist in understanding the ultimate outcome. For example, part of the Aptitude for Commissioning system assigns each midshipman a Peer, Upper-Class, and Company Officer ranking, which then is combined to compute an overall ranking for each midshipman amongst his classmates in company. Midshipman Stainback has been consistently ranked at the bottom of his class in each of the last three semesters. Throughout the past three years, both prior to and since receiving the Navy and Marine Corps Achievement Medal in August of 2001, his performance continually and steadily declined. Accompanying the aptitude rankings for the last semester were many negative comments from his classmates, includes descriptors like: sloppy, irresponsible, uncommitted, apathetic, careless and lackadaisical. Of the 18 total comments entered, 15 were negative. These rankings and comments were taken into account by the Company Officer responsible for assigning his military aptitude for commissioning grade.

00359

5730
1-156

Unfortunately, Midshipman Stainback has also committed four major conduct violations during his tenure as a midshipman, including:

- Abuse of the 4/C indoctrination system for unprofessional actions with a plebe which precipitated his relief from Plebe Detail (where he was acting in a capacity akin to a drill instructor);
- Disorderly or discrediting public conduct (urinating in a wooded area of an outdoor concert hall that was restricted from public access and disregarding the direction of a security officer);
- Intentionally missing 8 academic classes during Spring Semester 2003; and,
- Intentionally missing an academic class required for graduation from January 28 to February 23, 2004, including an exam administered during that period.

Additionally, Midshipman Stainback committed nine minor conduct offenses which resulted in his amassing a total of 335 demerits, which is the maximum allowed for a first class midshipman. In fact, Midshipman Stainback has received an "F" in conduct for three straight semesters. It should also be noted that, while staying at the Naval Station Bachelor's Enlisted Quarters to finish classes and complete his written statement to the Secretary of the Navy following the Board's decision, Midshipman Stainback exhibited further conduct issues before he left the Academy, as he was being investigated for his failure to meet several required call-in musters and violating regulations by having a female in his room.

Midshipman Stainback's academic record also reflected his willingness to apply only minimal effort to this important mission area. Although his overall grade point average exceeded minimum standards for graduation, he failed three required courses and received a "D" in eight other courses over the past four years at the Academy. His excellent SAT scores (1410 total) attest to the fact that he certainly has the potential to apply more talent to academics. Following his second class (junior) year Spring semester, moreover, Midshipman Stainback appeared before the Academic Board for failing to achieve at least a 2.0 grade point average for two consecutive semesters. He appealed the Board's initial decision not to retain him, appeared before the Board and was ultimately retained in the Brigade and placed on Aptitude Remediation. While on remediation, however, he committed two of the major conduct offenses discussed above and was therefore considered an aptitude remediation failure by the Commandant of Midshipmen. His case was then forwarded to the Academic Board for review.

I hope this information is helpful for your communication with your constituent even though I know this response will be disappointing. We all clearly recognize that Midshipman Stainback has the potential to excel in any endeavor he undertakes and wish him only the best of luck in the future. If you or your staff should have any further questions, my Staff Judge Advocate, CAPT Mike Waters, JAGC, U.S. Navy, can be reached at 410-293-1564. I wish to thank you for your continued interest and support of the U.S. Naval Academy.

Sincerely,

RODNEY P. REMPT
Vice Admiral, U.S. Navy
Superintendent

2

00360

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
themccarthyfirm@aol.com

Thomas McCarthy, Jr., PC, *Member*                    Brennan C. McCarthy
Thomas McCarthy, Sr., PC, *Member*                    *Associate Member*

*Via Telecopier*
*(410) 293-0005*

Captain Michael Waters                                  8 July, 2004
**Legal Advisor to**
**Superintendent, United States Naval Academy**
Buchanan Road
Annapolis, MD 21402

Re: Midshipman Matthew K. Stainback

Dear Captain Waters:

Yesterday I was provided with the enclosed *Final Report of Aptitude Remediation for Midshipman Stainback* from Robert A. Bouffard, CDR, and Midshipman Aptitude Mentor, to the Commandant dated 26 January, 2004, wherein CDR Bouffard reports that Midshipman First Class Stainback successfully completed the Aptitude Remediation Program. The Final Report further details a number of very positive achievements of Midshipman Stainback through January of this year.

I share this Final Report with you as it does not to appear that it was provided to the Academic Board for its consideration, and contradicts the Commandant's report to the Board that Midshipman Stainback had failed his aptitude remediation program.

As you know, I have serious concerns regarding the Commandant's handling of this matter, and particularly his submission to the Board of what was purported to be Midshipman Stainback's complete midshipman record, which in fact omitted a number of very positive notations and achievements. CDR Bouffard's memorandum not only adds to the concerns that the record presented to the Board contained serious and relevant omissions, but also calls into question the Commandant's assertion that Midshipman Stainback had failed his aptitude remediation program, which was the very reason the matter was referred to the Board in the first place.

Very truly yours,

Thomas McCarthy, Jr.

TMJr./ Enclos.

00361

26 JAN 04

From:  Robert A. Bouffard, CDR, Dental Corps, United States Navy
       Midshipman Aptitude Mentor

To:    Commandant of Midshipman

Via:   Director, Character Development Division

Subj:  FINAL REPORT OF APTITUDE REMEDIATION FOR
       MIDSHIPMAN MATTHEW K. STAINBACK, USN, 046582, 6th
       COMPANY

Ref:   (a) USNAINST 1610.4A

Encl:  (1) Required Aptitude Remediation Essay

1. Purpose. Per reference (a), this memorandum provides a review of
Midshipman Stainback's performance in the Aptitude Remediation Program.

2. Overview. One goal of the Honor/Aptitude Remediation Program was to
have Midshipman Stainback reflect upon his experience in violating the
Honor Concept and to recognize the central role ethics and integrity play in
the profession of arms. Midshipman Stainback's aptitude remediation was
initially prescribed to address his academic shortcomings. Counseling was
provided to determine the root causes of his failure and remedy these. Early
in his aptitude remediation process, the midshipman incurred a conduct
offense. His retention was predicated on successful completion of this
program, amended to take the additional conduct offense into account. As a
means to accomplish this goal, Midshipman Stainback was required to engage
in moral-ethical discussions, establish a set of personal goals, perform a
service project, and write a final paper. Midshipman Stainback was directed
to complete a project whereby his actions would be translated to a subordinate
in a fleet command, and he would assume the role of supervisor. In this
project, the fictionalized Marine Lieutenant was tasked with utilizing all the
resources available at the United States Naval Academy to investigate,
process, charge, then defend and remediate his subordinate.

    a. Moral-Ethical Discussions. The basis of our discussions were
       drawn from the Manual for Courts Martial, including the UCMJ,
       Ethics for Military Leaders (George R. Lucas) DSM–IV Made
       Easy, The Clinician's Guide to Diagnosis (James Morrison),
       Straight Talk About Your Mental Health (James Morrison), The
       Essence of Success (Earl Nightingale), The Seven Habits of
       Highly Effective People (Steven Covey), Stanford Library of
       Philosophy/ Aristotle's Ethics (Website).

