MEMORANDUM                                                        24 MAY 2004

From: MIDN 1/C Stainback
To:   Tom McCarthy Jr.

Subj: EVENTS LEADING TO ACADEMIC BOARD

1.  Friday, 23 April, I was told by LT McKenna to report to LT Olson's office at 1300.
    When I reported, I was told by LT Olson that there was a possibility that I would be sent
    to an academic board. LT Olson said that the Commandant did not know what to do with
    my case, but they were notifying me of the academic board as a possibility. He gave me a
    document acknowledging this notification, and I signed it. This was the only document
    that I received. When I asked about the date and time that was on the sheet, he told me
    that they just put that there because they had to put something down, and that they did not
    know when the academic board would go, if it went at all. I asked LT Olson when I
    would find out if I were going to the board, and he told me that I would be notified as
    soon as they knew. He told me that they would give me my packet that afternoon as soon
    as it was compiled.

2.  At roughly 1900 on 23 April, I opened an e-mail from Mr. Albert Wardlaw. He attached
    a PDF file containing my packet. The e-mail had been sent at roughly 1545.

3.  Shortly after noon meal formation on Monday, 26 April I was notified by LT McKenna
    that I was indeed going before an academic board. LT Olson further instructed me that
    afternoon to be ready for the board at 1200 on 27 April.

4.  The following day, LT McKenna sent MIDN joslyn Hemler to pull me from class at
    roughly 1100. I was then told to change and was escorted to the academic board by LT
    McKenna.

                              Very Respectfully,

                              Matthew Stainback
                              MIDN        USN

                                              00401

# ENCLOSURE 6

U.S. Naval Academy
Annapolis, MD 21412
/23.    23 APR 2004
(Time/Date)

From: Midshipman First Class Matthew K. Stainback, USN,
      Class of 2004
To:   Commandant of Midshipmen

Subj: ACKNOWLEDGMENT OF APPEARANCE BEFORE THE NAVAL ACADEMY
      ACADEMIC BOARD DUE TO INSUFFICIENT APTITUDE

1.  I hereby acknowledge receipt of advanced notice to appear
before a Naval Academy Academic Board at 1200, 27 April 2004
in Room 300, Leahy Hall.

2.  I further acknowledge that I will:

    a.  Be present while the record of academic and military
performance is presented to the board and when the decision of
the board is announced, but not during the deliberation of the
Board.

    b.  Be allowed to examine or be provided a copy of any
documentary evidence, including any summary of my academic and
military performance, which is considered by the Board.

    c.  Be entitled to present any facts in my own behalf,
including documentary evidence and written statements of third
parties, concerning my academic and military performance.  Should
I elect to do so, twenty-four (24) hours prior to the
commencement of the Board, I will submit documentary evidence to
the Aptitude Officer for the Board's consideration.

    d.  Be entitled to consult freely with anyone, including
counsel, in preparing to appear before the Academic Board.  Upon
request, counsel may attend the Board, but not in a
representative capacity.  I understand that I must present my own
case.

3.  I further acknowledge receipt of the Commandant of
Midshipmen's letter to the Academic Board dated 9 April 2004. I
understand that the Board will consider the Commandant of
Midshipmen's letter, any additional written or oral evidence
received in open sessions of the Board and any facts which I
present in making a decision in my case.

_____
                    (Signature)

Copy to:
2ND Battalion Officer
6th Company Officer                    00403
Commandant's SJA
Secretary, Naval Academy Academic Board

# ENCLOSURE 7

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*
Thomas McCarthy, Sr., PC, *Member*

Brennan C. McCarthy
*Associate Member*

**Via Telecopier**
**(410) 293-7029**

Captain Charles Leidig, Jr.
**Commandant**
United States Naval Academy
Annapolis, Maryland  21402

May 4, 2004

Re:  **Midshipman Matthew Stainback**
     **M046582**

Dear Captain Leidig:

As you are aware, I represent Midshipman Matthew Stainback.

On Friday, 23 April, 2004 at 12:55 PM, my client was provided with an Acknowledgment of Appearance, which he was asked to sign.  The Acknowledgment provided notice to appear before the USNA Academic Board at Noon the following business day, Monday, 27 April, 2004.

Paragraph numbered 3 of the Acknowledgment states *"I further acknowledge receipt pf the Commandant of midshipman's letter to the Academic Board dated 9 April, 2004."*   At no time has my client been provided with the letter from you of April 9, 2004.

In order to assist my client in evaluating the actions of the Board, I would appreciate being provided with a copy of the letter referred to in the Acknowledgment.

Thank you.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.

00405

# ENCLOSURE 8

# NORTHERN VIRGINIA PEDIATRIC ASSOCIATES, P.C.

### Pediatrics • Adolescent Medicine • Pediatric Nephrology

James H. Stallings, Jr., M.D., F.A.A.P.     Lynne D. Myers, M.D., F.A.A.P.     Beverley J. Bayes, M.D., F.A.A.P.
     Amin J. Barakat, M.D., F.A.A.P.       Bassam A. Atiyeh, M.D., F.A.A.P.

DOD Medical Examination Review Board            March 7, 2000
8034 Edgerton Drive, Suite 132
USAF Academy, Colorado
80840-2200

Attention, Petty Officer Evans
Navy Section

Matthew Stainback, DOB 7/15/81, has been under my care since birth. I have also followed his older brother, David. Matt has been generally healthy and active. He has done well in school and sports and has got on well with peers. At times when academic pressures were high, he experienced distractibility and difficulty staying on task. Upon my evaluation 1997, I diagnosed mild Attention Deficit without hyperactivity. He was treated first with Dexedrine and later with Adderall because of side effects.

While Adderall did improve his ability to stay on task for homework, we decided to discontinue the medication upon learning of his interest in a Service Academy. He found that he could maintain focus without the medication.

This young man is socially, athletically and academically gifted. It would be a mistake not to enroll him.

It is my opinion that he is fully qualified to participate in a physically and academically rigorous program at U.S.N.A.

If you wish more information, please contact me.

Sincerely,

James H. Stallings, MD

# ENCLOSURE 9

26 April 2004

From: Joe Rubino
To:    Secretary, U.S. Naval Academy Academic Board

Subj: MIDN MATTHEW STAINBACK

1. I am Matt Stainback's sponsor. My family and I have come to know Matt as a friendly, gregarious, fine young man with great loyalty and a great heart. I would like to respectfully offer some additional background on Matt for the Board's consideration.

2. Matt has a conduct offense on his record from the summer of 2003 involving an incident at a concert at Merriwhether Post Pavillion. I wish to shed some light on the incident because on its face it sounds more disrespectful to the public than it in fact was. I was at the concert and met Matt there. This facility (Pavillion) is a typical open air amphitheater with a capacity of about 40,000, but whose perimeter is entirely wooded. Inside, they serve food and drink, but maintain only two fixed rest rooms. Consequently the rest areas are jammed with crowds of patrons, tremendously long lines, and are virtually not functional. Pavillion personnel patrol the wooded perimeter, but actively disregard the literally thousands of patrons who go into the wooded area to relieve themselves. Matt and I lost each other in the huge crowd, but had agreed to meet at the men's room. Matt, finding an impossibly huge crowd, went to the perimeter. Matt found some bushes that were, in fact, private and away from the crowd, so he was not in public. Unfortunately for Matt, the area he chose was secluded because it was near the back stage, thus triggering Pavillion security. In the misunderstanding that followed Matt was ejected. Later, I explained these circumstances to Pavillion personnel and the police and the incident was completely dropped. All involved noted that Matt was polite and respectful throughout the incident. I would also like to note that Matt was on weekend at the time (this was 4th of July weekend). I spoke to the watch by phone and I brought Matt back to Bancroft Hall not because he was ordered to return, but because I wanted the watch to see he was not exhibiting any signs of drunkenness and had responsibly used alcohol. Matt then returned to my house for the remainder of the weekend. For the incident, Matt was placed on restriction and 4th Class privileges for the year. I know this made for a hard year.

