# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW K. STAINBACK,      )
                                     )
                *Plaintiff,*      )
                                     )
          v.                 )     Civil Action No. 1:06cv00856 (RBW)
                                     )
DONALD C. WINTER          )
SECRETARY OF THE NAVY,    )
                                     )
              *Defendant.*   )     Judge Walton

## PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2d Floor
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax

*Attorneys for Plaintiff*

August 21, 2008

Table of Contents

*Page*

Introduction ........................................................................................................ 1

Questions Presented .......................................................................................... 1

Governing Statutes and Regulation.................................................................. 2

Statement of the Case........................................................................................ 2

Statement of the Facts....................................................................................... 6

Standard of Review ............................................................................................ 6

Summary of Argument ....................................................................................... 7

Argument ............................................................................................................. 9

I.     THE ACADEMIC BOARD FAILED TO CONSIDER PLAINTIFF'S
       COMPLETE RECORD IN VIOLATION OF THE ACADEMY REGU-
       LATION AND CONTRARY TO THE SUPERINTENDENT'S REPORT.......... 9

II.    PLAINTIFF WAS DENIED A PRIOR OPPORTUNITY TO RE-
       VIEW AND RESPOND TO ADVERSE INFORMATION BEFORE
       THE SECRETARY'S DISENROLLMENT DECISION IN VIOLA-
       TION OF 10 U.S.C. § 6962 AND USNAINST 5420.24E, ART. I (C) ................. 20

III.   THE SECRETARY FAILED TO CONFRONT THE ISSUES AND EVI-
       DENCE PRESENTED BY PLAINTIFF................................................. 23

IV.    THE ACADEMIC BOARD WAS ILLEGALLY CONSTITUTED........................ 24

V.     THE ADMINISTRATIVE RECORD IS INCOMPLETE BECAUSE IT
       DOES NOT CONTAIN SEVERAL DOCUMENTS PLAINTIFF PRE-
       SENTED TO THE ACADEMIC BOARD ............................................. 25

VI.    THE SECRETARY'S DECISION TO SEEK RECOUPMENT IS CON-
       TRARY TO LAW, ARBITRARY AND CAPRICIOUS, AND AN ABUSE
       OF DISCRETION................................................................................. 28

Conclusion ........................................................................................................... 29

Table of Citations

*Page*

Cases:

*Arent v. Shalala*, 70 F.3d 610 (D.C. Cir. 1995) ............................................... 23

*Boswell Memorial Hospital v. Heckler*, F.2d 788 (D.C. Cir. 1984) ........................... 26

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*,
    419 U.S. 281 (1974) ............................................................... 24

*Brooks v. United States*, 213 Cl. Ct. 115 (1977) ......................................... 17

*Chappell v. Wallace*, 462 U.S. 296 (1983) ................................................. 7

*Christian v. United States*, 337 F.3d 1338 (Fed. Cir. 2003) ............................... 20

*Dickson v. Sec'y of Defense*, 68 F.3d 1396 (D.C. Cir 1995) ................................. 24

*Doyle v. United States*, 220 Ct. Cl. 285 (1979) .......................................... 24

*Evensen v. United States*, 228 Ct. Cl. 207 (1981) ........................................ 24

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ................................. 28

*Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997) ........................................ 7

*Fund for Animals v. Williams*, 391 F.Supp. 2d 191 (D.D.C. 2005) ........................... 26

*Golding v. United States*, 48 Fed. Cl. 697 (2001) ..................................... 15, 20

*IMS P.C. v. Alvarez*, 129 F.3d 618 (D.C.Cir. 1997) ....................................... 26

*Intercargo Ins. Co. v. United States*, 83 F.3d 391 (Fed. Cir. 1996) ...................... 25

*Kreis v. Sec'y of the Air Force*, 866 F.2d 1508 (D.C. Cir. 1989) .......................... 7

*Lakeland Bus Lines, Inc. v. NLRB*, 347 F.3d 955 (D.C. Cir. 2003) .......................... 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................ 23, 24

*Morall v. Drug Enforcement Admin.*, 412 F.3d 165 (D.C. Cir. 2005) ......................... 7

*Natural Resources Defense Council, Inc. v. Train*, 519 F.2d 287
    (D.C. Cir. 1975) ............................................................. 26, 27

*Pacific Shores Subdivision California Water District v. United States Army
    Corps of Engineers*, 488 F.Supp. 2d 1 (D.D.C. 2006) .............................. 26

*Porter v. United States*, 163 F.3d 1304 (1998) ....................................... 18, 20

*Service v. Dulles*, 354 U.S. 363 (1957) .................................................. 18

*Skinner v. United States*, 594 F.2d 824 (1979) ........................................... 17

*Strickland v. United States*, 69 Fed. Cl. 684 (2006) ..................................... 24

*Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731
    (D.C. Cir. 2001) ................................................................. 23

*United States v. Gears*, 835 F. Supp. 1093 (N.D. Ind. 1993) .............................. 28

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ....................... 18

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .............................. 7, 26, 27

*Vitarelli v. Seaton*, 359 U.S. 535 (1959) ................................................ 18

*Wagner v. United States*, 365 F.3d 1358 (Fed. Cir. 2004) ................................. 19

*Weiss v. United States*, 187 Ct. Cl. 1 (1969) ........................................... 18

Statutes:

Administrative Procedure Act, 5 U.S.C. § 706 ............................................ 2, 7, 18, 26
10 U.S.C. § 2005 ......................................................................... 2, 8, 28, 29
10 U.S.C. § 6962.................................................. 2, 3, 6, 7, 19, 20, 21, 29
10 U.S.C. § 6967......................................................................................... 2, 30

Rules and Regulations:

Naval Academy Instruction 5420.24E ............................................................*passim*

Miscellaneous:

ADA, DSM-IV American Psychiatric Association:  Diagnostic and
Statistical Manual of Mental Disorders 78-79 (4th ed. 1994).................................... 16

## Glossary

ADD ...................................................................... Attention Deficit Disorder
APA..................................................................Administrative Procedure Act
A.R. ...................................................................Administrative Record
ARP.................................................................. Aptitude Remediation Program
SAT ..................................................................Scholastic Aptitude Test
SJA ...................................................................... Staff Judge Advocate
USNAINST................................................United States Naval Academy Instruction

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MATTHEW K. STAINBACK, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06cv00856 (RBW) |
| | ) | |
| DONALD C. WINTER | ) | |
| SECRETARY OF THE NAVY, | ) | |
| | ) | |
| *Defendant.* | ) | Judge Walton |

PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Introduction*

Plaintiff respectfully moves for summary judgment on the ground that the Secretary's decision is contrary to law, arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence on the whole record. A statement of material facts, declaration of Matthew K. Stainback, and proposed order are submitted herewith.

