UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW K. STAINBACK,            )
                                 )
        *Plaintiff,*             )
                                 )
v.                               )   Civil Action No. 1:06cv00856 (RBW)
                                 )
DONALD C. WINTER                 )
SECRETARY OF THE NAVY,           )
                                 )
        *Defendant.*             )   Judge Walton

District of Columbia    )    ss.:

DECLARATION OF MATTHEW K. STAINBACK

1. I graduated from Gonzaga College High School in June 2000 with a grade point average of 3.93 and a score of 1410 (740 math/670 verbal) on the Scholastic Aptitude Test ("SAT").

2. I entered the United States Naval Academy ("the Academy") in 2000. By the Spring of 2004, I had completed all four years of coursework and, aside from three final examinations, had satisfied all of the requirements for graduation.

3. In the Spring of 2003, I was placed in an aptitude remediation program ("ARP") due to alleged shortcomings. My retention at the Academy was conditioned on my successful completion of the ARP. As far as I knew, I had successfully done so in January 2004.

4. On April 27, 2004, a month before my scheduled graduation from the Academy and commissioning as an Ensign, the Academy convened an Academic

Board which voted, over my objection, that I "possessed insufficient aptitude to become a commissioned officer in the naval service."

5.  The Academy's Dean of Admissions, Colonel David A. Vetter, U.S. Marine Corps (ret), was not present during any open session of my Academic Board. Having been at the Academy for four years, I know that one of Dean Vetter's responsibilities is to serve as the Secretary of the Academic Board. I had personally known Dean Vetter for the three years prior to my Academic Board. In August 2001, I administered cardiopulmonary resuscitation to him while he was suffering from an apparent heart attack. Thereafter, he took in an interest in me and my military career and, as a result, became familiar with my character and record at the Academy. I believe he would have served as an advocate for me at the Academic Board if he had been present for and served as the Secretary of my Academic Board.

6.  The records the Academy provided to my Academic Board, which appear at pages 2-103 (and again at pages 104-205) of the administrative record, do not consist of my complete midshipman record. In particular, the records provided to the Board did not include the documents described in paragraphs 7 through 13 below.

7.  The record before the Board did not include a copy of my Navy Achievement Medal and Citation and no mention was made of the medal or citation during the open session of the Board. A copy of the citation appears in the administrative record at page 279.

8. The record before the Board did not include a copy of my Midshipman Company Achievement Certificate and no mention was made of it or the basis for it during the open session of the Board. A copy of the certificate appears in the administrative record at pages 281 and 315.

9. The record before the Board did not include a copy of a three-page report dated January 26, 2004 from my Midshipman Aptitude Mentor Commander Robert A. Bouffard, U.S. Navy. A copy of the report appears in the administrative record at pages 362-64. The Academy never told me about Commander Bouffard's report or provided me with a copy of it before the Board convened. The report was also not mentioned during the Board. It was not until after the Board and Admiral Rempt recommended my disenrollment that I learned of the report's existence. In particular, I went to talk to Commander Bouffard about the results of the Board in early July 2004. When he saw me he asked whether I enjoyed my graduation ceremony and told me that he had tried to make it to the ceremony but was not able to. I responded that I did not graduate because an Academic Board had voted to disenroll me. He was clearly very surprised by this and told me that he was never informed that the Academy had convened an Academic Board. He also told me that he had prepared a report saying that I had successfully completed my remediation program. We went to his office and he made me a copy of his report. That same day I provided the report to the private counsel I had retained to help me prepare for the Aptitude Board.

10.  The record before the Board did not include a copy of my personal aptitude remediation essay, which consisted of about eight to ten pages. A copy of this essay does not appear anywhere in the administrative record. The essay was a requirement of my ARP. I wrote the essay in the first person as if I were a Second Lieutenant in the Marine Corps counseling one my marines on leadership and responsibility. While I do not have a copy of the essay, it consisted of my understanding of the lessons I had learned over the course of the ARP. When I finished the assignment, Commander Bouffard told me that I had done an excellent job and that he was very pleased with it.

11.  The record before the Board did not include a copy of a letter from my Academy sponsor Joseph Rubino, which was addressed to the Secretary of the Academic Board. A copy of the letter appears in the administrative record at pages 295-96.