00362

b. Service Project. Midshipman Stainback proposed planned and organized a camping trip for his company, improving esprit de corps and instilling a sense of teamwork among his shipmates. He also served as battalion action officer for the annual Halloween Haunted Hall (Community Outreach Program affiliated with Midshipman Action Program)

c. POA&M. Midshipman Stainback met or exceeded all of the goals that he had proposed to accomplish during his aptitude remediation period. Four goals were established at the initiation of this remediation program. The first goal was to develop the academic skills he possessed in order to academically excel. The second goal was to determine the root causes of the midshipman's aptitude deficiencies and address them in a systematic manner. The third goal was to analyze the conduct issues which contributed to and complicated the midshipman's aptitude deficiencies. The fourth goal was to address these issues in a comprehensive project that would incorporate all in a manner that demonstrated the far-reaching impact of such actions on a military unit. Midshipman Stainback effectively utilized all resources available to him, including his chain of command, faculty, Chaplain and DAPA personnel to accomplish these goals. He attained a 2.93 GPA during fall semester, 2003, while completing his requirements for aptitude remediation. Midshipman Stainback has demonstrated an eagerness to educate his fellow midshipmen and a willingness to confront individuals who potentially could face similar circumstances.

d. Summer Training. Midshipman Stainback participated in a 4-week Leatherneck Training Program at Quantico, USMC Base, attended courses in Land Navigation, Marine Corps Tactics, Marine History, Weaponry and Survival. In addition, he successfully completed EE302, which he had previously failed, with an A.

e. Essay. Midshipman Stainback's last requirement was to submit a written paper (enclosure I) that captures the lessons learned from his experience and the developmental program. His paper shows he understands and has internalized the Honor Concept and appreciates the complex nature of the moral ethical decisions he may face as a military officer. Of most importance, Midshipman Stainback's paper communicates his intent to live honorably in the future.

00363

3. Recommendation. Midshipman Stainback successfully met the requirements of the Aptitude Remediation Program. He took the program seriously and put an excellent effort into the moral-ethical discussions, community service projects and final paper. I have observed Midshipman Stainback grow from an individual who was content to "just get by" based upon his formidable intellect, to a team player and leader, who willingly makes the effort to excel, and understands the ramifications of an individual's actions upon the entire chain of command. Midshipman Stainback's willingness to discuss the incidents he was involved in with his classmates within his company is noteworthy. I believe Midshipman Stainback has learned a great deal about integrity and honor and the profession of arms. Based upon his successful completion of the Aptitude Remediation Program, I recommend that he be removed from the program.

R.A. BOUFFARD

Copy to:
2nd Battalion Officer
6th Company Officer

00364

**DEPARTMENT OF THE NAVY**

UNITED STATES NAVAL ACADEMY
121 BLAKE ROAD
ANNAPOLIS MARYLAND 21402-5000

14 Jul 04

From: Staff Judge Advocate
To:   Superintendent, United States Naval Academy

Subj: COMMENTS REGARDING WRITTEN STATEMENTS OF MIDSHIPMAN
FIRST CLASS MATTHEW K. STAINBACK, U.S. NAVY

1. Upon review of the written statement submitted by Midshipman Stainback, consisting of five letters listed as enclosures (4) - (9) of the basic correspondence, I provide the following comments:

    a. Enclosures (4) and (5); Resignation and letter from attorney, respectively dated 24 and 25 May 04:

- Midshipman Stainback submitted a resignation after the Academic Board rendered its decision, and his attorney noted the stated purpose of this submission was to allow Midshipman Stainback other avenues to achieving a commission.
- This letter also introduces the possible impact of Attention Deficit Disorder on this case, requesting that Midshipman Stainback be found to be physically disqualified and his obligation be waived because of this physical disability. This assertion is contradicted by the statement Midshipman Stainback supplied with his application from his physician (included in enclosure (6)) unequivocally stating his patient was fully qualified for the rigorous physical and academic Academy program. The Attorney's request to find Midshipman Stainback physically disqualified also contradicts his client's stated goal of still desiring to obtain a commission.
- The letter also requests that humanitarian reasons be considered for waiver of Midshipman Stainback's obligations, but fails to raise a specific basis for this request. If the physical disability argument is the unstated basis, it is again contradicted by the submission from Midshipman Stainback's physician.
- Enclosure (7) was submitted to request withdrawal of the proffered resignation.

    b. The enclosure (6) written statement of 25 May:

- This statement alleges that matters were either not submitted or incomplete/misleading to intentionally skew the Board results. First of all, it should be noted that Midshipman Stainback was present at the hearing and was given as much time as was necessary to ask the Board to consider any matter he chose to present. Also, Midshipman Stainback's heroic efforts to render CPR to the Board's Secretary (our Dean of Admissions) were well known by each and every Board member and clearly were not ignored by the Board in its deliberations.
- Procedural Issues Raised in the Statement:
  - Midshipman Stainback was provided more than the minimum required notice established by Academy instruction, providing him ample time to prepare for his Academic Board. His notice was clear, even if his understanding was not. No member of the Academy staff selected an "arbitrary" time for the hearing, but would have certainly communicated to Midshipman Stainback that the actual timing of his appearance was subject to the Academic Board's execution of their agenda that involved seeing dozens of midshipmen each session. Midshipman Stainback's notice clearly

informed him that his Board appearance was to occur on Tuesday, 27 Apr 04, and he had from Friday, 23 Apr 04 until that date to prepare and schedule meetings with his attorney.  Contrary to his statement, he was not "sequestered" prior to the Board, but he and his chain of command would have been required to arrive well before the scheduled Board meeting to accommodate the efficient processing of cases by the panel.

o  Midshipman Stainback did not raise any issue regarding needing more time to prepare and was not prevented from speaking to his attorney at any time prior to the Board.

o  Midshipman Stainback noted one error of merit, that being that his Board notice indicated he had been provided a Commandant Memo dated 9 Apr 04.  In fact, the Commandant's memo was dated 23 Apr 04, and he was clearly provided that memo with his notice.  There exists no 9 Apr 04 memo considered by the Academic Board or withheld from Midshipman Stainback, and the date provided in his notice was a harmless typographical error.

o  Midshipman Stainback alleges that deletions and notations on some paperwork the Board reviewed was intended to provide the Board with a negative picture of his service.  See enclosures (3) and (4).  The notations on enclosure (3) however, are merely factual notations, and are neither negative nor positive.  I have personally viewed enclosure (4), and the noted deletions were not an effort to expunge material beneficial to Midshipman Stainback, they simply excised Privacy Act material related to another midshipman that was totally unrelated to this case.