3. I witnessed another significant event that truly demonstrates MIDN Stainback's character. One weekend when Matt was a Third Class, I took him to a local restaurant for lunch. Suddenly, a couple at the next table became distressed and Matt asked if we could help. The man at the table seemed to have feinted. Matt and a waitress determined that there was no pulse and cleared the floor to lay the man down. People began to scream for a doctor or someone with CPR training. There was confusion and chaos in the restaurant. Matt stood up, raised his hands, and calmed the crowd saying in a loud voice "I can do this". Matt then directed the waitress and me as to how to help Matt administer CPR. Matt proceeded to perform CPR on the unconscious man. Paramedics arrived some time later and credited Matt's CPR with saving the life of the man who had suffered a massive heart attack. I was new to the Academy then and hadn't recognized the man

who Matt saved.  It was the Naval Academy's Dean of Admissions.  Matt was lauded as a hero by the Naval Academy and he was awarded a Navy Achievement Medal for lifesaving.  I will never forget the moment of doubt in the restaurant.  And I will never forget the guts that a young 3rd class showed to stand up and say, "I can do this;" and save a life.

4.  Matt is not remarkable in academics or in his personal organization.  He is very laid back and sometimes overly easygoing.  Unfortunately, Matt's written record apparently reflects this.  But Matt can be counted on to act heroically when called upon. Few are actually tested with life and death in their hands at a young age.  I've seen Matt with life and death in front of him.  I would place my life or my family's in Matt's hands without hesitation.  And I would consider my children fortunate to one day serve with Matt in the United States Navy.  He can be counted on to be absolutely loyal to his shipmates, to the service, and to the country.  When push comes to shove, Matt is a hero.  I respectfully request that the Board consider the totality of Matt's character in making your final determination.

Very Respectfully,


Joe Rubino

00410

# ENCLOSURE 10



# Q&A WITH ACADEMY SUPERINTENDENT VADM JOHN RYAN '67

*By Commander Lawrence Heyworth III '70, U.S. Navy (Ret.)*

This month, *Shipmate* presents an exclusive "question and answer" session with Superintendent VADM John Ryan. Our own Skid Heyworth, Director of Communications, discussed the significant progress made at the Academy over the past three years.

*Shipmate:* Why are you so enthusiastic?

Superintendent: In a word: Midshipmen. Although our Brigade mirrors the society they serve, we expect them to conform to a different and higher standard and the great majority of Midshipmen do just that. They are energizing, bright, ambitious, motivated, and talented—the single best part of my job here. Each day I find several more gems in the mine.

Some of you may know that Dean Dave Vetter suffered a heart attack in August. Fortunately for us, he's making a good recovery and we expect he will continue on as Dean of Admissions. We wish Dave and Royce all the best in their recovery, and our thoughts and prayers are with them. What is noteworthy about this near tragic incident was that MIDN 3/C Matthew Stainback '04, responded to the emergency and saved Dave's life with CPR. When I personally congratulated him, he modestly said "thanks," but that his "CPR was a little rusty" and that he intended to renew and improve his skills as soon as possible. I could not be prouder of this young man who reacted in a heroic manner at a restaurant on a Sunday afternoon to save a Shipmate. Bancroft Hall is full of Matt Stainbacks, young men and women who are very capable and ready to respond to life's challenges, yet they want to be even better. That's what keeps me so enthusiastic.

*Shipmate:* Looking back over the past three years, what are the major success stories?

Superintendent: Well, there are about 3,000 of them—our graduates from the Classes of '99, '00, and '01. Our biggest accomplishment and greatest sense of pride come from providing outstanding Navy and Marine Corps officers to the Fleet and Fleet Marine Force each year. These patriotic men and women are volunteer warriors—*Leaders for the Nation*—serving around the world in exciting, challenging, and rewarding career fields. That is our mission and our graduates provide those of us privileged to serve at this great institution with an immense amount of job satisfaction.

But, there is much to be excited about inside the Yard as well. There are ongoing renovations and improvements to our facilities, curriculum, and processes Yard-wide. Many are already bearing fruit, and when they are all complete, the Naval Academy will be well positioned for the foreseeable future. For example, in the past three years, we have renovated Bancroft, Maury, Mahan, and Sampson Halls, built the Glenn Warner Soccer Facility, begun an extensive comprehensive campaign, funded and hired numerous Distinguished Faculty Chairs, totally upgraded many of our athletic and workout facilities, and modernized our academic curriculum. We are preparing graduates who can keep pace with emerging Fleet needs in the realms of Information Technology, geopolitical awareness, and the fundamental communication skills of writing and public speaking. We have revamped Plebe Summer to make it more challenging and purposeful for both the Plebes and the upperclass detailers. We have taken the initiative to keep our faculty salaries competitive with the private sector to attract and retain only the best professors. And we are not stopping there. The plan is not just to keep *going*, rather to make choices in light of the mission of USNA, and as a result, keep *growing* and improving every day!

*Shipmate:* How has the Strategic Plan factored into those successes?

Superintendent: Simply put, the Strategic Plan is the foundation upon which everything rests. It is and has been our shared roadmap for the future. Over the past three years, the Plan has been our navigation chart for success, improvements, change, and has ensured that we stay true to the great heritage, legacy, and professionalism of our graduates, this institution, the Navy and Marine Corps, and the nation we serve. We aren't resting on our laurels here, either. We recently finished a top-to-bottom review of the Strategic Plan, incorporating once again, input from faculty, staff, Alumni, Midshipmen, and all our stakeholders. This review provided a refreshing new energy to the Plan, an increased sense of ownership for all, and will allow us to use it as our roadmap to the USNA in 2012.

*Shipmate:* What's different about today's Academy and the one you attended in the '60s?

Superintendent: It is better—much better. It was a great institution when I graduated in 1967, but in many ways the Academy is a better place in 2001. We are winning the war for talent! Our Brigade and our faculty are both more diverse and talented. Our classrooms, laboratories and academic opportunities are world class. We are a forward-thinking institution that is well grounded in tradition. We believe our four-year immersion program must engage the minds and hearts of every Midshipman to learn about and practice the virtues of honesty, self-control, perseverance, respect, compassion, and service. *That* is why we have strengthened our leadership, ethics, and character development programs.

This is an institution that remains true to its heritage, while at the same time, staying current in an ever-changing academic and professional military environment.

That's my challenge as Superintendent—*to balance continuity and change*. We must guard against complacency and satisfaction with the status quo. We—as an institution, and as individuals—must continually improve.

00412

5

00413

18 JUN 2004

From:  First Class Matthew Stainback, USN, 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, Class of 2004
To:    Chief of Naval Personnel
Via:   Superintendent, United States Naval Academy

Subj:  WITHDRAWAL OF VOLUNTARY RESIGNATION

    1.  I hereby withdrawal my 24 May 2004 request for voluntary resignation.


Very Respectfully

Matthew K. Stainback
MIDN            USN

00414

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*
Thomas McCarthy, Sr., PC, *Member*

Brennan C. McCarthy
*Associate Member*

**Hand Delivered**

Vice-Admiral Rodney P. Rempt                                              June 21, 2004
**Superintendent**
United States Naval Academy
Annapolis, Maryland  21402

### Re:  Midshipman First Class Matthew K. Stainback

Dear Admiral Rempt:

As you are aware, I am assisting Midshipman First Class Matthew K. Stainback in responding to the recommendation for separation originating from the Academic Board, and pending submittal to the Secretary of the Navy.   I have enclosed herewith Midshipman Stainback's memorandum and enclosures to accompany your report and recommendation.

Prior to submitting your recommendation to the Secretary, I would urge you to consider allowing Midshipman First Class Stainback the ability to obtain his degree from the Academy, while not granting him a commission.

As you know, the Academic Board voted to separate Midshipman Stainback days before the end of the academic year, and his graduation.   The basis of the Board's decision was that Midshipman Stainback did not have the "aptitude" to be commissioned.   The Board's decision was not based on any finding of academic deficiency.    The day after the Board's decision, Midshipman Stainback was forced by the Academy to elect to take incompletes in three of his courses.   Midshipman Stainback successfully completed and passed the balance of his courses for the semester.    Consequently, Midshipman Stainback need only take the final exams in the courses in which he received incompletes, in order to fully complete all academic requirements for graduation, and to receive his degree.

The Academy's failure to recognize Midshipman Stainback's lack of aptitude for commissioning until days before his graduation is unfairly prejudicial to Midshipman Stainback's ability to complete his undergraduate degree in a civilian university.   Due to the late action of the Academy, Midshipman Stainback is unable to submit transfer applications to other universities until 2005, and will only be able to transfer two years of credits from the Academy,

00416

forcing him to wait three years until he can obtain an undergraduate degree.