*Questions Presented*

I

WAS THE SECRETARY'S DISENROLLMENT OF PLAINTIFF FROM THE ACADEMY CONTRARY TO LAW, ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR UNSUPPORTED BY SUBSTANTIAL EVIDENCE?

II

WAS THE SECRETARY'S DECISION TO SEEK RECOUPMENT
CONTRARY TO LAW, ARBITRARY, CAPRICIOUS, AN ABUSE
OF DISCRETION OR UNSUPPORTED BY SUBSTANTIAL EVI-
DENCE?

*Governing Statutes and Regulation*

This case is governed by the Administrative Procedure Act, 5 U.S.C. § 706

("APA"), provisions of Title 10, United States Code, concerning the United States

Naval Academy, 10 U.S.C. §§ 2005, 6962, and 6967, and Naval Academy Instruction

("USNAINST") 5420.24E.

*Statement of the Case*

This is an action for review of a decision of the Secretary of the Navy disen-

rolling plaintiff from the United States Naval Academy ("the Academy") and dis-

charging him from the Naval Service; to require the Secretary to award him the

academic degree to which he is entitled, in accordance with 10 U.S.C. § 6967; and to

enjoin the recoupment of the costs of plaintiff's education at the Academy, in accor-

dance with 10 U.S.C. § 2005.

Plaintiff entered the Academy in 2000. A.R. 3. By the Spring of 2004, he had

completed all four years of coursework and, aside from three final examinations,

had satisfied all of the requirements for graduation. A.R. 2-103, 104-205; Pl. Decl. at

1, ¶ 2.

In the Spring of 2003, plaintiff had been placed in an aptitude remediation

program ("ARP") due to alleged shortcomings. A.R. 2. His retention at the Academy

was conditioned on successful completion of the ARP. *Id;* Pl. Decl. at 1, ¶ 3.

2

Plaintiff successfully completed the ARP in January 2004. A.R. 362-64; Pl. Decl. at 1, ¶ 3.

On April 27, 2004, less than one month before plaintiff's scheduled graduation and commissioning as an Ensign, the Academy's Academic Board voted, over his objection, that he "possessed insufficient aptitude to become a commissioned officer in the naval service." A.R. 221-25; Pl. Decl. at 1-2, ¶ 4.

The Academic Board was initiated due to plaintiff's alleged "aptitude remediation failure." A.R. 2-3.

The Academic Board was improperly constituted because the Dean of Admissions failed to serve as Secretary of the Academic Board, as required by USNAINST 5420.24E, art. II, a binding regulation. A.R. 113; Pl. Decl. at 2, ¶ 5.

The Academic Board was never provided plaintiff's complete record, including documentation of his successful completion of the ARP and other documentation from his academic, aptitude, and medical records. A.R. 2-103, 104-205, 273-298, 387-422, 428-30; Pl. Decl. at 2-6, ¶¶ 6-14.

Plaintiff retained counsel to prepare for the Aptitude Board. A.R. 308.

On May 10, 2004, Vice Admiral Rodney P. Rempt, the Superintendent of the Academy, prepared a report recommending plaintiff's disenrollment. A.R. 221-25, 232; 373-80.

Before forwarding his report to defendant, Admiral Rempt provided plaintiff with notice and an opportunity to respond, as required by 10 U.S.C. § 6962 and USNAINST 5420.24E, art. I (C). A.R. 221, 232, 373, 380.

Plaintiff prepared substantial matters in response, challenging both the underlying Academic Board and Admiral Rempt's May 10, 2004 report. Plaintiff pointed out that, among other things, the Academy failed to present plaintiff's complete record to the Board. A.R. 273-98; 306-41; 361-64, 419; Pl. Decl. at 6-7, ¶¶ 16-17. He asked the Academy to set aside the findings of the Academic Board and reconvene a Board with a complete copy of his record. A.R. 311.

The Academy denied this request without explanation. Pl. Decl. at 6-7, ¶ 16.

Instead of forwarding his May 10, 2004 report and plaintiff's response to defendant, Admiral Rempt prepared a supplemental report dated July 26, 2004, A.R. 371, and attached a highly critical endorsement from his staff judge advocate ("SJA") which addressed plaintiff's response to the May 10, 2004 report and outlined new, adverse information against him. A.R. 365-70, 424-26; Pl. Decl. at 7, ¶¶ 18-19.

Neither Admiral Rempt's July 26, 2004 supplemental report nor the SJA's endorsement were provided to plaintiff for comment. A.R. 440-41. Instead, they were provided to defendant without plaintiff's knowledge. *Id.*; Pl. Decl. at 6-7, ¶¶ 18, 20.

The new adverse information—*i.e.*, Admiral Rempt's July 26, 2004 supplemental report and his SJA's endorsement—included false and misleading assertions. Pl. Decl. at 7, ¶ 19. For example, the Academy asserted that information concerning plaintiff's remediation status was provided to and/or considered by the Academic Board—*when it was not.* Pl. Decl. at 7, ¶ 19; A.R. 2-103, 104-205. Plaintiff's

4

remediation officer prepared a report which detailed plaintiff's performance and found that he successfully completed the ARP. A.R. 362-64, 420-22. The Academy never provided a copy of that report to plaintiff prior to the Board and it was never mentioned during the course of the proceedings. A.R. 419; Pl. Decl. at 3, ¶ 9. It was also not included in the record of those proceedings. A.R. 2-103, 104-205; Pl. Decl. at 3, ¶ 9. The Academy never even notified the remediation officer that an Aptitude Board had been convened. A.R. 429; Pl. Decl. at 3, ¶ 9.