12.  The record before the Board did not include a copy of my medical record and a copy does not appear in the administrative record. There was no discussion or mention of my medical condition (Attention Deficit Disorder) or medical record during the Academic Board. While I was at the Academy, my military medical record was kept in the Academy's medical offices in the basement of Bancroft Hall. My medical records would reflect that I have ADD and that I took prescription medication for it during high school. It would also reflect that I stopped taking the medication before enrolling in the Academy. I had learned during the Academy's application process (Department of Defense Medical Examination

4

Review Board) that midshipmen are not allowed to take medication for ADD while enrolled at the Academy. My private physician and I believed that I would be able to succeed at the Academy without the medication. I did not take any medication for my ADD during my four years at the Academy. There is no question that the symptoms of my condition made my four years there more challenging than they otherwise would have been if I had been permitted to take medication. Most if not all of my difficulties at the Academy were directly related to the symptoms of my condition—*e.g.*, difficulty with concentration and organization, and forgetfulness. I say this as a fact not an excuse. In any event, I was able to complete all four years of coursework and, except for three final examinations, satisfy all requirements for graduation. It is my understanding that, after graduation and commissioning as a naval officer, I would have been permitted to take medication for ADD. In other words, I believe my performance would have only improved as a naval officer.

13.  The record before the Board did not include a copy of three of my fitness reports and those reports do not appear anywhere in the administrative record. The missing reports covered the following periods: (a) my Fall semester senior year; (b) my Naval Tactical Training during the summer between my freshman and sophomore year ((I was selected for platoon commander that summer); and (c) my Leatherneck Training Program the summer before my senior (First Class) year. The missing fitness reports were largely favorable ones. In particular, the report for the Fall semester of my senior year reflects the best grades I received at the Academy. A true and accurate copy of my Fall semester senior year

5

fitness report is attached to this declaration as Exhibit 1. I do not have copies of the other two missing fitness reports.

14. The administrative record does not include copies of about twenty to thirty witness statements that I had gathered to present to the Academic Board. The statements were from members of my platoon and other platoons at the Academy. While I do not have copies of the statements, I read them at the time and recall that they were very supportive and favorable. They all expressed strong support for my potential to become an effective leader and naval officer and some or all of them described my leadership abilities and positive character traits using specific examples or illustrations. On the morning of the Board, April 27, 2004, I received a call to report to my company officer Lieutenant McKenna in Bancroft Hall because the Academic Board was going to convene earlier than scheduled. I brought my package of statements to Lieutenant McKenna's office and provided the signed originals (except for one which I recall was in the form of an email) to her. She told me that she would make sure the letters were provided to the Board members. Lieutenant McKenna escorted me to the Commandant's office.

15. On May 10, 2004, Vice Admiral Rodney P. Rempt, Superintendent of the Academy, prepared a report recommending my disenrollment.

16. I objected to the Board's findings and pointed out that, among other things, the Academy failed to present my complete record to the Board. I asked the Academy to set aside the findings of the Board and reconvene a Board with a

6

complete copy of my record. The Academy denied this request without providing any explanation.

17. Before forwarding his May 10, 2004 report to the Secretary of the Navy, Admiral Rempt provided me with notice and an opportunity to respond. I prepared substantial matters in response, challenging both the underlying Academic Board and Admiral Rempt's May 10, 2004 report.

18. On July 26, 2004, instead of forwarding his May 10, 2004 report and my response to the Secretary, Admiral Rempt prepared an additional report, and attached an endorsement from his staff judge advocate ("SJA") which addressed my submissions and outlined new, adverse information against me. Neither Admiral Rempt's July 26, 2004 supplemental report nor the SJA's endorsement were provided to me for comment. Instead, they were provided to the Secretary of the Navy without my knowledge.

19. Admiral Rempt's July 26, 2004 supplemental report and his SJA's endorsement to the Secretary included false and misleading assertions. For example, the SJA suggested that the Academic Board received and considered Commander Bouffard's report concerning the results of my ARP, when it did not. The report was not included in the materials provided to the Board and it was never discussed or mentioned during the open session of the Board.