• With respect to the impact of Attention Deficit Disorder on Midshipman Stainback's inaptitude, three points are clear:

o  Midshipman Stainback never discussed this issue and its possible impact on his inability to meet standards with the Board during his personal appearance;

o  As alluded to above, Midshipman Stainback was granted a waiver by the DoDMERB to come to the Academy based upon his position that ADD would not inhibit his abilities, a position supported by his own physician who opined he was fully physically qualified for the Academy as noted earlier.  There is no indication that treatment was required or requested, and this was clearly the opinion of the pediatric physician who was responsible for stopping his patient's use of any medication for the condition.

o  Many of Midshipman Stainback's performance difficulties were not clearly, or were only very tangentially, related to the commonly known symptoms related to this condition (e.g.: Conduct issues surrounding inappropriate training with a Plebe involving a bayonet and inappropriate behavior in public, failing to complete homework assignments and required papers, missing classes, unauthorized absence from restricted musters, a very pronounced academic performance drop in his 2/C year, substandard room cleanliness and personal appearance and, after his Board decision, his being put on report for missing several phone in musters and violating Bachelor's Enlisted Quarters rules by having an unauthorized female visitor in his BEQ room.)

c. The enclosure (8) letter submission of 21 Jun 04:

- Midshipman Stainback requests a degree without a commission, basically averring he earned the degree, or was prevented from completing required courses by the Academy. This is inaccurate for three reasons:
  - o All Midshipmen must complete every requirement for a degree from the Academy vice just achieving academic minimums; including meeting aptitude standards.
  - o Midshipman Stainback did not in fact complete all required academic courses.
  - o Midshipman Stainback was allowed to finish coursework by the Academic Board. This was an unusual and an exceptional allowance not normally offered to midshipmen recommended for separation; as they are usually not allowed to finish coursework. This exception was specifically authorized by the Board to assist Midshipman Stainback in transition to a civilian university, if that were his choice, by allowing him to attain more transferable credits. In fact, Midshipman Stainback requested withdrawal from the courses in question; contradicting the assertion that the Academy prevented his completion of any required course.
- With respect to Midshipman Stainback's request for a waiver of his obligations arising from Academy attendance, he has not shown any adverse impacts from the Board decision that differ from other similarly situated Midshipman.

d. The enclosure (9) letter submission of 8 Jul 04:

- Midshipman Stainback asserts he passed his remediation, undermining the reasons for his referral to the Academic Board, as evidenced by the enclosure to this letter. That enclosure, however, only details his passing of requirements outlined by his assigned remediator and not the Commandant of Midshipmen. His successful completion of this part of the remediation program was presented to the Board, but it was also noted that his behavior, including numerous unauthorized class absences following submission of this remediation package by his mentor, was considered by the Commandant of Midshipmen to portray an aptitude remediation failure and resulted in the initiation of the Aptitude Board process.

MICHAEL A. WATERS

| | |
|---|---|
| **From:** | Stephen Gozzo |
| **To:** | Waters, Mike |
| **Date:** | 7/15/04 3:04:26 PM |
| **Subject:** | Fwd: Re: MIDSHIPMAN INCORRECTLY ENROLLED |

>>> Richard Davis 02/17/04 09:16AM >>>
Midshipman Stainback should have seen MAJ Gozzo for a MIDREC card for the change. All such changes need to go thru MAJ Gozzo.

Mid          officially went on separation pending leave on last Friday. I'll attend to updating the enrollment files on him

Thanks  Richard Davis

>>> "John W Hatala" <hatalas@comcast.net> 2/16/2004 9:51:00 AM >>>
Registrar,
   MIDN 1/C Stainback is on my roster for NS404 when I entered grades. However, he was not selected for the Marine Corps during service assignment and was subsequently changed to another NS class. Also, 1/C         was separated from the Naval Academy, effective 13 Feb 04.
                    Maj J.W. Hatala

00368

Case 1:06-cv-00256-RBW    Document 11-10    Filed 09/27/2006    Page 19 of 50

**From:** Stephen Gozzo
**To:** Waters, Mike
**Date:** 7/15/04 3:06:15 PM
**Subject:** Fwd: better call asap...


>>> William Bowman 02/25/04 01:35PM >>>
Matt,
Just received a call from Cdr (?) S. Gozzo of Sea-Nav who has alerted me to the problem regarding your registration for NS404X. I believe I do recall your asking me to change sections - but really don't remember getting an email with old and new sections - and bottom line I never made any change...Problem is the responsibility to make the change falls on you...and sounds like some others don't quite understand what and where you have been....Better call me: 410-293-6881 (office) or 41-353-7331 (cell)...Coach Bowman

00369

Case 1:06-cv-00856-RBW    Document 11-10    Filed 09/27/2006    Page 20 of 50

| | |
|---|---|
| **From:** | Stephen Gozzo |
| **To:** | Waters, Mike |
| **Date:** | 7/15/04 3:07:10 PM |
| **Subject:** | Fwd: M/N Stainback |

>>> Stephen Gozzo 02/25/04 12:18PM >>>
John,

Has m/n Stainback been attending your NS404 practicum. You have been marking him present, yet he took no six week exam.

Is the accountability you have entered for him correct.

LT Abrams said he started showing up in his NS403 class this past Monday (auditing not on the roster), yet you show him present in your class through today in MIDS.

Can you call me at your earliest regarding this.

Thanks.
r/
LCDR Gozzo

LCDR Stephen Gozzo USN
Academic Officer
Dept of Seamanship and Navigation
United States Naval Academy
Luce Hall Room 328D; Office: 410-293-6070, DSN 281
E-mail: gozzo@usna.edu
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
Failure is not an option.
It is a privilege reserved only for those who try.

00370



# DEPARTMENT OF THE NAVY

UNITED STATES NAVAL ACADEMY
121 BLAKE ROAD
ANNAPOLIS MARYLAND 21402-5000

1900
1-160
26 JUL 04

From:   Superintendent, United States Naval Academy
To:     Secretary of the Navy

Subj:   RECOMMENDATION FOR DISENROLLMENT FROM THE UNITED STATES
        NAVAL ACADEMY OF MIDSHIPMAN FIRST CLASS MATTHEW K. STAINBACK,
        U.S. NAVY, CLASS OF 2004, FOR INSUFFICIENT APTITUDE

Ref:    (a) 10 U.S.C. § 6962
        (b) SECNAVINST 1531.1B

Encl:   (1) Staff Judge Advocate, USNA ltr 1900 of 10 May 04
        (2) Superintendent USNA Memorandum Report 1900 1-151 of 10 May 04
        (3) MIDN Stainback's Acknowledgement of Options, Notice of Receipt
        (4) MIDN Stainback's request to Voluntarily Resign of 24 May 04
        (5) MIDN Stainback's Attorney's ltr of 25 May 04
        (6) MIDN Stainback's Written Statement of 25 May 04
        (7) MIDN Stainback's request to withdraw his Voluntary Resignation of 18 Jun 04
        (8) Additional Matters submitted by MIDN Stainback's Attorney of 21 Jun 04
        (9) Additional Matters submitted by MIDN Stainback's Attorney of 8 Jul 04
        (10) USNA Comments Regarding Written Submissions of Midshipman Stainback in
             enclosures (4) - (9) above

1. On 27 April 2004, the Academic Board, by unanimous vote as required by statute, reference (a), found that Midshipman Stainback possesses insufficient aptitude to become a commissioned officer in the naval service and recommended disenrollment. Enclosure (1) notified Midshipman Stainback of his rights with regard to responding to the recommendation made by the Superintendent in the enclosure (2) report. That enclosure constitutes the report required by reference (a).