Should Midshipman Stainback be allowed to finish his undergraduate work, which I understand consists of taking three examinations, and to receive his degree from the Academy, he will not contest the Board's determination to deny him a commission.

As you may be aware, when Midshipman Stainback graduated from Gonzaga High School, he was granted acceptances and scholarships by Virginia Tech, Villanova, and the University of Virginia.  He was also accepted by Johns Hopkins University.  Midshipman Stainback, however, has a strong and dedicated desire to serve his county as a military officer, and made acceptance at the Naval Academy his first and foremost desire. As you are also aware, Midshipman Stainback suffers from mild attention deficit disorder, for which he is not able to take medications while at the Academy, and consequently, Midshipman Stainback has successfully struggled through four academic years with the challenge of overcoming his focus and distractability issues. Midshipman Stainback's has achieved a final GPA of 2.45.

I also respectfully request that you recommend a waiver of the reimbursement obligation for Midshipman Stainback, with a finding that he is physically disqualified, due to his continuing struggle with ADD, or for humanitarian reasons.  Midshipman Stainback's ADD has presented him with significant– and perhaps insurmountable– challenges at the Academy, in personal organization and distractability.  Despite these problems, Midshipman Stainback has achieved a passing GPA, and achieved other honors and awards relating to his performance.  Considering the many demands of the Academy on its midshipmen, which demands require the highest degree of organization and focus, and his ADD challenges, Midshipman Stainback's achievements, such as they are, are remarkable.   The effects of the ADD on Midshipman Stainback's performance can most easily be ascertained by reviewing his performance in the one area where it would not be a factor– physical fitness.  Midshipman Stainback's fitness record is exemplary, and clearly demonstrates a determined desire to meet and exceed the Academy's physical fitness requirements.   I suggest that Midshipman Stainback's less noteworthy achievements in academics and performance are not the result of any lesser desire to excel, but a physical inability to achieve such excellence.

Thank you for your careful consideration of these requests.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.
Enclosures

00417

00418

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
*themccarthyfirm@aol.com*

Thomas McCarthy, Jr., PC, *Member*                          Brennan C. McCarthy
Thomas McCarthy, Sr., PC, *Member*                          *Associate Member*

*Via Telecopier*
*(410) 293-0005*

Captain Michael Waters                          8 July, 2004
Legal Advisor to
Superintendent, United States Naval Academy
Buchanan Road
Annapolis, MD 21402

Re: Midshipman Matthew K. Stainback

Dear Captain Waters:

Yesterday I was provided with the enclosed *Final Report of Aptitude Remediation for Midshipman Stainback* from Robert A. Bouffard, CDR, and Midshipman Aptitude Mentor, to the Commandant dated 26 January, 2004, wherein CDR Bouffard reports that Midshipman First Class Stainback <u>successfully</u> completed the Aptitude Remediation Program. The Final Report further details a number of very positive achievements of Midshipman Stainback through January of this year.

I share this Final Report with you as it does not to appear that it was provided to the Academic Board for its consideration, and contradicts the Commandant's report to the Board that Midshipman Stainback had failed his aptitude remediation program.

As you know, I have serious concerns regarding the Commandant's handling of this matter, and particularly his submission to the Board of what was purported to be Midshipman Stainback's complete midshipman record, which in fact omitted a number of very positive notations and achievements. CDR Bouffard's memorandum not only adds to the concerns that the record presented to the Board contained serious and relevant omissions, but also calls into question the Commandant's assertion that Midshipman Stainback had failed his aptitude remediation program, which was the very reason the matter was referred to the Board in the first place.

Very truly yours,

Thomas McCarthy, Jr.                          00419

TMJr./Enclos.

26 JAN 04

From:  Robert A. Bouffard, CDR, Dental Corps, United States Navy
       Midshipman Aptitude Mentor

To:    Commandant of Midshipman

Via:   Director, Character Development Division

Subj:  FINAL REPORT OF APTITUDE REMEDIATION FOR
       MIDSHIPMAN MATTHEW K. STAINBACK, USN, 046582, 6th
       COMPANY

Ref:   (a) USNAINST 1610.4A

Encl:  (1) Required Aptitude Remediation Essay

1. Purpose. Per reference (a), this memorandum provides a review of
Midshipman Stainback's performance in the Aptitude Remediation Program.

2. Overview. One goal of the Honor/Aptitude Remediation Program was to
have Midshipman Stainback reflect upon his experience in violating the
Honor Concept and to recognize the central role ethics and integrity play in
the profession of arms. Midshipman Stainback's aptitude remediation was
initially prescribed to address his academic shortcomings. Counseling was
provided to determine the root causes of his failure and remedy these. Early
in his aptitude remediation process, the midshipman incurred a conduct
offense. His retention was predicated on successful completion of this
program, amended to take the additional conduct offense into account. As a
means to accomplish this goal, Midshipman Stainback was required to engage
in moral-ethical discussions, establish a set of personal goals, perform a
service project, and write a final paper. Midshipman Stainback was directed
to complete a project whereby his actions would be translated to a subordinate
in a fleet command, and he would assume the role of supervisor. In this
project, the fictionalized Marine Lieutenant was tasked with utilizing all the
resources available at the United States Naval Academy to investigate,
process, charge, then defend and remediate his subordinate.

   a. Moral-Ethical Discussions. The basis of our discussions were
      drawn from the Manual for Courts Martial, including the UCMJ,
      Ethics for Military Leaders (George R. Lucas) DSM –IV Made
      Easy, The Clinician's Guide to Diagnosis (James Morrison),
      Straight Talk About Your Mental Health (James Morrison), The
      Essence of Success (Earl Nightingale), The Seven Habits of
      Highly Effective People (Steven Covey), Stanford Library of
      Philosophy/ Aristotle's Ethics (Website).

00420

b. **Service Project.** Midshipman Stainback proposed planned and organized a camping trip for his company, improving esprit de corps and instilling a sense of teamwork among his shipmates. He also served as battalion action officer for the annual Halloween Haunted Hall (Community Outreach Program affiliated with Midshipman Action Program)

c. **POA&M.** Midshipman Stainback met or exceeded all of the goals that he had proposed to accomplish during his aptitude remediation period. Four goals were established at the initiation of this remediation program. The first goal was to develop the academic skills he possessed in order to academically excel. The second goal was to determine the root causes of the midshipman's aptitude deficiencies and address them in a systematic manner. The third goal was to analyze the conduct issues which contributed to and complicated the midshipman's aptitude deficiencies. The fourth goal was to address these issues in a comprehensive project that would incorporate all in a manner that demonstrated the far-reaching impact of such actions on a military unit. Midshipman Stainback effectively utilized all resources available to him, including his chain of command, faculty, Chaplain and DAPA personnel to accomplish these goals. He attained a 2.93 GPA during fall semester, 2003, while completing his requirements for aptitude remediation. Midshipman Stainback has demonstrated an eagerness to educate his fellow midshipmen and a willingness to confront individuals who potentially could face similar circumstances.

d. **Summer Training.** Midshipman Stainback participated in a 4-week Leatherneck Training Program at Quantico, USMC Base, attended courses in Land Navigation, Marine Corps Tactics, Marine History, Weaponry and Survival. In addition, he successfully completed EE302, which he had previously failed, with an A.

e. **Essay.** Midshipman Stainback's last requirement was to submit a written paper (enclosure 1) that captures the lessons learned from his experience and the developmental program. His paper shows he understands and has internalized the Honor Concept and appreciates the complex nature of the moral ethical decisions he may face as a military officer. Of most importance, Midshipman Stainback's paper communicates his intent to live honorably in the future.

3. Recommendation. Midshipman Stainback successfully met the requirements of the Aptitude Remediation Program. He took the program seriously and put an excellent effort into the moral-ethical discussions, community service projects and final paper. I have observed Midshipman Stainback grow from an individual who was content to "just get by" based upon his formidable intellect, to a team player and leader, who willingly makes the effort to excel, and understands the ramifications of an individual's actions upon the entire chain of command. Midshipman Stainback's willingness to discuss the incidents he was involved in with his classmates within his company is noteworthy. I believe Midshipman Stainback has learned a great deal about integrity and honor and the profession of arms. Based upon his successful completion of the Aptitude Remediation Program, I recommend that he be removed from the program.