Not until after Admiral Rempt had submitted the new adverse information did plaintiff learn of its existence. His Academy sponsor, who had obtained a copy informally, gave him a copy. A.R. 419; Pl. Decl. at 7, ¶¶ 18, 20.

Plaintiff promptly prepared a response to the new adverse information, which was mailed to defendant on August 17, 2004. A.R. 428-30; Pl. Decl. at 8, ¶ 21.

Unbeknownst to plaintiff, an Assistant Secretary had already decided the case for the Secretary seven days earlier, on August 10, 2004. A.R. 427; Pl. Decl. at 8, ¶ 21.

The Assistant Secretary approved Admiral Rempt's recommendation that plaintiff be disenrolled. *Id.*

The Assistant Secretary's decision was two sentences long and failed to address any of the facts and issues presented in plaintiff's response to Admiral Rempt's May 10, 2004 report and recommendation. *Id.* It directed plaintiff to reimburse the United States over $122,000 in educational expenses. *Id.*

The Assistant Secretary decided the matter without considering plaintiff's re-
sponse to Admiral Rempt's additional adverse matters, A.R. 428-30, 440-43, in vio-
lation of 10 U.S.C. § 6962 and USNAINST 5420.24E, art. I (C). A.R. 470.

Plaintiff was disenrolled from the Academy and discharged from the Naval
Service effective August 10, 2004, but did not learn of this until mid-September
2004. A.R. 436-39; Pl. Decl. at 8, ¶ 22.

On October 11, 2004, plaintiff objected to the Assistant Secretary's disenroll-
ment decision because it failed to (a) consider plaintiff's response to additional and
adverse information and (b) address any of the facts and issues presented in plain-
tiff's response to Admiral Rempt's May 10, 2004 report. A.R. 440-44.

On October 19, 2004, the Assistant Secretary stated that he considered—
albeit after the fact—plaintiff's response to the additional adverse information and
reaffirmed his disenrollment decision, but he did so without addressing any of the
facts and issues plaintiff presented. A.R. 445.

The Secretary of the Navy has final authority to disenroll midshipmen from
the Academy and the Naval Service. 10 U.S.C. § 6962.

### Statement of the Facts

The facts necessary to the disposition of the issue presented are set forth in
the Statement of the Case *supra* and Argument *infra*.

### Standard of Review

Under the APA, decisions of the service secretaries are subject to judicial re-
view for, among other things, arbitrariness, capriciousness, abuse of discretion, and

lack of substantial evidence. 5 U.S.C. § 706; *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1512 (D.C. Cir. 1989). Substantial evidence review looks at the whole record, including "contradictory evidence or evidence from which conflicting inferences could be drawn." *Morall v. Drug Enforcement Admin.*, 412 F.3d 165, 177 (D.C. Cir. 2005) (quoting *Lakeland Bus Lines, Inc. v. NLRB*, 347 F.3d 955, 962 (D.C. Cir. 2003) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

## Summary of Argument

The Secretary's decision to disenroll plaintiff from the Academy, discharge him from Naval Service, and demand for repayment for his education cannot be sustained under settled principles of judicial review of agency action. Those decisions are contrary to law, arbitrary and capricious, and an abuse of discretion because:

1.    The Academic Board failed to consider plaintiff's complete record when it recommended his disenrollment, in violation of an Academy regulation (USNA-INST 5420.24E, art. IV) and contrary to Admiral Rempt's May 10, 2004 memorandum;

2.    Plaintiff was denied a prior opportunity to review and respond to Admiral Rempt's July 26, 2004 supplemental memorandum and the SJA's July 14, 2004 memorandum, in violation of 10 U.S.C. § 6962 and USNAINST 5420.24E, art. I (C);

3.    The Secretary failed to confront the issues and evidence that plaintiff presented to him;

4.    The Academic Board was improperly constituted because the Dean of Admissions failed to serve as the Secretary of the Academic Board, in violation of USNAINST 5420.24E, art. II.

5.    The Academy failed to present the Court with the complete administrative record because it does not contain multiple documents that plaintiff presented to the Academic Board.[1]

6.    The Secretary's demand for reimbursement for an alleged insufficient aptitude is contrary to law, arbitrary and capricious, and an abuse of discretion. Because the Secretary's decision to disenroll plaintiff from the Academy, discharge him from Naval service, and demand repayment for plaintiff's education is contrary to law, arbitrary and capricious, and an abuse of discretion, the Secretary should be required to confer plaintiff's Academy degree upon him and commission him as a Naval officer. In the alternative, even if plaintiff was properly disenrolled, the Secretary's effort to recoup the costs of his Academy education is contrary to law. 10 U.S.C. § 2005.

---

[1] Plaintiff raised this argument in his motion to complete the administrative record or remand, Dkt. No. 17. The Court denied the motion and issued a memorandum order. Dkt. No. 31. The Court, however, indicated that it would allow plaintiff to resubmit this motion if he could "identify any documents, witness testimony, or presentation of the facts that were before the Academic Board but excluded from the administrative record." Order p. 8, n.4.

*Argument*

I

## THE ACADEMIC BOARD FAILED TO CONSIDER PLAINTIFF'S COMPLETE RECORD IN VIOLATION OF THE ACADEMY REGULATION AND CONTRARY TO THE SUPERINTENDENT'S REPORT

The Academic Board failed to review and consider plaintiff's complete midshipman record before recommending his disenrollment, in violation of an Academy regulation, and contrary to the Superintendent's May 10, 2004 memorandum to the Secretary. In particular, the regulation makes clear that the Board was required to review his complete record before making its recommendation to the Superintendent. USNAINST 5420.24E, arts. IV(B)(2), V(A)(1) & V(A)(1)(b); A.R. 477-78. Moreover, the Superintendent's memorandum effectively acknowledged the Board's requirement to consider the "*complete midshipman record*" before recommending disenrollment. A.R. 375 at ¶ 3.[2]

The problem here is that the Board did not have before it, much less review, plaintiff's complete midshipman record. In fact, the "record" before the Board, A.R. 2-103, 104-205, was missing several material documents from his record which tend to refute the allegation that he had insufficient aptitude to become a naval officer.