20. Not until after Admiral Rempt had submitted his July 26, 2004 supplemental report did I learn of its existence. My Academy sponsor Mr. Rubino, who had obtained a copy informally, gave me a copy.

7

21. With the assistance of counsel, I promptly prepared a response to Admiral Rempt's July 26, 2004 supplemental report and his SJA's endorsement, which was mailed to the Secretary on August 17, 2004. Again, unbeknownst to me, an Assistant Secretary had already decided the case for the Secretary seven days earlier, on August 10, 2004. The Assistant Secretary approved Admiral Rempt's recommendation that I be disenrolled.

22. I was disenrolled from the Academy and discharged from Naval Service effective August 10, 2004, but did not learn of this until mid-September 2004.

23. On October 11, 2004, I objected to the Assistant Secretary's disenrollment decision because it failed to consider my response to Admiral Rempt's July 26, 2004 supplemental report and failed to address any of the facts and issues presented in my response to Admiral Rempt's initial report and recommendation.

24. On October 19, 2004, the Assistant Secretary stated that he considered my response to Admiral Rempt's July 26, 2004 supplemental report and reaffirmed his disenrollment decision.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 21, 2008.

MATTHEW K. STAINBACK

# FITNESS REPORT & COUNSELING RECORD (E7-O6)

RCS BUPERS 1610-1

| 1. Name (Last, First MI Suffix) STAINBACK, MATTHEW K. | 2. Grade/Rate M1/C | 3. Desig 046582 | 4. SSN 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 |
|---|---|---|---|
| 5. ACT [X] TAR [ ] INACT [ ] AT/ADSW/265 [ ] | 6. UIC 00161 | 7. Ship/Station USNA ANNAPOLIS MD. | 8. Promotion Status N/A | 9. Date Reported 00JUN30 |

| Occasion for Report | | | | Period of Report | |
|---|---|---|---|---|---|
| 10. Periodic [ ] | 11. Detachment of Individual [ ] | 12. Detachment of Reporting Senior [ ] | 13. Special [ ] | 14. From: 03APR30 | 15. To: 03DEC22 |

| 16. Not Observed Report [ ] | Type of Report 17. Regular [X] | 18. Concurrent [ ] | 19. Ops Cdr [ ] | 20. Physical Readiness 1/B | 21. Billet Subcategory (if any) NA |

| 22. Reporting Senior (Last, FI MI) MCKENNA, M A | 23. Grade LT | 24. Desig 1115 | 25. Title CO OFF | 26. UIC 00161 | 27. SSN |

**28. Command employment and command achievements.**
MIDN TRAINING

**29. Primary/Collateral/Watchstanding duties.** (Enter primary duty abbreviation in box.)
1/C MIDN   PRI: DUTIES OF A 1/C MIDSHIPMAN-8. COLL: SECURITY OFF-4. WATCH: GATE AND LOCKER WATCH-4.

| For Mid-term Counseling Use. (When completing FITREP, enter 30 and 31 from counseling worksheet, sign 32.) | 30. Date Counseled 03NOV01 | 31. Counselor 1/C SUN | 32. Signature of Individual Counseled |

PERFORMANCE TRAITS: 1.0 - Below standards/not progressing or UNSAT in any one standard; 2.0 - Does not yet meet all 3.0 standards; 3.0 - Meets all 3.0 standards; 4.0 - Exceeds most 3.0 standards; 5.0 - Meets overall criteria and most of the specific standards for 5.0. Standards are not all inclusive.