2. As evidenced by enclosure (3), Midshipman Stainback received notice of the procedures attendant to the processing of his case, of the options available to him, and his rights relating thereto. Enclosure (3) is Midshipman Stainback's Acknowledgment of Options and Notice of Receipt, in which he verbally indicated that he refused to elect an option pertaining to his possible discharge, or acknowledge receipt of his copy of the Superintendent's Memorandum Report. After an approved delay in submission, Midshipman Stainback provided enclosures (4) - (9) as his written statement.

3. After careful review of the entire record and all of the above enclosures, it is my opinion that the Academy Academic Board's recommendation to disenroll Midshipman Stainback for insufficient aptitude is both appropriate and warranted by the circumstances. I have decided to allow Midshipman Stainback to withdraw his Voluntary Resignation Request as allowed in reference (b). I recommend Midshipman Stainback be required to serve in an enlisted status to meet obligated service requirements arising from his attendance at the U.S. Naval Academy.

RODNEY P. REMPT

Copy to:
MIDN Stainback
PERS-313

00371

00372

DEPARTMENT OF THE NAVY
UNITED STATES NAVAL ACADEMY
121 BLAKE ROAD
ANNAPOLIS, MARYLAND 21402-5000

1900
10 MAY 04

From: Staff Judge Advocate, United States Naval Academy
To:    Midshipman First Class Matthew K. Stainback, U.S. Navy, Class of 2004

Subj: NOTICE OF RIGHTS CONCERNING RECOMMENDATION FOR DISCHARGE

Ref: (a) 10 U.S.C. § 6962

Encl: (1) Memo Rpt for SECNAV 1900 Ser 1-151 10 MAY 04

1. The Academic Board, by unanimous vote as required by reference (a), has determined that you have insufficient aptitude to become a commissioned officer in the naval service and has recommended that you be separated from the Naval Academy. The enclosure (1) disenrollment recommendation will be made to the Secretary of the Navy pursuant to reference (a).

2. If you so desire, you may submit to the Secretary of the Navy a written statement concerning this report of your insufficient aptitude. Your statement will be forwarded to the Secretary of the Navy with the Academic Board determination of insufficient aptitude and recommendation for disenrollment. If the Secretary believes the Academic Board determination and the disenrollment recommendation concerning your aptitude to be well-founded, he may disenroll you from the Naval Academy.

3. The Aptitude Officer will explain to you the details of the courses of action available to you. I urge you to listen carefully and to consider the advantages and disadvantages of each. Do not hesitate to confer with the Aptitude Officer or with anyone else of your choice before you reach your decision.

4. Your decision in this matter and, if applicable, your completion of a written statement should be a top priority. Liberty and other military obligations should not be offered as reasons for an untimely submission. Should you need to be excused from military obligations to allow you to work on your statement, you should contact your Company Officer in advance to obtain approval. If you are excused, you are expected to use your time productively toward completing your written statement. You must continue to make formations and obey applicable regulations. Further decisions on your status will be made when your written statement or waiver is received.

5. By return endorsement, which shall include your statement of understanding of the options available to you, inform me of your decision concerning submission of a written statement. In the absence of any unusual circumstances, your written decision must be provided within 24 hours of your receipt of this letter. Should you elect to submit a written statement, you will have five working days from the time you receive the Memorandum Report for the Secretary of the Navy, enclosure (1), in which to submit your written statement. Be advised that you are not entitled to enter into a separation leave status prior to either submitting your written statement or your waiver election.

MICHAEL A. WATERS

Copy to:
Company Officer

00373

00374

**DEPARTMENT OF THE NAVY**

UNITED STATES NAVAL ACADEMY
121 BLAKE ROAD
ANNAPOLIS, MARYLAND 21402-5000

1900
1-151
10 MAY 04

## MEMORANDUM REPORT FOR THE SECRETARY OF THE NAVY

Subj:   RECOMMENDATION FOR DISENROLLMENT OF MIDSHIPMAN FIRST CLASS
MATTHEW K. STAINBACK, USN, CLASS OF 2004

Ref:    (a) 10 U.S.C. § 6962
(b) USNAINST 5420.2E (Rules of Procedure Governing Meetings of the Academic
Board)

Encl:   (1) Midshipman Stainback's Summary of Facts and Record Summary

1. On 27 April 2004, the Academic Board unanimously found Midshipman First Class Matthew
K. Stainback possesses insufficient aptitude to become a commissioned officer in the naval
service. He is recommended for disenrollment from the Naval Academy and this memorandum
constitutes the report required by reference (a).

2. It was the Academic Board's assessment that Midshipman Stainback's Academy performance has
been marginal or sub-standard, displaying a distinct lack of aptitude for commission. Enclosure (1)
summarizes Midshipman Stainback's record presented to the Academic Board.

3. Midshipman Stainback personally appeared before the Academic Board and, as provided in
reference (b), provided a statement on his own behalf. The Board considered his complete
midshipman record and heard information from Midshipman Stainback's chain of command.
Unfortunately, Midshipman Stainback:

- Appeared before the Academic Board on 13 May 03 after failing to attain the required 2.0
  semester average for the second semester in a row, reflecting his complacency with
  minimally acceptable performance. He was retained at the Naval Academy and placed in
  a remediation program.

- On 4 Sep 03, after his commission of a major conduct offense during summer training, he
  appeared before a Brigade Aptitude Board to determine if his case should be forwarded to
  a battalion board to determine his aptitude for commission. The Brigade Aptitude Board
  voted to continue his remediation program.

- Ranked 27 of 28 and 25 of 27 of his class in company by midshipman peers and his
  company officer during his last two semesters.

00375

Subj: RECOMMENDATION FOR DISENROLLMENT OF MIDSHIPMAN FIRST CLASS
MATTHEW K. STAINBACK, USN, CLASS OF 2004

- Exhibited poor conduct performance while at the Academy, amassing 335 demerits for 12 infractions of midshipmen regulations, 2 of which were major offenses committed in his senior year. Received grades of "F" in conduct in the last two semesters.

4. The Academic Board was very aware that this action comes late in Midshipman Stainback's tenure at the Academy. The Board review of his record revealed that this decision should have been taken sooner, noting that he was given further opportunities to substantially improve after both his May 03 Academic Board and his Sep 03 Brigade Aptitude Board. His continued marginal performance lead to the clearly unanimous Board decision that, even though late in his first class year, Midshipman Stainback does not possess the aptitude to receive a commission.

5. Midshipman Stainback was appointed to the Naval Academy on 30 June 2000 as a qualified alternate appointee. He has no prior military service. Midshipman Stainback has incurred a three year active duty service obligation, or a $122,055.67 recoupment obligation, based upon educational benefits received incident to Academy attendance. I recommend he be directed to perform enlisted service to meet his obligations to the United States Government.