R.A.BOUFFARD

Copy to:
2nd Battalion Officer
6th Company Officer

00422

00423

**DEPARTMENT OF THE NAVY**

UNITED STATES NAVAL ACADEMY
121 BLAKE ROAD
ANNAPOLIS MARYLAND 21402-5000

14 Jul 04

From:  Staff Judge Advocate
To:    Superintendent, United States Naval Academy

Subj:  COMMENTS REGARDING WRITTEN STATEMENTS OF MIDSHIPMAN
       FIRST CLASS MATTHEW K. STAINBACK, U.S. NAVY

1. Upon review of the written statement submitted by Midshipman Stainback, consisting of five letters listed as enclosures (4) - (9) of the basic correspondence, I provide the following comments:

    a. Enclosures (4) and (5); Resignation and letter from attorney, respectively dated 24 and 25 May 04:

- Midshipman Stainback submitted a resignation after the Academic Board rendered its decision, and his attorney noted the stated purpose of this submission was to allow Midshipman Stainback other avenues to achieving a commission.
- This letter also introduces the possible impact of Attention Deficit Disorder on this case, requesting that Midshipman Stainback be found to be physically disqualified and his obligation be waived because of this physical disability. This assertion is contradicted by the statement Midshipman Stainback supplied with his application from his physician (included in enclosure (6)) unequivocally stating his patient was fully qualified for the rigorous physical and academic Academy program. The Attorney's request to find Midshipman Stainback physically disqualified also contradicts his client's stated goal of still desiring to obtain a commission.
- The letter also requests that humanitarian reasons be considered for waiver of Midshipman Stainback's obligations, but fails to raise a specific basis for this request. If the physical disability argument is the unstated basis, it is again contradicted by the submission from Midshipman Stainback's physician.
- Enclosure (7) was submitted to request withdrawal of the proffered resignation.

    b. The enclosure (6) written statement of 25 May:

- This statement alleges that matters were either not submitted or incomplete/misleading to intentionally skew the Board results. First of all, it should be noted that Midshipman Stainback was present at the hearing and was given as much time as was necessary to ask the Board to consider any matter he chose to present. Also, Midshipman Stainback's heroic efforts to render CPR to the Board's Secretary (our Dean of Admissions) were well known by each and every Board member and clearly were not ignored by the Board in its deliberations.
- Procedural Issues Raised in the Statement:
  - Midshipman Stainback was provided more than the minimum required notice established by Academy instruction, providing him ample time to prepare for his Academic Board. His notice was clear, even if his understanding was not. No member of the Academy staff selected an "arbitrary" time for the hearing, but would have certainly communicated to Midshipman Stainback that the actual timing of his appearance was subject to the Academic Board's execution of their agenda that involved seeing dozens of midshipmen each session. Midshipman Stainback's notice clearly

informed him that his Board appearance was to occur on Tuesday, 27 Apr 04, and he had from Friday, 23 Apr 04 until that date to prepare and schedule meetings with his attorney. Contrary to his statement, he was not "sequestered" prior to the Board, but he and his chain of command would have been required to arrive well before the scheduled Board meeting to accommodate the efficient processing of cases by the panel.

- o Midshipman Stainback did not raise any issue regarding needing more time to prepare and was not prevented from speaking to his attorney at any time prior to the Board.
- o Midshipman Stainback noted one error of merit, that being that his Board notice indicated he had been provided a Commandant Memo dated 9 Apr 04. In fact, the Commandant's memo was dated 23 Apr 04, and he was clearly provided that memo with his notice. There exists no 9 Apr 04 memo considered by the Academic Board or withheld from Midshipman Stainback, and the date provided in his notice was a harmless typographical error.
- o Midshipman Stainback alleges that deletions and notations on some paperwork the Board reviewed was intended to provide the Board with a negative picture of his service. See enclosures (3) and (4). The notations on enclosure (3) however, are merely factual notations, and are neither negative nor positive. I have personally viewed enclosure (4), and the noted deletions were not an effort to expunge material beneficial to Midshipman Stainback, they simply excised Privacy Act material related to another midshipman that was totally unrelated to this case.

- • With respect to the impact of Attention Deficit Disorder on Midshipman Stainback's inaptitude, three points are clear:
    - o Midshipman Stainback never discussed this issue and its possible impact on his inability to meet standards with the Board during his personal appearance;
    - o As alluded to above, Midshipman Stainback was granted a waiver by the DoDMERB to come to the Academy based upon his position that ADD would not inhibit his abilities, a position supported by his own physician who opined he was fully physically qualified for the Academy as noted earlier. There is no indication that treatment was required or requested, and this was clearly the opinion of the pediatric physician who was responsible for stopping his patient's use of any medication for the condition.
    - o Many of Midshipman Stainback's performance difficulties were not clearly, or were only very tangentially, related to the commonly known symptoms related to this condition (e.g.: Conduct issues surrounding inappropriate training with a Plebe involving a bayonet and inappropriate behavior in public, failing to complete homework assignments and required papers, missing classes, unauthorized absence from restricted musters, a very pronounced academic performance drop in his 2/C year, substandard room cleanliness and personal appearance and, after his Board decision, his being put on report for missing several phone in musters and violating Bachelor's Enlisted Quarters rules by having an unauthorized female visitor in his BEQ room.)

00425

c. The enclosure (8) letter submission of 21 Jun 04:

- Midshipman Stainback requests a degree without a commission, basically averring he earned the degree, or was prevented from completing required courses by the Academy. This is inaccurate for three reasons:
  - o All Midshipmen must complete every requirement for a degree from the Academy vice just achieving academic minimums; including meeting aptitude standards.
  - o Midshipman Stainback did not in fact complete all required academic courses.
  - o Midshipman Stainback was allowed to finish coursework by the Academic Board. This was an unusual and an exceptional allowance not normally offered to midshipmen recommended for separation; as they are usually not allowed to finish coursework. This exception was specifically authorized by the Board to assist Midshipman Stainback in transition to a civilian university, if that were his choice, by allowing him to attain more transferable credits. In fact, Midshipman Stainback requested withdrawal from the courses in question; contradicting the assertion that the Academy prevented his completion of any required course.
- With respect to Midshipman Stainback's request for a waiver of his obligations arising from Academy attendance, he has not shown any adverse impacts from the Board decision that differ from other similarly situated Midshipman.

d. The enclosure (9) letter submission of 8 Jul 04:

- Midshipman Stainback asserts he passed his remediation, undermining the reasons for his referral to the Academic Board, as evidenced by the enclosure to this letter. That enclosure, however, only details his passing of requirements outlined by his assigned remediator and not the Commandant of Midshipmen. His successful completion of this part of the remediation program was presented to the Board, but it was also noted that his behavior, including numerous unauthorized class absences following submission of this remediation package by his mentor, was considered by the Commandant of Midshipmen to portray an aptitude remediation failure and resulted in the initiation of the Aptitude Board process.

MICHAEL A. WATERS



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

**1 0 AUG 2004**

MEMORANDUM FOR SUPERINTENDENT U.S. NAVAL ACADEMY

SUBJECT:   MIDN 1/C MATTHEW K. STAINBACK, USN

    I have approved MIDN 3/C Stainback's disenrollment from the
U.S. Naval Academy for insufficient aptitude to become a
commissioned officer.  I direct that he repay his advanced
education assistance through financial reimbursement of
$122,055.67 instead of active service.

William A. Navas, Jr.

00427

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
mccarthyandmccarthy.com

Thomas McCarthy, Jr., PC, *Member*
Thomas McCarthy, Sr., PC, *Member*

Brennan C. McCarthy
*Associate Member*

The Honorable Gordon R. England                17 August, 2004
**Secretary of the Navy**
¹⁹0 Navy Pentagon
Washington, DC  20350-1000

### Re:  USNA Midshipman First Class Matthew K. Stainback

Dear Secretary England:

        This responds to CAPT Michael Waters' July 14, 2004 memorandum in the
above referenced matter, which Vice Admiral Rodney P. Rempt forwarded to you on
July 26, 2004.

        That memorandum contains misrepresentations and omissions of fact.  In
particular, CAPT Waters states that "[MIDN Stainback's] successful completion of this
part of the remediation program was presented to the Board."  This suggests that the
Board was not only aware of CDR Bouffard's favorable memorandum, but that it
actually reviewed a copy of it. That assertion, however, is incorrect and misleading in
several respects.