---

[2] Similarly, in a May 10, 2004 letter to plaintiff's parents, Admiral Rempt asserted that the Academic Board "extensively reviewed [plaintiff's] record and information he personally presented in order for Board members to collect and deliberate on all relevant facts and circumstances of his academic and military performance." A.R. 226.

The following documents were *not* among the records presented to the Board, A.R. 2-103, 104-205:[3]

     1.     Navy Achievement Medal and Citation.

     The Board was not presented with a copy of plaintiff's citation for his Navy Achievement Medal, but a copy was subsequently added to the administrative record. A.R. 279.[4] The citation reflects the justification for the award and, in particular, indicates that, in August 2001, he "administered cardiopulmonary resuscitation to a heart attack victim, later identified to be the Dean of Admissions." *Id.* While the Superintendent's counsel claims that the Board members were well aware of these facts, A.R. 365, it cannot be assumed that they considered the basis or justifi-

---

[3] The missing documents fall into three categories. First, there are records that should have been but were not presented to the Academic Board, but were subsequently added to the administrative record and reviewed by the Secretary before a final decision was made (*i.e.*, Navy Achievement Medal (NAM) and Citation, Midshipman Company Achievement Certificate, three-page report from plaintiff's Aptitude Mentor, favorable letter from plaintiff's sponsor Joseph Rubino). Second, there are records that should have been but were not presented to the Academic Board, and do *not* appear in the administrative record (*i.e.*, plaintiff's personal aptitude remediation essay, medical record, three specific fitness reports). Third, there are records that were presented to the Academic Board but are not part of the administrative record, were not reviewed by the Secretary, and are not before this Court (*i.e.*, multiple witness statements that plaintiff submitted to the Board. Pl Decl. at 6, ¶ 14). This last category is addressed in Argument V, *infra*.

[4] The citation reflects the justification for the award and, in particular, indicates that, in August 2001, he "administered cardiopulmonary resuscitation to a heart attack victim, later identified to be the Dean of Admissions." *Id.* While the SJA claims that the Board members were well aware of these facts, A.R. 365, it cannot be assumed that they considered the basis or justification for the award when the citation itself was never presented to them as part of plaintiff's record, as required. Moreover, the Board is not permitted to "discuss information not contained to the record." USNAINST 5420.24E, art. V(A)(1)(c).

cation for the award when the citation itself was never presented to them as part of plaintiff's record, as required.

       2.      Midshipman Company Achievement Certificate.

      The Board was not presented with a copy of plaintiff's Midshipman Company Achievement Certificate, although a copy was subsequently added to the administrative record. A.R. 281, 315. In October 2003, he was named 6th Company October Midshipman of the Month for his outstanding performance within the company. A.R. 281, 315. The documentation of this recognition was signed by his company commander. *Id.*

       3.      Three-page report from plaintiff's Aptitude Mentor.

      Plaintiff's Midshipman Aptitude Mentor, Commander Robert A. Bouffard, U.S. Navy, submitted a three-page report to the Commandant on January 26, 2004, before the Academic Board convened. Commander Bouffard's report, however, was never provided to the Board, A.R. 2-103, 104-205, or mentioned during the course of the proceedings. A.R. 419; Pl. Decl. at 3, ¶ 9. A copy of the report only appears later in the administrative record. A.R. 362-64.

      Due to plaintiff's alleged shortcomings, he had been placed in an ARP and assigned a Midshipman Aptitude Mentor (Commander Bouffard). A.R. 2. Plaintiff's retention at the Academy was conditioned on successful completion of the ARP. *Id.* In late January 2004, Commander Bouffard issued a three-page report documenting plaintiff's "successful completion of the Aptitude Remediation Program." A.R. 362-64. The report further reflects, among other things, that plaintiff "met or exceeded

all of the goals that he had proposed to accomplish during his aptitude remediation period." A.R. 363. For example, he had to write an essay as the last of several requirements to complete the program. A.R. 363 at ¶ 2(e). According to Commander Bouffard, plaintiff's essay captures his "lessons learned" from the program and shows that he "appreciates the complex nature of the moral and ethical decisions he may face as a military officer." A.R. 363; Pl. Decl. at 4, ¶ 10.

The fact that Commander Bouffard's report was never presented to the Board is particularly troubling because: (1) he addressed the report to the Commandant, A.R. 362, and the Commandant was the individual who compiled the materials that were presented to the Academic Board prior to the open session, A.R. 2-103, 104-205, and (2) Commander Bouffard's report is highly favorable and concludes that plaintiff successfully completed the ARP, A.R. 362-64; and (3) the report contradicts the allegation that the Academic Board was initiated due to plaintiff's alleged "aptitude remediation failure." A.R. 2-3. To make matters worse, the Academy never informed plaintiff of the existence of the report, much less provided him with a copy, before the Board convened. A.R. 419; Pl. Decl. at 3, ¶ 9. Moreover, the Academy never even notified Commander Bouffard that an Aptitude Board had been convened. A.R. 429; Pl. Decl. at 3, ¶ 9. It was not until after the Board and the Superintendent recommended disenrollment that plaintiff learned of the report's existence and received a copy from Commander Bouffard. A.R. 419; Pl. Decl. at 3, ¶ 9.