| PERFORMANCE TRAITS | 1.0* Below Standards | 2.0 Progressing | 3.0 Meets Standards | 4.0 Above Standards | 5.0 Greatly Exceeds Standards |
|---|---|---|---|---|---|
| 33. PROFESSIONAL EXPERTISE: Professional knowledge, proficiency, and qualifications. NOB [ ] | - Lacks basic professional knowledge to perform effectively.<br>- Cannot apply basic skills.<br>- Fails to develop professionally or achieve timely qualifications. [ ] | [ ] | - Has thorough professional knowledge.<br>- Competently performs both routine and new tasks.<br>- Steadily improves skills, achieves timely qualifications. [X] | [ ] | - Recognized expert, sought after to solve difficult problems.<br>- Exceptionally skilled, develops and executes innovative ideas.<br>- Achieves early/highly advanced qualifications. [ ] |
| 34. COMMAND OR ORGANIZATIONAL CLIMATE/EQUAL OPPORTUNITY: Contributing to growth and development, human worth, community. NOB [ ] | - Actions counter to Navy's retention/reenlistment goals.<br>- Uninvolved with mentoring or professional development of subordinates.<br>- Actions counter to good order and discipline and negatively affect Command/Organizational climate.<br>- Demonstrates exclusionary behavior. Fails to value differences from cultural diversity. [ ] | [ ] | - Positive leadership supports Navy's increased retention goals. Active in decreasing attrition.<br>- Actions adequately encourage/support subordinates' personal/professional growth.<br>- Demonstrates appreciation for contributions of Navy personnel. Positive influence on Command climate.<br>- Values differences as strengths. Fosters atmosphere of acceptance/inclusion per EO/EEO policy. [X] | [ ] | - Measurably contributes to Navy's increased retention and reduced attrition objectives.<br>- Proactive leader/exemplary mentor. Involved in subordinates' personal development leading to professional growth/sustained commitment.<br>- Initiates support programs for military, civilian, and families to achieve exceptional Command and Organizational climate.<br>- The model of achievement. Develops unit cohesion by valuing differences as strengths. [ ] |
| 35. MILITARY BEARING/CHARACTER Appearance, conduct, physical fitness, adherence to Navy Core Values. NOB [ ] | - Consistently unsatisfactory appearance.<br>- Unsatisfactory demeanor or conduct.<br>- Unable to meet one or more physical readiness standards.<br>- Fails to live up to one or more Navy Core Values: HONOR, COURAGE, COMMITMENT. [ ] | [ ] | - Excellent personal appearance.<br>- Excellent demeanor or conduct.<br>- Complies with physical readiness program.<br>- Always lives up to Navy Core Values: HONOR, COURAGE, COMMITMENT. [X] | [ ] | - Exemplary personal appearance.<br>- Exemplary representative of Navy.<br>- A leader in physical readiness.<br>- Exemplifies Navy Core Values: HONOR, COURAGE, COMMITMENT. [ ] |
| 36. TEAMWORK: Contributions towards team building and team results. NOB [ ] | - Creates conflict, unwilling to work with others, puts self above team.<br>- Fails to understand team goals or teamwork techniques.<br>- Does not take direction well. [ ] | [ ] | - Reinforces others' efforts, meets personal commitments to team.<br>- Understands team goals, employs good teamwork techniques.<br>- Accepts and offers team direction. [X] | [ ] | - Team builder, inspires cooperation and progress.<br>- Talented mentor, focuses goals and techniques for team.<br>- The best at accepting and offering team direction. [ ] |
| 37. MISSION ACCOMPLISHMENT AND INITIATIVE: Taking initiative, planning/prioritizing, achieving mission. NOB [ ] | - Lacks initiative.<br>- Unable to plan or prioritize.<br>- Does not maintain readiness.<br>- Fails to get the job done. [ ] | [X] | - Takes initiative to meet goals.<br>- Plans/prioritizes effectively.<br>- Maintains high state of readiness.<br>- Always gets the job done. [ ] | [ ] | - Develops innovative ways to accomplish mission.<br>- Plans/prioritizes with exceptional skill and foresight.<br>- Maintains superior readiness, even with limited resources.<br>- Gets jobs done earlier and far better than expected. [ ] |

NAVPERS 1610/2 (03-02)

FITNESS REPORT AND COUNSELING RECORD (E7-O6) (cont'd)    RCS BUPERS 1610-1

| 1. Name (Last, First MI Suffix) | 2. Grade/Rate | 3. Des. | 4. SSN |
|---|---|---|---|
| STAINBACK, MATTHEW K. | M1/C | 046582 | 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 |