RODNEY P. REMPT
Vice Admiral, U.S. Navy
Superintendent

**ASN (M&RA) Action:**

Approved: _____

Disapproved: _____

WILLIAM A. NAVAS, JR.
Assistant Secretary of the Navy
(Manpower and Reserve Affairs)

00376

**MIDN 1/C Matthew K. Stainback, U.S. Navy, 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**
**Summary of Facts and Record Summary**

1. **Summary of Facts:**

   - 13 May 03: Academic Board retains Midshipman Stainback and places him in the aptitude remediation program.
   - 13 Jul 03: Major conduct offenses: Disorderly or discrediting public conduct: as a member of the U.S. Navy. Under the influence of alcohol (brings discredit upon naval service).
   - 4 Sep 03: The brigade aptitude board retains Midshipman Stainback and continues him in his aptitude remediation program.
   - 20 Feb 04: Major conduct offense: Absent without authority from academic class (multiple occasions); intentional.
   - 31 Mar 04: Determined to have failed his aptitude remediation program and referred to Academic Board to determine his aptitude for commissioned service.
   - 27 Apr 04: Academic Board reviewed MIDN Stainback's record, and unanimously found him to possess insufficient aptitude for commissioning.

2. **Summary of Prior and Subsequent Offenses: Midshipman Stainback has a total of 335 demerits and the following record of adjudicated offenses (some offenses combined at adjudication in the interest of efficiency):**

   a. 15 Oct 01: Failing to perform duty through laxness/ignorance. Awarded 10 demerits and 4 tours.

   b. 15 Nov 01: Absent without authority from academic class; greater that 15 minutes. Awarded 10 demerits and 4 tours.

   c. 17 Jul 02: (Major) Abuse of fourth class indoctrination system; not amounting to hazing. Awarded 25 demerits, 5 tours, 15 hours extra duty, and 1 month loss of class privileges.

   d. 20 Nov 02: Absent without authority from academic class; greater than 15 minutes. Awarded 5 demerits and 2 tours awarded.

   e. 12 Dec 02: Failing to perform duty through laxness/ignorance. Awarded 10 demerits and 2 tours.

   f. 21 Mar 03: (Major) Absent without authority from academic class; intentional. Awarded 50 demerits, 25 days restriction, and 30 days loss of privileges.

   g. 10 Apr 03: Absent without authority; 30 minutes or less. Awarded 15 demerits.

   h. 30 Apr 03: Absent without authority; 30 minutes or less. Awarded 25 demerits.

i. 15 Aug 03: (Major) Disorderly or discrediting public conduct: as member of U.S Navy. Under the influence of alcohol (brings discredit upon naval service). Awarded 100 demerits, 60 days restriction, 20 tours, 30 hours extra duty, 1 year loss of leave, 1 year loss of class privileges.

j. 6 Oct 03: Unsatisfactory appearance. Awarded 10 demerits and 2 tours.

k. 31 Mar 04: (Major) Absent without authority from academic class; intentional. Awarded 75 demerits, 45 days restriction, 30 hours extra duty, 3 months loss of class privileges.

4. **Summary of Record**.

**Academics:** CQPR of: 2.43

2 Semesters SQPR below 2.0 (1.73, 1.74)
All Semesters CQPR Satisfactory (2.25, 2.44, 2.32, 2.38, 2.0, 4.0, 2.93)

Academic History includes 16 C's, 6 D's, and 4 F's

**Overall/Academic Class Standing:** 954/853 of 1018

**SAT Verbal/Math:** 670/740

**Conduct Grades:**  A,A,A,A,B,F,F

**Physical Education:**  A,A,A,A,A,A,B

**Aptitude Grades:**  B,C,B,C,C,C,C

**Company Aptitude Ranking in Dec 03:**

Overall ranking – 25 of 27
Company Officer Ranking – 25 of 27
Peer Ranking – 23 of 27

9 Negative comments (Frivolous, Irresponsible, Apathetic, Disorganized ...)
2 Positive comments (Charismatic)

**Prior Service:**  None

00378

2

00379

11 May 04

MEMORANDUM FOR THE RECORD

From: Aptitude Officer
To:   Midshipman First Class Matthew K. Stainback

Subj: ACKNOWLEDGEMENT OF OPTIONS, NOTICE OF RECIEPT

1.  You have refused to decide, without your lawyer present,
whether you would prefer the Secretary of the Navy recoup the
cost of your education through service or reimbursement.  You
have also refused, without your lawyer present, to acknowledge
receipt of your copy of the Superintendent's Memorandum Report
to the Secretary of the Navy.  If you elect to submit a written
statement to the Secretary, then you must do so within five
working days and no later than 18 May 2004.

                              N. H. OLSON
------------------------------------------------------------------
Delivered to Midshipman Matthew K. Stainback 11 May 2004.

                              N. H. OLSON

00360

00381

24 MAY 2004

From: First Class Matthew Stainback, USN, 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, Class of 2004
To:   Chief of Naval Personnel
Via:  Superintendent, United States Naval Academy

Subj: VOLUNTARY RESIGNATION

1.  I hereby tender my voluntary resignation as a midshipman in the United States Naval Academy.

2.  I came to the United States Naval Academy with the specific intent to serve my country to the best of my abilities. I am hoping to resign so that I may avoid being discharged, and thereby avoid having a mark on my record that will hinder further pursuit of a commission in the United States Navy.

3.  The contents of Department of Defense Directive 1304.25, Fulfilling the Military Service Obligation; Department of Defense Directive 1332.23, Service Academy Disenrollment; SECNAVINST 1532.1A, U.S. Naval Academy Midshipman Disenrollment; and NAVMILPERSMAN articles 104015 and 3640415 have been explained to me and I understand the military requirements imposed upon me by these directives, and by Section 651, Title 10 U.S. Code.

4.  I understand that I have incurred a three-year active duty obligation by entering First Class Academic Year.

5.  I understand that submission of this resignation may be prejudicial in the event that I subsequently apply for a Navy officer-producing program. I further acknowledge that future enrollment in a Navy-subsidized educational program will be precluded in all but unusual circumstances.

6.  I understand that this resignation, whether or not accepted, may only be withdrawn in writing and that once I have departed the Naval Academy on separation pending leave it may only be withdrawn with the consent of the higher reviewing authority to whom this resignation has forwarded or a person in the reviewing chain superior to him.

7.  I am not in debt to the government.

Very Respectfully,

Matthew Stainback
MIDN       USN

00382

00383

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*                                    Brennan C. McCarthy
Thomas McCarthy, Sr., PC, *Member*                                    *Associate Member*

<u>Hand Delivered</u>

Vice-Admiral Rodney P. Rempt                                    May 25, 2004
**Superintendent**
United States Naval Academy
Annapolis, Maryland  21402

### Re:  Midshipman First Class Matthew K. Stainback

Dear Admiral Rempt:

As you are aware, I am assisting Midshipman First Class Matthew K. Stainback in responding to the recommendation for separation originating from the Academic Board, and pending submittal to the Secretary of the Navy.   I have enclosed herewith Midshipman Stainback's memorandum and enclosures to accompany your report and recommendation. I have also submitted for your consideration and approval Midshipman Stainback's voluntary resignation from the Academy.   I respectfully urge you to accept Midshipman Stainback's resignation, in lieu of submitting your report for separation to the Secretary, for the reasons set forth below.