        First, CDR Bouffard's memorandum was not included among the 108 page record
that the USNA provided to MIDN Stainback and presented to the Board. On a close
reading of CAPT Waters' memorandum, it is clear that he actually does not dispute this.
Instead, he states that, "[h]is successful completion of this part of the remediation
program was presented to the Board," with no explanation as to how that could have
occurred if it was not included within the 108 page record presented to the Board. The
Academy's failure to produce or disclose CDR Bouffard's memorandum, along with
other pertinent favorable information, created the false and highly prejudicial impression
that MIDN Stainback failed to make any progress during his first class year.

        The only information about the remediation program that was "presented" to the
Board during the proceedings was statements by CAPT Budney, the Deputy
Commandant of Midshipmen. Specifically, CAPT Budney stated at the beginning of the

Board that he had spoken to MIDN Stainback's remediation program officer (without mentioning the officer by name) and that MIDN Stainback's remediation officer had reported that MIDN Stainback had met or exceeded the requirements of the remediation program. However, at the conclusion of the Board, CAPT Budney stated that he was mistaken and that he had *not* talked to MIDN Stainback's remediation officer. He stated that he had confused MIDN Stainback's case with another first class midshipman. As a result, no information about MIDN Stainback's completion of the remediation program was presented to the Board and CAPT Budney's retracted testimony created the false impression that MIDN Stainback had failed the program. Furthermore, this retraction occurred at the conclusion of the Board, and after MIDN Stainback had been given his opportunity to comment. Therefore, MIDN Stainback had no way to correct this misimpression.

Even if, as Captain Waters asserts, the Board was "presented" with the bare fact—as opposed to the official document—that MIDN Stainback had successfully completed the remediation program, that would be a clear violation of the USNA's own instruction governing the Academic Board procedures because that could only have occurred after the Board proceedings were adjourned and during the deliberation phase. USNAINST 5420.24E, Art. V.1. C ("Board members will discuss the information contained in the record as a part of their review but shall not add information to the record or discuss information not contained in the record"). Therefore, even if you accept Captain Waters' assertion as true, it is an admission that the Academy violated its own instruction.

Second, CAPT Waters completely ignores the fact that the Naval Academy never provided MIDN Stainback with a copy of CDR Bouffard's memorandum prior to the Aptitude Board. MIDN Stainback was denied the opportunity to review, present, or comment on this highly favorable information.

Third, CAPT Waters fails to reconcile CDR Bouffard's conclusion that, "Midshipman Stainback met or exceeded all of the goals that he had proposed to accomplish during his aptitude remediation period..." and that he successfully completed the Aptitude Remediation Program, and the Commandant's assertion that he failed it. There is a significant period of time—January 26 to June 23, 2004—during which MIDN Stainback believed he had been removed from remediation. It was not until the Academy responded on June 23, 2004 to Senator John Warner's Congressional inquiry that MIDN Stainback first learned that the Commandant had deemed his Aptitude Remediation Program a failure. This letter to Senator Warner made no mention whatsoever of CDR Bouffard's favorable report and conclusions. It is also significant that CDR Bouffard was completely unaware, until well after the fact (July 7, 2004), that the Academy had convened an Aptitude Board and voted to separate MIDN Stainback from the Academy. These contradictions and omissions of fact are particularly troubling given the Academy's claim that it initiated the Aptitude Board based on MIDN Stainback's failure of this remediation program.

00429

Fourth, it is clear that the Superintendent never would have addressed the existence of CDR Bouffard's memorandum—much less the facts referenced therein—had it not been for our independent discovery and disclosure of it to CAPT Waters on July 8, 2004. CAPT Waters completely fails to confront the fact that CDR Bouffard's memorandum was not earlier disclosed to anyone involved in this process.

Based on the forgoing reasons and those previously stated, it is clear that the Academy did not follow proper procedure in this case and the result of the Aptitude Board is unfair. MIDN Stainback should be reinstated, graduated from the Academy and commissioned as a naval officer.

Thank you for your attention to this matter.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.
cc:         The Honorable John Warner

00430

DEAN OF STUDENTS

TRANSFER EVALUATION

Office of University Admission
Villanova University
Villanova, Pennsylvania 19085-1672

*Must be completed by Dean of Students only*

TO THE PERSON COMPLETING THIS FORM:
If you are not the Dean of Students or do not have access to this information, please return this form to the student. We are trying to assess the student's suitability for Villanova by receiving information regarding his/her disciplinary history and standing at your institution. This is not an academic recommendation. If this is not submitted by the proper office, it can delay an admission decision. Thank you.

Name of Student _Matthew Stainback_    Social Security Number _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_

Signature of Student to authorize release of information requested below.

One of your students, named above, has applied for admission to Villanova University. In considering this application, we are concerned with personal as well as academic qualifications.

Please fill out the following to the best of your ability. Space is provided for comments which will be helpful to us in admission and in counseling. Please return the form to the Director of University Admission, Villanova University, Villanova, PA 19085-1672.

1. Have there been any questions concerning this student's standard of behavior? __XX__ Yes _____ No
   If so, explain:
   Former Midshipman Stainback was found by our Academic Board to not be compatible with Military requirements. He has no conduct issues that would cause me not to recommend him for acceptance by your fine institution.

2. Is this student eligible to continue at your institution? _____ Yes _xx_ No
   Comments:
   Again, only because the military lifestyle is not for every student. Former Midshipman Stainback is a fine young man with great intelligence and potential.

3. Do you recommend this student for acceptance to Villanova University? _XX_ Yes _____ No
   Comments: Villanova is an incredibly fine institution. Matt Stainback has many attributes that will ensure his success in the civlian setting. I personally have worked with Matt to ensure he is well placed to succeed in life and am proud to help in any way possible.

4. Would you want us to call you concerning this student? _xx_ Yes _____ No
   Comments: I would be pleased to assist your admissions team to understand the Academic, physical and military rigors of the Naval Academy. At USNA, these conditions impact our students in a different manner than at most universities.

General Comments:
   I am pleased to recommend Former Midshipman Stainback to your University.

Date _15 Jul 04_    Signed _____

Official Title _Captain, Judge Advocate General's Corp, U.S. Navy_

Institution _United States Naval Academy_

Telephone _410-293-1563_

E-mail _watersma@usna.edu_

DEAN OF STUDENTS
TRANSFER EVALUATION

Office of University Admission
Villanova University
Villanova, Pennsylvania 19085-1672

*Must be completed by Dean of Students only*

TO THE PERSON COMPLETING THIS FORM

If you are not the Dean of Students or do not have access to this information, please return this form to the student. We are trying to assess the student's suitability for Villanova by receiving information regarding his/her disciplinary history and standing at your institution. This is not an academic recommendation. If this is not submitted by the proper office, it can delay an admission decision. Thank you.

Name of Student  __Matthew  Stainback__          Social Security Number  __231- 51- 4752__

Signature of Student to authorize release of information requested below.

One of your students, named above, has applied for admission to Villanova University. In considering this application, we are concerned with personal as well as academic qualifications.

Please fill out the following to the best of your ability. Space is provided for comments which will be helpful to us in admission and in counseling. Please return the form to the Director of University Admission, Villanova University, Villanova, PA 19085-1672.

1. Have there been any questions concerning this student's standard of behavior? __XX__ Yes _____ No
   If so, explain:
   Former Midshipman Stainback was found by our Academic Board to not be compatible with Military requirements.  He has no conduct issues that would cause me not to recommend him for acceptance by your fine institution.

2. Is this student eligible to continue at your institution? _____ Yes __xx__ No
   Comments:
   Again, only because the military lifestyle is not for every student.  Former Midshipman Stainback is a fine young man with great intelligence and potential.

3. Do you recommend this student for acceptance to Villanova University? __XX__ Yes _____ No
   Comments: Villanova is an incredibly fine institution.  Matt Stainback has many attributes that will ensure his success in the civlian setting.  I personally have worked with Matt to ensure he is well placed to succeed in life and am proud to help in any way possible.

4. Would you want us to call you concerning this student? __xx__ Yes _____ No
   Comments: I would be pleased to assist your admissions team to understand the Academic, physical and military rigors of the Naval Academy.  At USNA, these conditions impact our students in a different manner than at most universities.

General Comments:
   I am pleased to recommend Former Midshipman Stainback to your University.