4.    Plaintiff's personal aptitude remediation essay.

The Academy failed to present the Academic Board with a copy of plaintiff's personal aptitude remediation essay, A.R. 363, and it does not appear anywhere in the administrative record. Commander Bouffard's report is addressed to the Commandant of Midshipmen—*i.e.*, the very individual who prepared the records that were presented to the Academic Board, A.R. 2-3, 104-05—and plainly reflects that a copy of plaintiff's essay was attached thereto. A.R. 363 at ¶ 2(e). The omission of Commander Bouffard's highly favorable report and plaintiff's essay is particularly troubling given that the Academic Board was initiated due to plaintiff's alleged "aptitude remediation failure." A.R. 2-3. It is difficult to imagine documents that would be more pertinent or directly related to the issue at hand. Moreover, because the Academy never provided plaintiff with a copy of the report prior to the Board and he did not even become aware of its existence until months later, A.R. 361, he was denied the opportunity to present the report to the Board. It is also significant that Commander Bouffard was completely unaware, until well after the fact (July 7, 2004), that the Academy had convened an Aptitude Board and voted to separate plaintiff. A.R. 419, 429; Pl. Decl. at 3, ¶ 9.

5.    Favorable letter from plaintiff's sponsor Joseph Rubino.

The record the Academy presented to the Academic Board alleged that, during plaintiff's First Class year, he was "[a]rrested for trespassing at a concert," "[e]xpelled from the concert after urinating in public," and "taken into custody by the concert staff" when he returned to the premises. A.R. 15. Plaintiff's sponsor Jo-

13

seph Rubino wrote a letter to the Secretary of the Academic Board which, among other things, largely rebutted those allegations and otherwise provided evidence in extenuation and mitigation. A.R. 295-96. By failing to present Mr. Rubino's letter to the Academic Board, A.R. 2-103, 104-205, however, the Academy created the mistaken and prejudicial impression that the events at issue—which Mr. Rubino had witnessed—were worse than they actually were.

The letter was later added to the record. A.R. 295-96.

6.    Plaintiff's medical record.

The Academy failed to present the Academic Board with a copy of plaintiff's medical record and a copy does not appear in the administrative record. A.R. *passim*. Had the Academy complied with its self-imposed obligation to present plaintiff's complete midshipmen record to the Academic Board, the Board would have reviewed plaintiff's military medical record and known that he: (1) had been diagnosed as having Attention Deficit Disorder ("ADD"), A.R. 293, 309-10, 366, 390; (2) disclosed his condition during the Naval Academy admissions process; and (3) was required to get a waiver from the Department of Defense Medical Examination Review Board in order to enroll in the Academy. *Id.* Moreover, by withholding plaintiff's medical records from the Board, the Academy prevented the Senior Medical Officer from performing his duty to advise the Board as to the nature and implications of plaintiff's medical condition. USNAINST 5420.24E, art. II(A)(3); A.R. 473. For example, the Senior Medical Officer would have been able to advise the Board that plaintiff was not permitted to take medication for his condition while at the

14

Academy, A.R. 310, but would have been permitted to do so after graduation as a naval officer.

Given plaintiff's exceptional performance in high school, A.R. 276, impressive Scholastic Aptitude Test ("SAT") scores, A.R. 79, 225, completion of four years at the Naval Academy, it is reasonable to expect that plaintiff's performance would have only improved as an officer because he would have been able to take medication for his condition. The Superintendent has not disputed the fact that plaintiff's medical record was not presented to or considered by the Board. Instead, his SJA blamed plaintiff for not presenting any information about his medical condition to the Board, A.R. 366, and opined that his medical condition was irrelevant to the issue of his aptitude.

The SJA's claim is flawed. First, the burden was on the Academy, not plaintiff, to present the Board with his complete midshipman record. USNAINST 5420.24E, arts. IV(B)(2), V(A)(1) & V(A)(1)(b); A.R. 477-78. Moreover, midshipmen medical records are military property and the Academy exercises exclusive possession and control over them. Second, the Academy's Senior *Medical* Officer, not its lawyer, is the one responsible for advising the Board on medical issues. USNAINST 5420.24E, art. II(A)(3); A.R. 473; *Golding v. United States*, 48 Fed. Cl. 697, 734-36 (2001) (Navy violated own regulation by failing to conduct requisite medical review). The Senior Medical Officer made no mention of plaintiff's medical condition, much less its nature and implications, during the hearing. Pl. Decl. at 4-5, ¶ 12. Third, the

post-hearing "medical" opinion of the Academy's lawyer is simply incorrect. In particular, he stated that:

> Many of Midshipman Stainback's performance difficulties were not clearly, or were only very tangentially, related to the commonly known symptoms related to this condition (*e.g.*, Conduct issues surrounding inappropriate training with a Plebe involving a bayonet and inappropriate behavior in public, failing to complete homework assignments and required papers, missing classes, unauthorized absence from restricted musters, a very pronounced academic performance drop in his [junior] year, substandard room cleanliness and personal appearance. . .

A.R. 366.

The opposite, however, is true. Pl. Decl. at 4-5, ¶ 12. The common symptoms of Attention Deficit Disorder are directly relevant to the events that form the basis of the Academy's allegation of inaptitude. In particular, common symptoms of ADD include, among others, the failure to "complete schoolwork, chores, or other duties," difficulty "organizing tasks and activities," difficulty with concentration, and forgetfulness "in daily activities (e.g., missing appointments. . .)" American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 78-79 (4th ed. 1994); Pl. Decl. at 4-5, ¶ 12.

If the Academy had presented the Board with plaintiff's medical record, as required, and the Senior Medical Officer had advised the Board as to the implications of his medical condition, as required, it is entirely possible if not likely that the Board would have viewed plaintiff and his "complete midshipman record," A.R. 375 at ¶ 3; USNAINST 5420.24E, arts. IV(B)(2), V(A)(1) & V(A)(1)(b); A.R. 477-78, in a much more favorable light and reached a different conclusion as to his aptitude for

military service. For example, the Senior Medical Officer could have advised the Board that, while a midshipman is not permitted to take medication for ADD, a commissioned officer is. Pl. Decl. at 4-5, ¶ 12. This information would have shed a different light on the difficulties plaintiff experienced at the Academy and provided a basis to expect his performance to only improve as a naval officer. This is especially true given that, while on medication, he performed exceptionally well in high school (cumulative GPA of 3.93) and 1410 on the SAT. A.R. 225, 276; Pl. Decl. at 1, 4-5, ¶¶ 1, 12.