| PERFORMANCE TRAITS | 1.0* Below Standards | 2.0 Progressing | 3.0 Meets Standards | 4.0 Above Standards | 5.0 Greatly Exceeds Standards |
|---|---|---|---|---|---|
| 38. LEADERSHIP: Organizing, motivating and developing others to accomplish goals.<br>NOB ☐ | - Neglects growth/development or welfare of subordinates.<br>- Fails to organize, creates problems for subordinates.<br>- Does not set or achieve goals relevant to command mission and vision.<br>- Lacks ability to cope with or tolerate stress.<br>- Inadequate communicator.<br>- Tolerates hazards or unsafe practices. ☐ | ☐ | - Effectively stimulates growth/development in subordinates.<br>- Organizes successfully, implementing process improvements and efficiencies.<br>- Sets/achieves useful, realistic goals that support command mission.<br>- Performs well in stressful situations.<br>- Clear, timely communicator.<br>- Ensures safety of personnel and equipment. ☐ | X | - Inspiring motivator and trainer, subordinates reach highest level of growth and development.<br>- Superb organizer, great foresight, develops process improvements and efficiencies.<br>- Leadership achievements dramatically further command mission and vision.<br>- Perseveres through the toughest challenges and inspires others.<br>- Exceptional communicator.<br>- Makes subordinates safety-conscious, maintains top safety record.<br>- Constantly improves the personal and professional lives of others. ☐ |
| 39. TACTICAL PERFORMANCE: (Warfare qualified officers only) Basic and tactical employment of weapons systems.<br>NOB ☐ | - Has difficulty attaining qualification expected for the rank and experience.<br>- Has difficulty in ship(s), aircraft or weapons systems employment. Below others in knowledge and employment.<br>- Warfare skills in specialty are below standards compared to others of same rank and experience. ☐ | ☐ | - Attains qualifications as required and expected.<br>- Capably employs ship(s), aircraft, or weapons systems. Equal to others in warfare knowledge and employment.<br>- Warfare skills in specialty equal to others of same rank and experience. ☐ | ☐ | - Fully qualified at appropriate level for rank and experience.<br>- Innovatively employs ship(s), aircraft, or weapons systems. Well above others in warfare knowledge and employment.<br>- Warfare skills in specialty exceed others of same rank and experience. ☐ |

40. I recommend screening this individual for next career milestone(s) as follows: (maximum of two)
Recommendations may be for competitive schools or duty assignments such as: LCPO, DEPT CPO, SEA, CMC, CWO, LDO, Dept Head, XO, OIC, CO, Major Command, War College, PG School.    SQD LD

41. COMMENTS ON PERFORMANCE: * All 1.0 marks, three 2.0 marks, and 2.0 marks in Block 34 must be specifically substantiated in comments. Comments must be verifiable. Font must be 10 or 12 Pitch (10 or 12 Point) only. Use upper and lower case.

MIDN 1/C Stainback has become a more positive midshipman who has improved his company performance this semester.

- Skillful organizer. 1/C Stainback helped to plan the 6th company camping trip and organized and led the 2nd Battalion haunted hall as the Battalion Action Officer. 1/C Stainback also helped with the task of completing the company's security forms.

- MIDN Stainback is scheduled to complete the aptitude remediation program on 31 January, 2004 for misconduct in the previous semester.

- Lack of effort. MIDN Stainback has shown a general lack of interest and effort in completing his military duties.

-MIDN Stainback often has a problem with replying and reporting back to senior officers in a timely manner.

MIDN 1/C Stainback is an intelligent and competent midshipman. He still has not reached his full potential. If he continues to improve his performance and strives to commit more effort in areas that he is lacking, he should make a fine Officer.

| Promotion Recommendation | NOB | Significant Problems | Progressing | Promotable | Must Promote | Early Promote | 44. Reporting Senior Address N/A |
|---|---|---|---|---|---|---|---|
| 42. INDIVIDUAL | | | | X | | | |
| 43. SUMMARY | ☒ | | | 9 | 10 | 8 | |

45. Signature of Reporting Senior    Date: 10 DEC 03

46. Signature of Individual Evaluated. "I have seen this report, been apprised of my performance, and understand my right to make a statement."
I intend to submit a statement. ☐    I do not intend to submit a statement. ☑
Date: 11 Dec 03

Member Trait Average:    Summary Group Average:

47. Typed name, grade, command, UIC, and signature of Regular Reporting Senior on Concurrent Report
Date: 9 Dec 03

NAVPERS 1610/2 (03-02)