When Midshipman Stainback graduated from Gonzaga high school, he was granted acceptances and scholarships by Virginia Tech, Villanova, and the University of Virginia.  He was also accepted by Johns Hopkins University . Midshipman Stainback, however, has a strong and dedicated desire to serve his county as a military officer, and made acceptance at the Naval Academy his first and foremost desire. As you are aware, Midshipman Stainback suffers from mild attention deficit disorder, for which he is not able to take medications while at the Academy, and consequently, Midshipman Stainback has successfully struggled through four academic years with the challenge of overcoming his focus and distractability issues. Midshipman Stainback's has achieved a final GPA of  2.45.

There can be little serious debate concerning Midshipman Stainback's mediocre performance record.   It is clear that Midshipman Stainback has continuously had difficulty with his personal organization, leading to a series of academic and performance deficiencies. These deficiencies, however, should not reflect a lack of a dedicated and committed attitude of Midshipman Stainback towards his obligations at the Academy.   Midshipman Stainback has

00384

Vice Admiral Rodney P. Rempt
May 25, 2004
Page 2

---

always– and still– wanted to serve his country to the best of his abilities.   While at the Academy, Midshipman Stainback worked diligently to obtain a billet in the Marine Corps, and his desire to be a Marine Corps officer remains unabated.   Should Midshipman Stainback not be able to graduate from the Naval Academy, or receive a commission at this time, he has every intention to complete his studies at a civilian university, and to enter into the officer corps through an OCS program.   The purpose of the voluntary resignation is to allow Midshipman Stainback the fullest opportunity achieve his goal of receiving a commission as an marine or naval officer.

I also respectfully request that you recommend a waiver of the reimbursement obligation for Midshipman Stainback, with a finding that he is physically disqualified, due to his continuing struggle with ADD, or for humanitarian reasons.   Midshipman Stainback's  ADD has presented him with significant– and perhaps insurmountable-- challenges at the Academy, in personal organization and distractability. Despite these problems, Midshipman Stainback has achieved a passing GPA, and achieved other honors and awards relating to his performance. Considering the many demands of the Academy on its midshipmen, which demands require the highest degree of organization and focus, and his ADD challenges, Midshipman Stainback's achievements, such as they are, are remarkable.   The effects of the ADD on Midshipman Stainback's performance can most easily be ascertained by reviewing his performance in the one area where it would not be a factor– physical fitness. Midshipman Stainback's fitness record is exemplary, and clearly demonstrates a determined desire to meet and exceed the Academy's physical fitness requirements.  I suggest that Midshipman Stainback's less noteworthy achievements in academics and performance are not the result of any lesser desire to excel, but a physical inability to pursue such excellence.

Thank you for your careful consideration of these requests.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.
Enclosures

00336

# MEMORANDUM OF MIDSHIPMAN FIRST CLASS MATTHEW K. STAINBACK

**TO:**     The Honorable Gordon R. England
            **Secretary of the Navy**
            100 Navy Pentagon
            Washington, DC 20350-1000

**FROM:**   Thomas McCarthy, Jr.
            **McCarthy & McCarthy, LLC**
            79 Franklin Street
            Annapolis, Maryland 21401
            (410) 268-4016

            Legal counsel to Midshipman First Class Matthew K. Stainback

**DATE:**   May 25, 2004

**SUBJECT:** Memorandum in response to recommendation for discharge from USNA by
            Superintendent dated May 10, 2004.

---

The following is provided in response to the United States Naval Academy Superintendent's
Memorandum Report to the Secretary of the Navy dated May 10, 2004, in the case of
Midshipman First Class Matthew K. Stainback. .

In short, Midshipman First Class Stainback requests that the results of the Academic Board be set
aside. Alternatively, Midshipman First Class Stainback requests that this case be disposed of as
a discharge for physical disability, and that his recoupment be waived based thereon, in
accordance with SECNAVINST 1521.1B.

As a preliminary matter, prior to this semester, Midshipman First Class Stainback had never
received an aptitude grade lower than a C. His grade point average as of the date of his Academic
Board was a 2.43. In short, overcoming attention deficit disorder, Midshipman Stainback's
performance from his Plebe year to mid way through his senior year was considered satisfactory,
and in many respects exemplary. However, on April 27, 2004, *31 days prior to graduation,* the
Academic Board, based solely on the materials submitted by the Commandant and his staff,
found that Midshipman Stainback's performance was no longer satisfactory and recommended
that he be separated from the Brigade.

Admittedly, a review of the materials submitted by the Commandant and his staff to the
Academic Board reveals mixed performance by Midshipman First Class Stainback during his
time at Navy. However, a closer inspection of those materials reveals what can only be described
as a shocking attempt to create a one-sided, results-driven picture for the Board. Additionally,

the Commandant's staff violated the regulations and instructions pertaining to the Academic Board process and federal law pertaining to the conduct of administrative procedures within the Federal Government, under 5 USCA § 511 *et seq*. Moreover, the Academic Board completely disregarded the tremendous effort Midshipman Stainback has put forth in overcoming his Attention Deficit Disorder ("ADD") to realize the success he has achieved at USNA. The improprieties and oversights listed more fully below materially disadvantaged Midshipman First Class Stainback and demand the relief sought herein.

A.    **Incomplete and Misleading Material Submitted to the Academic Board**

Even a cursory review of the materials concerning Midshipman First Class Stainback submitted to, and considered by, the Academic Board clearly indicate that this process was less than even handed, with information of superior performance withheld from the Board and evidence of areas of required improvement highlighted to the Board.

The following pertain:

    1. **The Award of a Navy-Marine Corps Achievement Medal in August, 2001:**

Specifically, Midshipman First Class Stainback was awarded the medal for coming to the aid of a heart attack victim in a local restaurant. Acting upon his USNA training, Midshipman Stainback immediately took charge of the situation and began administering life-saving CPR. Through his cool headedness under stress, a characteristic sought in every Midshipmen and Naval Officer, Midshipman First Class Stainback was able to avert a tragedy. *See Enclosure* 1. Shockingly, the award of this medal was completely withheld from the materials submitted to the Academic Board. Considering the few Midshipmen who are awarded such medals during their time at the Naval Academy, this deficiency in the record is nothing less than outrageous and materially disadvantaged Midshipman Stainback before the Academic Board.

    b. **Selection as Midshipman of the Month, October 2003:**

On November 2, 2003, Midshipman First Class Stainback was awarded the October 2003 6th Company Midshipman of the Month award by his Company Commander. In the citation, Midshipman First Class Stainback, is commended for his leadership and involvement in numerous Company activities. *See Enclosure* 2. Yet, in the submission to the Academic Board, the Commandant's staff fails to advise the Board members of this fact, leaving the impression that Midshipman Stainback's performance failed to improve following his September 4, 2003 Brigade Aptitude Board.

    c. **Anonymous Notations and Redactions in the Record:**

Additionally, the package submitted to the Academic Board contained adulterated documents with unexplained and material redactions. First, the record contained an email from Midshipman First Class Stainback wherein he provides an explanation for being absent from his naval flight practicum without authority, the subject of a conduct hearing on March 31, 2004. Midshipman

Stainback's explanation is flatly contradicted in a handwritten note added to the email, the author of which is not identified. *See Exhibit* 3. Secondly, portions of emails from Midshipman Stainback's instructors providing background on the incident are redacted, in a manner to suggest that comments from these instructors that would support Midshipman Stainback's explanation have been removed. *See Enclosure* 4. In short, Midshipman Stainback was effectively denied the ability to refute the anonymous notations as was his right under USNAINST 5420.24E.