Date __15 Jul 04__          Signed _____

Official Title  Captain, Judge Advocate General's Corp, U.S. Navy

Institution   United States Naval Academy

Telephone   410-293-1563

E-mail   watersma@usna.edu

00432



# DEPARTMENT OF THE NAVY

UNITED STATES NAVAL ACADEMY
121 BLAKE ROAD
ANNAPOLIS MARYLAND 21402-5000

5730
September 22, 2004

Thomas McCarthy, Jr.
79 Franklin Street
Annapolis, MD 21401

Dear Mr. McCarthy:

Thank you for your letter of August 17, 2004, regarding the disenrollment processing of your client, Midshipman Matthew K. Stainback, U.S. Navy, from the U.S. Naval Academy by the Academic Board. The Secretary of the Navy has forwarded your letter to me for direct response.

I have reviewed the matters you raised in your letter and have determined that they do not raise procedural issues that would warrant further reconsideration.

If you have any further questions, my Staff Judge Advocate, CAPT Mike Waters, JAGC, U.S. Navy, can be reached at 410-293-1564. I wish to thank you for your continued interest and support of the U.S. Naval Academy.

Sincerely,

RODNEY P. REMPT
Vice Admiral, U.S. Navy
Superintendent

00433

**DCN: 2004USECNAVC_GC-003380a**                                          Sta

**Subject:** (RD) USNA MIDSHIPMAN FIRST CLASS MATTHEW K. STAINBACK

| | | |
|---|---|---|
| **Type:** | Individual | **Tasker Package** |
| **Originator:** | CIV Janet G Cannon | |
| **Tasking Authority:** (Entered By) | SECNAVC_GC | 🖹 INCOMING MCCARTHY .pd KB) |
| **Due Date:** | 10/15/2004 | |
| **Document Date:** | 08/17/2004 | **Final Response** |
| **Received Date:** | 09/17/2004 | |
| **Interim Date:** | | |
| **External DCN:** | | **Working Area (drafts, referen** |
| **Key Words:** | | |
| **Member:** | MCCARTHY | |
| **Division:** | | |
| **Commitee:** | | |
| **Case Worker:** | JANET & SHERYL TEAM A | |
| **Action Office:** | USNA | |
| **Duplicate Tasker Check** | UnRestricted Tasker | |
| **Action Products:** | Letter-Reply Direct | |

**Coordination Status**
(manually updated)

**Assignment and Status**

**Discussion Thread (Amplification, Comments, Questions)**

[Enter (

**Assignments and Chop Chain**

**Routing**

| | | |
|---|---|---|
| **Lead:** | USNA Front Office | **Chop Chain** |
| **Coordination:** | | |
| **Information:** | SECNAVC_AASN Front Office | ● USNA Front Office . |
| | USN Front Office | |
| | OLA Front Office | |
| | GC1 ... CIV Grace Cole | |
| | GC2 ... GS10 Bernard Watson | |

00434

**Tasker History:**

| Sender: THOMAS MCCARTHY JR | | Subject: |
|---|---|---|
| SSIC: 5730 | TYPE: SECNAV | MIDN 1/C MATTHEW K STAINBACK  9/20/04 |

| Date of Correspondence: | Route Slip Number: |
|---|---|
| 8/17/2004 | 240640 |

| To: | Action: | Date: | Initials: | Remarks: |
|---|---|---|---|---|
| ADMIN OFCR | I | | | |
| FILES | | | | |
| | | | | |
| FLAGSEC | I | | | |
| EA | I | | | |
| SUPT | I | | | |
| | | | | |
| SJAG  ←🖘 | APS | | | |
| | | | | |
| | | | | |

## ACTION KEY:

A - Action
B - Sign "By Direction"
C - Comment/Status
D - Other Signature (see remarks)
E - Prepare Endorsement
F - Furnish copy of reply
H - Has Copy
I - Information
J - Joint Action (see remarks)
P - Prepare Reply
R - Retain
S - Superintendent's Signature

## INSTRUCTIONS :

1.  This route slip should remain attached to incoming correspondence at all times. **Return Route Slip when action is complete**

2.  Any changes in routing, action officer, or action required should be cleared by the Administrative Officer, x31550.

3.  Tickler Dates should be adhered to strictly. Report any delays to the Administrative Officer, x31550

4.  Follow Navy Correspondence Manual (SECNAVINST 5216.5D) and USNAINST 5216.1L when preparing replies.

Tickler Date:  9/23/2004                    Date Mailed:

USNA MMA 5216/4 (Rev. 1-04)

00435

# McCARTHY & McCARTHY, L.L.C.

79 Franklin Street
Annapolis, Maryland 21401
(410) 268-4016    (410) 268-3424 fax
*themccarthyfirm@aol.com*

Thomas McCarthy, Jr., PC, *Member*                    Brennan C. McCarthy
Thomas McCarthy, Sr., PC, *Member*                    *Associate Member*

*Via Telecopier*
*(410) 293-0005*

Captain Michael Waters                         22 September, 2004
**Legal Advisor to**
**Superintendent, United States Naval Academy**
Buchanan Road
Annapolis, MD 21402

Re: Midshipman Matthew K. Stainback

Dear Captain Waters:

I understand that there may have been some decision from SECNAV in regards to Midshipman Stainback's case. I would appreciate being provided with a copy of anything received from SECNAV in this matter, as neither I nor my client have received anything.

Thank you for your assistance in this matter.

Very truly yours,

Thomas McCarthy, Jr.

TMJr.

00436

SJA USN

JOB #172

| | DATE | TIME | TO/FROM | MODE | MIN/SEC | PGS | STATUS |
|---|---|---|---|---|---|---|---|
| 001 | 9/23 | 09:29 | 4102683424 | EC--S | 00' 27" | 003 | OK |

---

# *United States Naval Academy*
# *Staff Judge Advocate*
### *Superintendent's Office*
### *121 Blake Road; Annapolis MD 21402-5000*
## *"BEAT ARMY"*

Date: _23 SEP 04_

Pages (not including cover): _2_

> **To:** _TOM McCARTHY_
> **Of:** _____
> **Fax:** _410-268-3424_ **Phone:** _____

**From:** CAPT MIKE WATERS, JAGC, U.S. Navy

_TOM:_
_Here is the ASN's Decision. The_
_date is obscured, but was 10 Aug. I will_
_find out where his DD 214 is -- it should_
_have been sent by now (I assumed it was)._

_V/R_
_MW_

Matters contained in this facsimile may be sensitive in nature or may constitute privileged attorney work product and are intended only for the above-noted recipient(s). If you have received this communication in error, we would ask that you safeguard the contents of this communication and please contact our office at the numbers listed below and we will rectify any delivery errors. We thank you in advance for respecting the privacy of all materials contained in this facsimile.

**Phone:** (410) 293-1564     DSN: 281-1564     00437
**Fax:** (410) 293-0005     DSN: 281-0005

# *United States Naval Academy*
# *Staff Judge Advocate*
### *Superintendent's Office*
*121 Blake Road; Annapolis MD 21402-5000*
## *"BEAT ARMY"*



Date: 23 Sep 04

Pages (not including cover): 2

To: TOM McCARTHY

Of: _____

Fax: 410-268-3424  Phone: _____

From:  CAPT MIKE WATERS, JAGC, U.S. Navy

TOM:
    Here is the ASN's Decision. The
DATE is obscured, but was 10 Aug. I will
FIND OUT where his DD214 is -- it should
HAVE BEEN sent by now (I assumed it was).

                              v/r
                              JM

Matters contained in this facsimile may be sensitive in nature or may constitute privileged attorney work product and are intended only for the above-noted recipient(s). If you have received this communication in error, we would ask that you safeguard the contents of this communication and please contact our office at the numbers listed below and we will rectify any delivery errors. We thank you in advance for respecting the privacy of all materials contained in this facsimile.

Phone:  (410) 293-1564    DSN: 281-1564
Fax:    (410) 293-0005    DSN: 281-0005      00438



**DEPARTMENT OF THE NAVY**
OFFICE OF THE ASSISTANT SECRETARY
(MANPOWER AND RESERVE AFFAIRS)
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

MEMORANDUM FOR SUPERINTENDENT U.S. NAVAL ACADEMY

SUBJECT:  MIDN 1/C MATTHEW K. STAINBACK, USN

    I have approved MIDN 3/C Stainback's disenrollment from the
U.S. Naval Academy for insufficient aptitude to become a
commissioned officer.  I direct that he repay his advanced
education assistance through financial reimbursement of
$122,055.67 instead of active service.

William A. Navas, Jr.