    7.    Fitness reports

    Three of plaintiff's fitness reports were not presented to the Board and do not appear anywhere in the administrative record. A.R. *passim*. The missing reports covered the following periods: (a) plaintiff's fall semester senior year, A.R. 334 at ¶ 3 (describing the report, among other things, as missing from the record); (b) his Naval Tactical Training during the summer between his freshman and sophomore year (he was selected for platoon commander that summer); (c) his "Leatherneck Training Program" the summer before his senior (First Class) year. A.R. 363 at ¶ 2(d) (referencing the training); Pl. Decl. at 5-6, ¶ 13. It is well settled that fitness reports are essential for purposes of evaluating an officer's performance and potential. *E.g.*, *Brooks v. United States*, 213 Cl. Ct. 115, 120 (Cl. Ct. 1977); *Skinner v. United States*, 594 F.2d 824, 831 n.4 (Ct. Cl. 1979) ("the most critical item in an officer's selection folder is his [Officer Evaluation Report], and if it is low or compares with those of his peers, it is fatal to his chances of selection"). The missing fitness reports

17

were largely favorable. Indeed, the report for the Fall semester of plaintiff's *senior year* reflects his best grades at the Academy. Pl. Decl. at 5-6, ¶ 13.

*    *    *

There is no question that the Academy violated its own regulation, USNA-INST 5420.24E, article IV(B)(2); A.R. 477-78, to which it is bound, by failing to provide the Academic Board with a copy of plaintiff's complete midshipman record. This violates one of the core propositions of administrative law. 5 U.S.C. § 706(2)(A). *Vitarelli v. Seaton*, 359 U.S. 535 (1959); *Service v. Dulles*, 354 U.S. 363 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Not only did the omission of records listed above prevent the Academic Board from conducting the requisite "complete record review" and "whole-person evaluation," but they prejudiced plaintiff by making his record before the Board incomplete and appear significantly weaker than it actually was. Where, as here, an agency "place[s] before the Board an alleged officer's record filled with prejudicial information and omits documents equally pertinent which might have mitigated the adverse impact of the prejudicial information, then the record is not complete," and is before the Board in a way other than as the regulation prescribes. *Porter v. United States,* 163 F.3d 1304, 1311 (Fed. Cir. 1998) (citing *Weiss v. United States*, 187 Ct. Cl. 1, 408 F.2d 416, 419 (Ct.Cl. 1969)). Although *Porter* involves a service-member's failure of selection, the need for an Academic Board to have a complete military record is even more important given that the service-member's entire career hangs in the balance. Moreover, the incomplete and lopsided record before the Academic Board

18

(as opposed to later in the process) was particularly prejudicial because each member of the Board has the power to stop the disenrollment process in its tracks and prevent the case from ever reaching the Secretary. "Decisions to recommend separation of a midshipman for insufficient aptitude must be *unanimous*." USNAINST 5420.24E art. III(M). In other words, it takes only one Board member to vote for retention to bring the process to an end. *Id.* art. IV(B)(2) ("if the recommendation for an "F" in aptitude, and discharge is unanimously approved by the Board, the case will be referred to the Superintendent for the initiation of a recommendation to the Secretary of the Navy that the midshipman be discharged"); 10 U.S.C. § 6962(a)(2). Had one member of the Board voted for retention, there is no question the outcome would have been different. This requirement for a unanimous decision is a significant procedural safeguard especially for a midshipman, like plaintiff, who was only a few weeks shy of graduation and commissioning. *Wagner v. United States*, 365 F.3d 1358, 1364-65 (Fed. Cir. 2004).

Given that the missing documents were relevant and tend to rebut the allegation that plaintiff had insufficient aptitude to become a naval officer, it cannot be blithely assumed that every one of the voting Board members would have reached the same decision had they reviewed plaintiff's entire record. In any event, the burden is on the government to show that the error here was harmless. Once an error has been shown—which it has—and there is a nexus between that error and the officer's passover—which there is—the government bears the ultimate burden to demonstrate that the error was harmless. In the context of a promotion case, like

this one, "[t]he harmless error test places on the defendant the burden of producing substantial evidence to demonstrate it would be unlikely that a service member would . . . have been promoted . . . regardless of the government error." *Golding, supra,* 48 Fed. Cl. at 739; *see also Christian v. United States,* 337 F.3d 1338, 1344 (Fed. Cir. 2003) (the "quintessential military promotion question" is "whether it is unlikely that he . . . would have been promoted in any event") (citing *Porter v. United States, supra,* at 1318).

It is inconceivable that an incomplete midshipman record, missing highly favorable documents, could be characterized as harmless error. As a result, the Academic Board proceedings should be set aside and the case remanded for a new Board.

II

PLAINTIFF WAS DENIED A PRIOR OPPORTUNITY TO REVIEW
AND RESPOND TO ADVERSE INFORMATION BEFORE THE
SECRETARY'S DISENROLLMENT DECISION IN VIOLATION
OF 10 U.S.C. § 6962 AND USNAINST 5420.24E, ART. I (C)

The Secretary's August 10, 2004 decision to disenroll plaintiff from the Academy for insufficient aptitude was based on adverse information on which plaintiff was never afforded an opportunity to comment. In particular, the Academy transmitted unfavorable information to the Secretary—as the final decision-maker—without affording plaintiff notice and an opportunity to respond as required. 10 U.S.C. § 6962(b); USNAINST 5420.24E art. I(C); A.R. 470.

In particular, § 6962 provides that a midshipman, for whom the Superintendent issues a report recommending disenrollment, "shall be given an opportunity to

examine the report and submit a written statement thereon" before the Secretary makes a final decision.

Here, the Academy convened an aptitude board just a few weeks before plaintiff would have otherwise graduated and been commissioned as a naval officer. The board recommended disenrollment, over plaintiff's objection, and Admiral Rempt prepared a report and recommendation (dated May 10, 2004) for the Secretary's consideration. Before forwarding the report, the Superintendent provided plaintiff with notice and an opportunity to respond, as required by § 6962(b). A.R. 221, 232, 373, 380. Plaintiff prepared substantial matters in response, challenging both the Superintendent's report and the underlying Academic Board as contrary to law, arbitrary and capricious, an abuse of discretion and not supported by substantial evidence. A.R. 273-98, 306-41, 361-64, 387-412, 419.