## B.  Procedural Irregularities.

Midshipman Stainback was provided with no opportunity to present evidence, documents, or witnesses to the Board to contradict the one-sided nature of the performance record submitted by the Commandant's staff. Midshipman Stainback was only informed of the "possibility" of having to go before the Academic Board at 12:55 PM on Friday, April 23, 2004.

When he was first advised that he may have to go before the Academic Board, Midshipman Stainback was informed by Lt. Olson, the Aptitude Officer, that the decision to bring him before the Aptitude Board was not yet made, and that the Commandant "has not made up his mind what to do with you yet". *See Enclosure* 5. Midshipman Stainback was told by Lt. Olson that the notice of the Academic Board meeting was only being given to him so that the Academy could keeps its options open, and that the date and time listed on the notice sheet was arbitrarily chosen by Lt. Olson, just to fill in a time and date. *See Enclosures* 5 *and* 6. Lt. Olson told Midshipman Stainback that he would be informed if he was actually scheduled to go before the Board, and the scheduled date and time of the meeting.

The Aptitude Officer provided Midshipman First Class Stainback with an electronic copy of the materials that were intended for the potential Board, *via* e-mail, just before 4:00 PM on Friday, April 23, 2004. At that time, Midshipman Stainback was in class and the email was not received and opened by him until after 7:00 PM that evening. It was not until after noon meal on Monday, April 26, 2004, that he was advised that his case was, in fact, being submitted to the Academic Board at noon the next day – less than 24 hours away. While Midshipman Stainback made immediate arrangements to meet with his legal counsel on the morning of Tuesday, April 27, 2004, he was unable to do so because he was sequestered by Naval Academy officials over an hour before the Academic Board was to meet.

The USNA Instructions concerning the procedures of the Academic Board mandate that Midshipmen be provided "advance notice of the scheduled appearance", and allowed "a minium of 24 hours to prepare" for such appearance. *USNAINST 5420.24E.* Additionally, while USNA instructions provide Midshipman Stainback the opportunity to present to the Academic Board for its consideration facts on his own behalf, including documentary evidence and written statements of third parties, he was required to submit such documentary evidence to the Aptitude Officer 24 hours prior to the commencement of the Board. *See Enclosure 6.* Midshipman First Class Stainback was not informed that the he was actually required to go before the Academic Board on Tuesday, April 27, 2004 at Noon, until the afternoon of Monday, April 26, 2004 – less than 24 hours before the Board appointment, and after the expiration of the time by which he could submit documentary evidence on his own behalf.

Consequently, Midshipman First Class Stainback was denied any opportunity to effectively prepare any defense, whatsoever, for the Board. It is hardly surprising, based upon the one-sided nature of the case that was presented, that the Academic Board voted unanimously to deny Midshipman Stainback a commission and to separate him from the Naval Academy.

Additionally, Midshipman First Class Stainback was not provided with certain necessary documents relating to his referral to the Academic Board by the Commandant, as required in USNAINST 5420.24E. The Academy Instruction relating to the procedures of the Academic Board mandate that a midshipman referred to the Board for aptitude deficiency is to be provided with copies of documentary evidence presented to the Board for its consideration. The Notice Sheet provided to Midshipman First Class Stainback on Friday, April 23, 2004 states that the Commandant had submitted a letter to the Academic Board dated April 9, 2004. At no time has a copy of the Commandant's letter to the Board of April 9, 2004 been provided to Midshipman Stainback, despite several requests, and in violation of USNAINST 5420.24E. *See Enclosures 6 and 7.*

## C.    Failure to Consider the Effect of Midshipman Stainback's ADD, and/or to Treat the Condition:

While in high school, Midshipman First Class Stainback was observed to experience distractability and difficulty staying on task, especially during periods of high academic pressure, and in 1997 his family doctor diagnosed him as suffering from mild attention deficit disorder, which was treated first by Dexedrine, and later with Adderall.  *See Enclosure 8.*  With medications, Midshipman Stainback was an exceptional performer, and achieved a grade point average of 3.93 upon his graduation from Gonzaga High School in Washington, DC.

Midshipman Stainback's condition was fully disclosed to DODMERB, and additional information was requested relative to the condition and was evaluated by a medical board, which then cleared Midshipman Stainback medically for admission to the Naval Academy. Midshipman Stainback is not allowed to take any medications to treat his ADD while at the Academy, and has still achieved a final 2.45 gpa .  At no time has the Academy provided any treatment to Midshipman Stainback for his mild ADD.

More troubling, however, is the Academy's lack of consideration of Midshipman Stainback's ADD in its decision to recommend him for separation.  The actions of the Academic Board, and the Superintendent's recommendation, are premised on the belief that Midshipman Stainback's minimal academic and aptitude performance were the result of a complacent and dismissive attitude towards his obligations at Navy.  The Superintendent clearly states that the Board's decision that Midshipman Stainback does not possess the aptitude to receive a commission is based on its perception that Midshipman Stainback's record of "marginal performance" "reflect(s) complacency with minimally acceptable performance."  Superintendent's Memorandum, ¶¶ 3 and 5.  What the Board clearly did not take into consideration was whether Midshipman Stainback's performance difficulties were not the result of a complacent attitude, *but in fact* the result of his ADD.  Midshipman Stainback's ADD challenge should have been taken into consideration by the Board, so that it could properly determine if his performance was

the result of a poor or undesirable attitude, or the result of his ADD.   Under law and the Academy Instructions, the Board was required to determine if there was reasonable evidence that Midshipman Stainback "has the attitude and personal characteristics that are needed to become an officer in the naval service." *See USNAINST 5420.24E.*    This determination cannot not have been properly made without some analysis and consideration of the effects of the ADD on Midshipman Stainback's performance, versus the results of a poor or complacent attitude.