00439

# FELDESMAN
## TUCKER
## LEIFER
## FIDELL LLP

EUGENE R. FIDELL
efidell@feldesmantucker.com


October 11, 2004

*Facsimile copy to (703) 693-9545*

The Honorable Gordon R. England
Secretary of the Navy
1000 Navy Pentagon
Washington, DC 20350-1000

Re: *Midshipman First Class Matthew K. Stainback*

Dear Secretary England:

On behalf of my client Midshipman First Class Matthew K. Stainback, I am writing to object to the August 10, 2004 decision of the Assistant Secretary for Manpower & Reserve Affairs, William A. Navas, Jr., to approve the disenrollment of MIDN Stainback from the Academy for insufficient aptitude.

There are two fundamental flaws with that decision. First, it is based on adverse information on which MIDN Stainback was never afforded an opportunity to comment. In particular, the Academy transmitted unfavorable information to you—as the final decision-maker—without affording him notice and an opportunity to respond.

As you know, the Academy convened an aptitude board just a few weeks before MIDN Stainback would have otherwise graduated and been commissioned as a naval officer. The board recommended disenrollment, over his objection, and the Superintendent prepared a report and recommendation (dated 10 May 2004) for your consideration. Before forwarding the report, the Superintendent provided MIDN Stainback with notice and an opportunity to respond, as required by 10 U.S.C. § 6962. MIDN Stainback prepared substantial matters in response, challenging both the Superintendent's

00440

The Honorable Gordon R. England
Secretary of the Navy
October 11, 2004
Page 2

report and the underlying aptitude board as contrary to law, arbitrary and capricious, an abuse of discretion and not supported by substantial evidence.

At that point, the Superintendent should have forwarded his report and MIDN Stainback's response to you. Instead of doing so, however, he prepared an additional report (dated July 26, 2004) and attached a decidedly negative endorsement (dated July 14, 2004) from his Staff Judge Advocate. The problem is that the Superintendent did not provide this supplemental report or his SJA's endorsement, which contained new adverse information, to MIDN Stainback for an opportunity to comment.* That is a plain violation of § 6962.

MIDN Stainback had a statutory right to contest, explain or rebut this new unfavorable information before a final decision was reached. The statute's notice and comment requirement is a core element of the aptitude board process and constitutes one of the few rights that a midshipman has to challenge this administrative action. *Id.*; *see also* USNAINST 5420.24E. In other words, the midshipman has a right to be an informed participant and not merely a passive spectator in the aptitude board process. This right clearly extends to information contained within the type of transmittal documents at issue here.

The rights to notice and an opportunity to be heard are designed to preclude off-the-record communications and promote fairness and objectivity in the administrative process. This is especially important where the administrative proceeding at issue, like an aptitude board, can result in discharge and expulsion.

It was not until after the Superintendent submitted this new adverse information that MIDN Stainback fortuitously learned of its existence and received copies from his sponsor at the Academy. MIDN Stainback promptly reviewed this information and worked with his prior counsel to prepare a response, which was mailed to you on August 17, 2004. Unbeknownst to MIDN Stainback, however, the Assistant Secretary had already reached an

---

* The Superintendent erroneously indicated on the bottom of his supplemental report that he had provided a "copy to" MIDN Stainback.

The Honorable Gordon R. England
Secretary of the Navy
October 11, 2004
Page 3

unfavorable decision seven days earlier, on August 10, 2004.** Accordingly,
MIDN Stainback was prejudiced by this statutory violation because the
Assistant Secretary reached his decision without ever considering MIDN
Stainback's response to the Superintendent's additional adverse matters.

Second, the Assistant Secretary completely failed to address any of the
facts and issues presented in MIDN Stainback's response to the
Superintendent's initial report and recommendation. It is settled law that an
agency must confront issues and evidence presented to it before rendering a
final decision. *Arent v. Shalala*, 70 F.3d 610, 616 (D.C. Cir. 1995) (citing
*Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43
(1983)). Any failure to do so will render the agency decision arbitrary and
capricious, and thus will serve as a basis for setting a decision aside. *Tourus
Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001).

The Assistant Secretary was required, at a minimum, to examine the
relevant data and articulate a satisfactory explanation for his decision. He
made no effort to do so and, instead, issued a conclusory *two sentence*
memorandum with no explanation or analysis. The facts and issues
presented by MIDN Stainback—in response to both of the Superintendent's
reports—warrant careful review and consideration before a final decision can
be reached.

Mindful of your other responsibilities, I respectfully request your
attention to this matter so that MIDN Stainback is not forced through the
disruption of an unlawful disenrollment and the delay and expense of
litigation.

---

** It should be noted that MIDN Stainback was not notified of the Assistant
Secretary's decision until September 11, 2004, when he received a certified
letter, at his home address, dated August 31, 2004 from the Superintendent.
The Superintendent's letter stated that, "[p]er reference (a), you are hereby
discharged from the U.S. Naval Academy as a midshipman effective 10
August 2004, due to insufficient aptitude to become a commissioned officer."
While reference (a) was the Assistant Secretary's August 10, 2004
memorandum, the Superintendent neglected to provide a copy to MIDN
Stainback. In fact, he did not receive a copy until September 23, 2004, after
his prior counsel requested one from the Academy.

The Honorable Gordon R. England
Secretary of the Navy
October 11, 2004
Page 4


        If you or a member of your staff have any questions, please feel free to
contact me at (202) 466-8960.


                                    Sincerely,

                                    *Eugene R. Fidell*
                                                    *m.S.F.*
                                    Eugene R. Fidell

Copy to:

Alberto J. Mora, Esq.
Vice Admiral Rodney P. Rempt
MIDN 1/C Matthew K. Stainback


00443

# FELDESMAN TUCKER LEIFER FIDELL LLP
## 2001 L Street, N.W., Washington, D.C. 20036
### Telephone (202) 466-8960
### Telefax (202) 293-8103


TO:                     The Honorable Gordon R. England

FIRM:

FAX NUMBER:             (703) 693-9545

********************************************************************

DATE:                   October 11, 2004

TIME:

# OF PAGES:             This cover plus 4 page(s)

********************************************************************

FROM:                   Matthew S. Freedus

COMMENT:


The information contained in this telefacsimile message is transmitted by an attorney. It is privileged
and confidential, intended only for the use of the individual or entity named above. If the reader of
this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copy of this communication is strictly prohibited. If this communication has been received in
error, please notify us immediately by telephone, collect if necessary, and return the original message
to us at the above address via the US Postal Service (we will reimburse postage). Thank you.


Please contact Allie Bernardo at the above-listed number if you do not receive all pages.


00444

**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

Mr. Eugene R. Fidell                                        OCT 19 2004
Attorney at Law
2001 L Street N.W.
Second Floor
Washington, D.C. 20036-4910

Dear Mr. Fidell:

    I received your letter to the Secretary of the Navy
regarding former Midshipman First Class Matthew K. Stainback.  I
am responding to you on behalf of the Secretary of the Navy.

    After reviewing your client's file, in conjunction with the
August 17, 2004 rebuttal letter sent by your client's prior
counsel, I find that your client still possesses insufficient
aptitude to become a commissioned officer.  Additionally, I do
not find your arguments for reinstating your client persuasive.
Accordingly, I reaffirm my decision to disenroll Mr. Stainback
from the U.S. Naval Academy.

    This is considered a final action in your client's case.
If he is not satisfied with the outcome of the case, or believes
that an error or injustice exists in his Naval records, he may
petition the Board for Correction of Naval Records for relief.