At that point, Admiral Rempt should have forwarded his report and plaintiff's response to the Secretary. Instead of doing so, he prepared an additional report (dated July 26, 2004), A.R. 371, and attached a decidedly negative endorsement (dated July 14, 2004) from his SJA. A.R. 365-70, 424-26. The problem is that Admiral Rempt did not provide this supplemental report or his SJA's endorsement (which contained new adverse information) to plaintiff for an opportunity to comment.[5] That is a plain violation of § 6962(b).

_____

[5] Admiral Rempt erroneously indicated on the bottom of his supplemental report that he had provided a "copy to" Midshipman Stainback. A.R. 371; Pl. Decl. at 7, ¶¶ 18, 20.

Plaintiff had a statutory right to contest, explain or rebut this new unfavorable information *before* a final decision was reached. *Id.* The statute's notice and comment requirement is a core element of the aptitude board process and constitutes one of the few rights that a midshipman has to challenge this administrative action. *Id.*; USNAINST 5420.24E. This right clearly extends to information contained within the type of transmittal documents at issue here. The right to notice and an opportunity to respond to such documents is especially important where the administrative proceeding at issue, like an Aptitude Board, can result in discharge and expulsion.

It was not until after Admiral Rempt submitted this new adverse information, however, that plaintiff fortuitously learned of its existence and received copies from his sponsor at the Academy. A.R. 419; Pl. Decl. at 7, ¶ 18, 20. Plaintiff promptly reviewed this information and worked with his prior counsel to prepare a response, which was mailed to the Secretary on August 17, 2004. A.R. 428-30, Pl. Decl. at 8, ¶ 21. Unbeknownst to plaintiff, however, the Assistant Secretary had already reached an unfavorable decision seven days earlier, on August 10, 2004, A.R. 427, Pl. Decl. at 8, ¶ 21.

Plaintiff was prejudiced by this statutory violation because the Secretary reached his decision without ever considering plaintiff's response to the Superintendent's additional adverse matters.

Accordingly, the Secretary's decision should be set aside and the case remanded with instructions to convene a new Academic Board.

III

## THE SECRETARY FAILED TO CONFRONT THE ISSUES AND EVIDENCE PRESENTED BY PLAINTIFF

The Secretary failed to confront the issues and evidence presented to him before making a final decision to disenroll plaintiff. In his initial August 10, 2004 decision, A.R. 427, and subsequent affirmation of that decision, A.R. 445, the Secretary completely failed to address any facts and issues presented in plaintiff's responses to the Superintendent's report and recommendation. A.R. 427, 445.

An agency must confront issues and evidence presented to it before rendering a final decision. *Arent v. Shalala*, 70 F.3d 610, 616 (D.C. Cir. 1995) (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Any failure to do so will render the agency decision arbitrary and capricious, and thus will serve as a basis for setting a decision aside. *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F. 3d 731, 736 (D.C. Cir. 2001).

The Secretary was required, at a minimum, to examine the relevant data and articulate a satisfactory explanation for his decision. He made no effort to do so and, instead, issued first a conclusory two-sentence memorandum on August 10, 2004 followed by his almost equally brief affirmance on October 19, 2004. A.R. 427, 445. The facts and issues presented by plaintiff, in response to both of the Superintendent's reports, warranted careful review and consideration before a final decision was reached. No evidence of such a review or explanation of his decision in the face of substantially conflicting evidence was provided.

While the Court may uphold "a decision of less than ideal clarity if the agency's path may be reasonably discerned," *Motor Vehicle Mfrs.*, *supra*, 463 U.S. at 43 (citing B*owman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)); *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir 1995), here there is a complete failure to grapple with the conflicting data and documentation presented by plaintiff in response to the Superintendent's report.

Accordingly, The Secretary's decision should be set aside and the case remanded with instructions to consider what other relief, if any, ought to be granted, with a cogent explanation therefore.

## IV

## THE ACADEMIC BOARD WAS ILLEGALLY CONSTITUTED

The Academic Board was improperly constituted because the Dean of Admissions did not serve as the Secretary of the Academic Board. Pl. Decl. at 2, ¶ 5.

The governing regulation provides that "[t]he Dean of Admissions will be the Secretary of the Academic Board. . . ." USNAINST 5420.24E art. II(A)(1); A.R. 472. The Dean of Admissions, however, was not present for any portion of the open session of plaintiff's Board. Pl. Decl. at 2, ¶ 5. This compositional error should be treated as *per se* prejudicial. *E.g.*, *Strickland v. United States,* 69 Fed. Cl. 684, 710 (2006) (composition of deciding body is not susceptible to review under harmless error test) (citing *Porter v. United States*, 163 F.3d 1304 (Fed. Cir. 1998)); *see also Evensen v. United States*, 228 Ct. Cl. 207 (1981); *Doyle v. United States*, 220 Ct. Cl. 285 (1979). In other words, the violation here, standing alone, is sufficient to render

void the disenrollment decision. Thus, there is no occasion to engage in a search for prejudice and relegate this case to a harmless error analysis.

Even if a showing of prejudice were required, however, this case qualifies. Prejudice "means injury to an interest that the statute, regulation, or rule in question was designed to protect." *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996). The harm plaintiff suffered falls easily within that standard because the Dean of Admissions knew plaintiff personally for at least three years (since plaintiff saved his life) and very likely would have served as an advocate for plaintiff before the Academic Board. Pl. Decl. at 2, ¶ 5. The effect of this compositional error is similar therefore to the effect of the Academy's failure to produce plaintiff's complete record to the Academic Board—*i.e.*, it excluded favorable information from the proceedings. It cannot be presumed that the Board would have voted unanimously to disenroll plaintiff if the Dean of Admissions had served as the Secretary of the Academic Board, as required.

Accordingly, the decision should be set aside and the case remanded with instructions to convene a new Academic Board.