**D.    Relief Sought**

Midshipman Stainback is an average midshipman who will make an above average officer in the Fleet. One need only look to his reaction in the local restaurant when faced with an impending tragedy. Decisive and purposeful, he clearly possesses the leadership qualities the Navy requires in these tense times. One need only look to the words of those who know him best, such as Cmdr (Ret) Joseph Rubino, who strongly recommends him for retention in the Brigade, noting that "when push comes to shove, Matt is a hero." *See Enclosure 9.*  When interviewed by Shipmate in December, 2001, then Superintendent VADM John Ryan credited Midshipman Stainback as the reason that he was so enthusiastic about the Brigade: *"I could not be prouder of this young man who reacted in a heroic manner at a restaurant on a Sunday afternoon to save a shipmate. Bancroft Hall is full of Matt Stainbacks, young men and women who are very capable and ready to respond to life's challenges, yet they want to be even better. That's what keeps me so enthusiastic". See Enclosure 10.*

Midshipman Stainback's record as a midshipman do not evidence a lack of courage or character, they reflect the maturation process expected of young men. As the Naval Academy well knows, some young men mature more quickly than others and often times there are underlying reasons for this difference. Many times this difference can be explained by leadership, or a lack thereof. Other times, the difference can be explained by a physical ailment, such as ADD, from which Midshipman Stainback suffers. In fact, a cursory review of the summary attached to the Superintendent's memo of May 10, 2004, reflects a series of minor infractions that hardly amount to any reasonable basis underlying a decision to separate Midshipman First Class Stainback *three weeks before graduation.*

Based on the foregoing, I request on behalf of Midshipman Stainback that he be permitted to graduate on time, with his class, on May 28, 2004. Alternatively, I request that he be permitted to graduate in August 2004. The additional time at the Naval Academy will provide an ample opportunity to monitor Midshipman Stainback's performance and ultimately his aptitude for commissioned service. If the foregoing are not accepted, I request that Midshipman Stainback be separated for medical reasons in view of his ADD and that his repayment obligation be waived, accordingly.

Thank you for your careful consideration of this important matter.

# ENCLOSURE 1

# DEPARTMENT OF THE NAVY

## THIS IS TO CERTIFY THAT
### THE SECRETARY OF THE NAVY HAS AWARDED THE

# NAVY AND MARINE CORPS ACHIEVEMENT MEDAL



TO

## MIDSHIPMAN THIRD CLASS MATTHEW K. STAINBACK, UNITED STATES NAVY

FOR

PROFESSIONAL ACHIEVEMENT IN THE SUPERIOR PERFORMANCE OF HIS DUTIES WHILE SERVING AS A MIDSHIPMAN AT THE UNITED STATES NAVAL ACADEMY ON 19 AUGUST 2001. MIDSHIPMAN STAINBACK, WHILE IN A LOCAL ANNAPOLIS, MARYLAND RESTAURANT, TOOK CHARGE OF A LIFE THREATENING SITUATION AND ADMINISTERED CARDIOPULMONARY RESUSCITATION TO A HEART ATTACK VICTIM, LATER IDENTIFIED TO BE THE DEAN OF ADMISSIONS, UNITED STATES NAVAL ACADEMY. HIS TIMELY EFFORTS STABILIZED THE VICTIM UNTIL PARAMEDICS COULD ARRIVE AND TAKE OVER THE SITUATION. FURTHERMORE, UPON BEING RELIEVED BY THE PARAMEDICS, HE PROVIDED COMFORT TO THE VICTIM'S WIFE UNTIL FAMILY MEMBERS COULD ARRIVE. DUE TO HIS QUICK REACTION AND INITIATIVE, MIDSHIPMAN THIRD CLASS STAINBACK IS CREDITED WITH SAVING THE VICTIM'S LIFE. MIDSHIPMAN THIRD CLASS STAINBACK'S EXCEPTIONAL PROFESSIONAL ABILITY, PERSONAL INITIATIVE, AND UNSWERVING DEVOTION TO DUTY REFLECTED GREAT CREDIT UPON HIMSELF AND WERE IN KEEPING WITH THE HIGHEST TRADITIONS OF THE UNITED STATES NAVAL SERVICE.

GIVEN THIS    28th    DAY OF    AUGUST 2001

FOR THE SECRETARY OF THE NAVY

J. R. RYAN
Vice Admiral, United States Navy
Superintendent, U.S. Naval Academy

NAVSO 1650/18 (REV 7-80)
S/N 0104-LF-984-5900

00393

# ENCLOSURE 2

# 6TH COMPANY

## October Midshipman of the Month

is hereby granted to:

### 1/c Matt Stainback



for outstanding performance in Sixth Company. Matt has been highly involved with the Company from planning events to helping with spirit & unit activities. In light of his work as Assistant Hot 6 Camping Trip Liaison Officer, Matt provided ... in the planning and execution of the Hot 6 Camping Trip. As Battalion Action ... "Haunted Hall", Matt was in charge of setting up, manning, and cleaning ... running the Haunted Hall. Not only did his work provide many children wit... ... or ... d by him, built Company camaraderie.

Date: 02 November 2003

MIDN LT Clay Blackburn
Sixth Company Commander

# ENCLOSURE 3

Current Folder: Sent

Compose  Addresses  Folders  Options  Search  Help

Sign Out
SquirrelMail

Message List | Delete | Edit
Message as New

Previous | Next

Forward | Forward as Attachment | Reply | Reply All

**Subject:** Course change
**From:** m046582@usna.edu
**Date:** Wed, February 18, 2004 10:14 am
**To:** bowman@usna.edu
**Priority:** Normal
**Options:** View Full Header | View Printable Version

Coach,

    I did not get my marine service selection even after the extra billets
came out a week ago, so i have been trying to find an aviation
practicum class that fits my schedule, but there arent any. My Marine
practicum teacher told me to stop coming to class because there is no
point anymore, but since that class has not been dropped from my
matrix yet, I got an "I" for a grade. I also do not have an aviation
class that I can fit into.

    My capstone class stopped meeting last week, so today i am going to
start going to the aviation practicum class that i can now attend
because of that opening in my schedule. I know that this is a
drop/add nightmare, so i was wondering how to go about this. I dont
want to get in trouble and I have no idea what to do. Please let me
know what kind of action I should take. I can meet with you later
today if that helps.

Thanks,

Matt

*Class was meeting. He had not attended for 2½ weeks at this point.*

*Did not attend for another week, the 23rd of February*

00397

8

# ENCLOSURE 4

**From:**    Stephen Gozzo
**To:**       Spring 2004 SeaNav All Instructors + Adjuncts
**Date:**    2/17/2004 9:32:23 AM
**Subject:**   MIDSHIPMAN INCORRECTLY ENROLLED IN NS40X

All,

As you can see by this e-mail, mids that may have changed practicums on their own and never came through me are still causing problems.

Please review your class rosters. Try to find the mid who shows up and is not on your roster, and the mid who is on the roster, yet is absent. I need to know about them and they need to be directed to see me ASAP to make practicum scheduling changes. I direct each mid I reschedule to touch base with both his former and new practicum instructors. Info to be passed between instructors includes grades and instructor input assessments.

If you can believe it, we still have new changes ongoing as mids have medical and NR interviews as late as this week. Hang in there.

Thank you for your help.

r/
LCDR Gozzo


>>> Richard Davis 02/17/04 09:16AM >>>
Midshipman Stainback should have seen MAJ Gozzo for a MIDREC card for the change. All such changes need to go thru MAJ Gozzo.

Thanks  Richard Davis

>>> "John W Hatala" <hatalas@comcast.net> 2/16/2004 9:51:00 AM >>>
Registrar,
   MIDN 1/C Stainback is on my roster for NS404 when I entered grades. However, he was not selected for the Marine Corps during service assignment and was subsequently changed to another NS class.

           Maj J.W. Hatala


CC:       Davis, Richard;  Vint, Charles

00399

# ENCLOSURE 5