                                Sincerely,

                                William A. Navas, Jr.
                                Assistant Secretary of the Navy
                                (Manpower & Reserve Affairs)

Copy to:
Superintendent, U.S. Naval Academy

                                                    '00445

Sender: EUGENE R FIDELL/FELDESMAN TUCKER LEIFER FIDELL LLP

SSIC: 5730      TYPE:

Subject:
MIDN 1ST CLASS MATTHEW
K. STAINBACK -
DISENROLLMENT
2004USECNAVC_GC-003718F
(10/14/04)

| Date of Correspondence: | Route Slip Number: |
|---|---|
| 10/11/2004 | 240686 |

| To: | Action: | Date: | Initials: | Remarks: |
|---|---|---|---|---|
| ADMN OFCR | | | | |
| FILES | | | | |
| | | | | |
| | | | | |
| FLAG SEC | IR | | | |
| EA | I | | | |
| SUPT | I | | | |
| SJAG ⬅️ | IR | | | |
| | | | | |
| | | | | |

ACTION KEY:

A - Action
B - Sign "By Direction"
C - Comment/Status
D - Other Signature (see remarks)
E - Prepare Endorsement
F - Furnish copy of reply
H - Has Copy
I - Information
J - Joint Action (see remarks)
P - Prepare Reply
R - Retain
S - Superintendent's Signature

INSTRUCTIONS:

1. This route slip should remain attached to incoming correspondence at all times. **Return Route Slip when action is complete**

2. Any changes in routing, action officer, or action required should be cleared by the Administrative Officer, x31550.

3. Tickler Dates should be adhered to strictly. Report any delays to the Administrative Officer, x31550

4. Follow Navy Correspondence Manual (SECNAVINST 5 216.5D) and USNAINST 5216.1L when preparing replies.

Tickler Date:      Date Mailed:

USNA MMA 5216/4 (Rev. 1-04)

00446

**DCN: 2004USECNAVC_GC-003718f**        Sta

**Subject:** (RD) MIDSHIPMAN FIRST CLASS MATTHEW K. STAINBACK

| | | |
|---|---|---|
| **Type:** | Individual | **Tasker Package** |
| **Originator:** | CIV Sheryl Murphy | |
| **Tasking Authority:** (Entered By) | SECNAVC_GC | 📄 INCOMING .pdf (476 KB) |
| **Due Date:** | 11/10/2004 | **Final Response** |
| **Document Date:** | 10/11/2004 | |
| **Received Date:** | 10/13/2004 | **Working Area (drafts, referen** |
| **Interim Date:** | | |
| **External DCN:** | GC003380A | |
| **Key Words:** | DISENROLLMENT | |
| **Member:** | FIDELL | |
| **Division:** | | |
| **Commitee:** | | |
| **Case Worker:** | MARY COOPER TEAM B | |
| **Action Office:** | MRA | |
| **Duplicate Tasker Check** | UnRestricted Tasker | |
| **Action Products:** | Letter-Reply Direct | |

✳ 10-29-04
Pam said they sent to us for Action.
DAWN

**Coordination Status**
(manually updated)

**Assignment and Status**

10/13/04 Assigned to M&RA SAML. CWO4 M.

00447



**DEPARTMENT OF THE NAVY**
OFFICE OF THE SECRETARY
1000 NAVY PENTAGON
WASHINGTON, D.C. 20350-1000

SECNAVINST 1531.1B
N131D
10 May 2000

SECNAV INSTRUCTION 1531.1B

From: Secretary of the Navy

Subj: U.S. NAVAL ACADEMY (USNA) MIDSHIPMEN DISENROLLMENT

Ref: (a) DoD Directive 1332.23 of 19 Feb 88 (Notal)
     (b) Title 10, USC, Section 6959
     (c) Title 10, USC, Section 2005
     (d) Title 10, USC, Section 6963
     (e) Title 10, USC, Section 6962
     (f) Title 10, USC, Section 6961
     (g) Title 10, USC, Section 651

Encl: (1) Academy Education Cost Basis Determination

1. <u>Purpose</u>. To prescribe regulations for disenrollment from the U.S. Naval Academy (USNA) per statutory requirements implemented by reference (a) for the Department of the Navy, and to revalidate policy and procedures for the USNA Midshipman Reevaluation/Reappointment (R&R) Program.

2. <u>Cancellation</u>. SECNAVINST 1531.1A. This is a complete revision and should be read in its entirety.

3. <u>Applicability</u>. This instruction applies to all USNA midshipmen on the date of this instruction and all individuals who sign the agreement to serve per reference (b) on or after the date of this instruction.

4. <u>Background</u>. References (a) and (b) clarify the Secretary of the Navy's (SECNAV) authority to require and enforce midshipmen service agreements. The R&R Program offers an alternative to final separation, whereby selected individuals may be readmitted to USNA after successful completion of a specified evaluation period in an enlisted status in the U.S. Naval Reserve (USNR) or U.S. Marine Corps Reserve (USMCR).

5. <u>Policy</u>. USNA midshipmen shall execute agreements to serve per reference (b). Midshipmen determined to have breached this agreement by SECNAV shall be ordered to active duty, unless SECNAV determines a midshipman unsuitable for active duty service. Per references (b) and (c), SECNAV shall retain authority to require midshipmen separated from USNA to reimburse the U.S. Government for the cost of advanced education received, in lieu of active duty service.

00448

SECNAVINST 1531.1B

6. <u>Breach of Agreement</u>.  A midshipman shall be considered to have breached an agreement to serve if disenrolled from USNA under one or more of the following actions:

    a.  Deficiency at any examination;

    b.  Insufficient aptitude;

    c.  Unsatisfactory conduct;

    d.  Dismissal in the best interests of the Naval service;

    e.  Resignation; or

    f.  Failure to accept a commission.

7. <u>Procedures for Determining a Breach of Agreement</u>.  The following procedures shall be used for determining whether such a breach has occurred:

    a.  <u>Deficiency at any Examination</u>.  A midshipman, who is found to be academically deficient, including deficiency in physical education, may be disenrolled from USNA by the Academic Board per reference (d).

    b.  <u>Insufficient Aptitude</u>.  Under reference (e), if an Academic Board unanimously determines that a midshipman possesses insufficient aptitude to become a commissioned officer in the Naval service, the Superintendent shall report the findings to SECNAV, providing the midshipman an opportunity to examine the report and attach a written statement.  Based on the report and statement, SECNAV may disenroll the midshipman from USNA.

    c.  <u>Unsatisfactory Conduct</u>.  Under reference (e), if the Superintendent determines that the conduct of the midshipman is unsatisfactory, he shall submit a written report to SECNAV, providing the midshipman with an opportunity to examine the report and attach a written statement.  SECNAV may disenroll the midshipman from USNA.  Per reference (c), the Superintendent shall ensure that each midshipman, who has been accused of misconduct that may result in disenrollment, is advised of the potential for reimbursement to the government for the cost of advanced education.  Such advisement shall be in writing, acknowledged by the midshipman, and occur before the midshipman makes a decision on a course of action regarding personal involvement in administrative, non-judicial, and judicial action resulting from the alleged misconduct.

00449

2

SECNAVINST 1531.1B

d. Dismissal in the Best Interests of the Naval Service. Under reference (f), if the Superintendent believes the continued presence of a midshipman at USNA is contrary to the best interest of the Naval service, he shall submit a written report, with full justification, to SECNAV. If SECNAV determines the Superintendent's belief is well-founded, he shall serve a copy of the report on the midshipman and prescribe a time which he considers reasonable, under the circumstances, for the midshipman to show cause in writing why he or she should not be dismissed from USNA. After consideration of any cause so shown, and with the written approval of the Secretary of Defense (SECDEF) acting for the President, SECNAV may disenroll the midshipman from USNA. The truth of any issue of fact reasonably raised by the report or response thereto, except as to the record of demerits, shall be determined by an appropriate investigation convened by SECNAV.

e. Resignation. Unqualified resignations shall be submitted to Chief of Naval Personnel (CHNAVPERS) for approval. Qualified resignations shall be submitted to SECNAV for approval. All resignations must be submitted via Superintendent, USNA, stating a specific reason for such action. Once submitted to the Superintendent, a resignation may not be withdrawn without approval of the Superintendent. Once approved by SECNAV/CHNAVPERS, a resignation may not be withdrawn unless SECNAV/CHNAVPERS considers the midshipman's retention to be in the best interests of the Naval service. Per reference (c), the Superintendent shall ensure that each midshipman, who submits a resignation or otherwise requests voluntary separation or release from the active duty obligation, is advised of the potential for reimbursement to the government for the cost of advanced education. Such advisement shall be in writing, acknowledged by the midshipman, and occur before the request is considered by the Superintendent.

f. Failure to Accept a Commission. If a midshipman fails to accept a commission offered, the Superintendent, USNA shall forward a written report to SECNAV, providing the midshipman with an opportunity to examine the written report and attach a written statement.

8. Active Duty Service Obligation. The service obligation for midshipmen who have breached the agreement to serve will be determined under this paragraph without regard to the requirement of reference (g). Midshipmen shall be transferred to the USNR or USMCR, in an appropriate enlisted grade or rating, as determined by SECNAV.

00450

3