V

**THE ADMINISTRATIVE RECORD IS INCOMPLETE BECAUSE IT DOES NOT CONTAIN SEVERAL DOCUMENTS PLAINTIFF PRESENTED TO THE ACADEMIC BOARD**

The administrative record before the Court is incomplete because it does not contain dozens of witness statements that plaintiff submitted to the Academic Board. In other words, records that were before the Academic Board have been ex-

25

cluded from the administrative record that was presented to the Secretary of the Navy and this Court. Not only did the omission of these records prevent the Secretary of the Navy from reviewing the complete administrative record, but it prevents this Court from conducting a fair review of the agency decision.

Judicial review of agency action requires the Court to review the "whole record or those parts of it cited by a party." 5 U.S.C. § 706; *Boswell Memorial Hospital v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("[t]o review less than the full administrative record might allow a party to withhold evidence unfavorable to its case") (citing 5 U.S.C. § 706); *see also Natural Resources Defense Council, Inc. v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975) (court erred when it reviewed agency action based on partial record). To ensure fair review of an agency decision, "a reviewing court 'should have before it neither more nor less information that did the agency when it made its decision.'" *Pacific Shores Subdivision California Water District v. United States Army Corps of Engineers*, 448 F. Supp. 2d 1 (D.D.C. 2006) (citing *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196 (D.D.C. 2005) (quoting *IMS P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). Moreover, judicial review must take into account not only evidence that tends to support the agency's decision, but that which cuts in the other direction. *Universal Camera*, 340 U.S. at 487-88.

Here, the "whole record" is clearly meant to include the dozens of favorable witness statements plaintiff submitted to the Board. Pl. Decl. at 6, ¶ 14. Indeed, the Academy's own regulation provides that the midshipman has a right to present evidence to the Board for its consideration. USNAINST 5420.24E, art. V(A)(5)(d); A.R.

481. Plaintiff exercised that right and submitted multiple and highly favorable witness statements to the Board. Pl. Dec. at 6, ¶ 14. While the Superintendent plainly acknowledged that plaintiff "personally presented" information to the Board, A.R. 226, the material filed with the Court is incomplete *on its face* because it does not include any of that information. The administrative record also does not reflect plaintiff's oral testimony before the Board because the Academy did not record the hearing.

Instead, the only materials currently before the Court, which were also before the Board, are the ones the Commandant compiled and presented to the Board prior to the open session. A.R. 2-103, 104-205. As explained in Argument I, *supra*, those materials paint a one-sided picture of plaintiff and omit material documents.

Where, as here, the administrative record is incomplete, it interferes with the plaintiff's ability to formulate his claims and challenge the Secretary's action. *Natural Resources*, 519 F.2d at 292. Moreover, the Court cannot make an informed judgment as to plaintiff's claims when it cannot review the entire record that was before the Board, especially when the omitted information cuts against the agency's decision. *Universal Camera,* 340 U.S. at 487-88.

If the Academy retained copies of the multiple statements that plaintiff submitted to the Academic Board, the Secretary should complete the record and submit copies of them to the Court. If the Naval Academy did not retain copies, the Court should remand this action to the Academy for a new Academic Board hearing.

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (remand is proper course of action when administrative record is incomplete).

VI

THE SECRETARY'S DECISION TO SEEK RECOUPMENT IS
CONTRARY TO LAW, ARBITRARY AND CAPRICIOUS,
AND AN ABUSE OF DISCRETION

For the reasons stated above, the Secretary's demand for reimbursement— like his disenrollment decision— is contrary to law, arbitrary and capricious, and an abuse of discretion. Even assuming plaintiff was properly disenrolled from the Academy and discharged from Naval Service, however, the Secretary's decision to seek recoupment of education expenses from plaintiff is contrary to law, arbitrary and capricious, and an abuse of discretion because the sole rationale for the Secretary's disenrollment decision, *i.e.*, "insufficient aptitude to become a commissioned officer," A.R. 427, is not a basis on which the United States may seek reimbursement. 10 U.S.C. § 2005 (2004) (the version in effect in 2004); *United States v. Gears*, 835 F. Supp. 1093 (N.D. Ind. 1993).

According to the version of 10 U.S.C. § 2005(a)(3) in effect at the time of plaintiff's disenrollment, the obligation to reimburse only arises where the midshipman fails to complete the period of active duty specified in the service agreement, and that failure was either voluntary on the midshipman's part or due to

28

misconduct on the midshipman's part.[6] Here, while plaintiff did not complete his active duty obligation, his failure to do so was not voluntarily or due to misconduct. Instead, he did not complete his service obligation because, over his objection, the Navy disenrolled him for "insufficient aptitude to become a commissioned officer." A.R. 427. This is not a ground permitted by § 2005 as it read at the pertinent time.

Accordingly, the Court should declare that the government is not entitled to reimbursement of educational expenses.

*Conclusion*

For the foregoing reasons, the Secretary's decision should be set aside and the case remanded with instructions to—

1.    remand the case with instructions to reinstate him as a midshipman and cause his record to be properly evaluated by an Academic Board in accordance with 10 U.S.C. § 6962 and USNAINST 5420;

2.    direct defendant to allow him to complete his final examinations so that he may receive the academic degree to which he is entitled in accordance with 10 U.S.C. § 6967;

---

[6] The version of § 2005(a)(3) in effect in 2004 stated:

> that if such person, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement, or fails to fulfill any term or condition prescribed pursuant to clause (4), such person will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided such person as the unserved portion of active duty bears to the total period of active duty such person agreed to serve; and

10 U.S.C.A. § 2005(a)(3) (Amendments section).

3.    direct defendant to end any and all actions to recoup any educational expenses from him;

4.    award him his costs and reasonable attorneys fees incurred in this action; and

5.    grant such other and further relief as may in the circumstances be just and proper.

If the Court is not disposed to grant the foregoing relief, then the case should be remanded to the Secretary for a particularized explanation of his and the Academy's reasoning in light of the entire record, and consideration of what relief, if any, ought to be granted, with a cogent explanation therefore.

Respectfully submitted,

*Matthew S. Freedus*

Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2d Floor
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax

*Attorneys for Plaintiff*

August 21, 2008