# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MATTHEW K. STAINBACK,                   )
                                        )
           Plaintiff,                   )
                                        )
    v.                                  )    Civil Action No. 06-856 (RBW)
                                        )
RAY MABUS,                              )
SECRETARY OF THE NAVY,[1]               )
                                        )
           Defendant.                   )
_____)

## MEMORANDUM OPINION

The plaintiff, a former midshipman at the United States Naval Academy ("the

Academy"), filed this action seeking judicial review under the Administrative Procedure Act, 5

U.S.C. §§ 701-06 (2006) ("APA"), of a decision made on behalf of the Secretary of the Navy

("the Secretary")[2] to uphold a recommendation by the Academy's Academic Board ("the Board")

to terminate the plaintiff's enrollment from the Academy and discharge him from the United

States Naval Service pursuant to 10 U.S.C. § 6962 (2006).  Amended Complaint ("Am. Compl.")

¶ 1.  The plaintiff also seeks to prevent the Academy from recouping the cost of his education at

the Academy based on his disenrollment.  Id.  Currently before the Court are the parties' cross-

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Ray Mabus, the current Secretary of the Navy, has been automatically substituted as the defendant for Donald C. Winter, the Secretary of the Navy when this action was filed.

[2]    The defendant is the Secretary of the Navy, the civilian official in charge of the Department of the Navy, which is an agency as defined by the Administrative Procedure Act.  See 5 U.S.C. § 551 (2006). While it appears from the record that the Secretary delegated the authority to render a determination in the plaintiff's case to the Assistant Secretary, Administrative Record ("A.R.") at 427 (Aug. 10, 2004 Memorandum to the Superintendent U.S. Naval Academy from William A. Navas, Jr.), the Secretary has final authority to disenroll a midshipman from the Academy and the United States Naval Service, and therefore, is the properly named defendant in this action, Am. Compl. ¶ 30 (citing 10 U.S.C. § 6962 (2006)).

motions for summary judgment.[3]  For the reasons set for below, the plaintiff's motion must be

granted in part and denied in part, and the case remanded to the Secretary for further action

consistent with this opinion.

## I.  BACKGROUND[4]

United States Naval Academy Instruction ("the Academy Instruction" or "Acad. Instr.")

5420.24E sets forth the policies and procedures governing the Board, its constitution, and the

standards and procedures it must comply with when making academic disenrollment

recommendations to the Secretary.  A.R. at 00469-84 (Acad. Instr. 5420.24E (1996)).  Article

II.A.1. of the Academy Instruction designates the Dean of Admissions as a staff member of the

Board and details his or her responsibilities as follows:

> The Dean of Admissions will be the Secretary of the Academic
> Board and will:
>
> a.  Prepare the Board agenda and make sure that supporting
>     documents are available to the members.
> b.  Advise the members and others concerned as to the place and
>     time of the meeting.
> c.  Prepare the minutes of the meeting.
> d.  Maintain the Academic Board files.

---

[3]      The following documents were submitted in connection with the parties' cross-motions:  the
Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."); the Plaintiff's Statement of Points and
Authorities in Support of Motion for Summary Judgment ("Pl.'s Mem."); the Defendant's Motion for
Summary Judgment & Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Mot. & Opp'n.");
the Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's
Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Opp'n & Reply"); and the Defendant's
Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply").  The
Court also reviewed the certified administrative record filed on September 27, 2006.

[4]      The facts of this case have already been set forth in the Court's November 8, 2007 opinion
denying the plaintiff's motion seeking further supplementation of the administrative record certified by
the Department of the Navy.  Stainback v. Sec'y of the Navy, 520 F. Supp. 2d 181, 183-84 (D.D.C. 2007).
Therefore, only a brief recitation of those facts is necessary here.

A.R. at 00472.  Article III.J. of the Academy Instruction requires that the Board "[a]ct on all cases of academic deficiency," and further provides that "[u]nless the Academic Board recommends otherwise, midshipmen found deficient will be discharged from the Naval Academy and from the naval service."  A.R. at 00474.  Article IV.A.1. delineates what constitutes "[a]cademic [d]efficiency," A.R. at 00475-77, and subsection B of this Article defines what amounts to "[i]nsufficient [a]ptitude" and how this determination shall be made by the Board, A.R. at 00477-78.  Specifically, Article IV.B.1. states that "[m]idshipmen are subject to discharge when the Commandant of Midshipmen recommends to the Academic Board that they be assigned an 'F' in military performance and discharged for insufficient aptitude."  Id. at 00477. Article IV.B.2. further provides that in making an insufficient aptitude determination, the Board "will examine the entire record forwarded by the Commandant of Midshipmen, and such other evidence as the midshipman concerned desires to present to the Board or the Board desires to hear."  Id. at 00477-78.  Article V.A.1.c. also obligates the Board members to "discuss the information contained in the [midshipman's] record as a part of their review."  Id. at 00478. Finally, a vote to discharge a midshipman must be "unanimously approved by the Board."  Id.

    In April 2004, shortly before the plaintiff's anticipated graduation from the Academy, the "Board voted, over [the plaintiff's] objection, that he 'possessed insufficient aptitude to become a commissioned officer in the naval service,'" citing his "aptitude remediation failure."  Am. Compl. ¶¶ 8-9.  The plaintiff objected to the Board's decision on the ground that the Board's conclusion was erroneous given that any alleged aptitude failure was cured in January 2004 by the plaintiff's successful completion of "an aptitude remediation program."  Id. ¶¶ 6-7. Following the Board's vote and rejection of the plaintiff's position, on August 10, 2004, the

Assistant Secretary affirmed the Board's recommendation on behalf of the Secretary, and ordered

the Academy to recoup from the plaintiff the cost of his education.  A.R. at 00427 (Aug. 10,

2004 Memorandum to the Superintendent U.S. Naval Academy from William A. Navas, Jr.).

After his initial affirmance of the Board's recommendation, the Assistant Secretary received from

the plaintiff a memorandum contesting some of the representations made before the Board,

which the Assistant Secretary reviewed before reaffirming his disenrollment and recoupment

decisions on October 19, 2004.  A.R. at 00445 (Oct. 19, 2004 Letter from William A. Navas, Jr.,

to Mr. Eugne R. Fidell).

        Citing a number of ways that the Board, and then ultimately the Secretary through his

delegation to the Assistant Secretary, failed to abide by the Academy's regulations and therefore

violated the APA – including claims that the Board was improperly constituted, failed to afford

the plaintiff notice and an opportunity to respond to all adverse information before it, and that

both the Board and the Assistant Secretary considered an inaccurate or incomplete academic

record – the plaintiff filed this action challenging the legitimacy of the Board's decision to

disenroll him, as well as the Assistant Secretary's subsequent affirmance of that decision, and the

corollary decision to require the plaintiff to reimburse the Academy for the cost of his education.

Am. Compl. ¶¶ 10-25, 27.  The Secretary defends the recommendation of the Board, the

affirmance of the recommendation by the Assistant Secretary, and the overall soundness of the

process that resulted in the plaintiff's disenrollment.  Both parties have now moved for summary

judgment.

## II.  STANDARD OF REVIEW

To grant a motion for summary judgment under Rule 56(c), this Court must find that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  Bayer v. U.S. Dep't of the Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992).  However, the non-moving party cannot rely on "mere allegations or denials . . . , but . . . must set forth specific facts showing that there [are] . . . genuine issue[s] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation and internal quotation marks omitted).  In addition, the non-moving party cannot rely upon inadmissible evidence to survive summary judgment; rather, the "non-moving party must 'produce evidence . . . capable of being converted into admissible evidence.'"  Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (alteration in original) (quoting Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000)).  Under Rule 56(c), if a party fails to "establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," summary judgment is warranted.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the party moving for summary judgment bears the burden of establishing the absence of evidence that supports the non-moving party's case.  Id. at 323.

When reviewing an administrative decision under APA, the Court must determine whether the administrative decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence."  5 U.S.C. §

706(2)(A), (E).  "In reviewing the action of the [Secretary], the Court must be thorough and probing, but if the Court finds support for the agency action, it must step back and refrain from assessing the wisdom of the decision unless there has been 'a clear error of judgment.'"  Fund for Animals v. Nat'l Audubon Soc'y, 903 F. Supp. 96, 105 (D.D.C. 1995) (quoting Marsh v. Ore. Natural Res. Council, 490 U.S. 360, 378 (1989)).  As part of its factual inquiry into the agency action, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  Marsh, 490 U.S. at 378 (quoting Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).  "It is a fundamental principle of administrative law that an agency is bound to adhere to its own regulations."  Fuller v. Winter, 538 F. Supp. 2d 179, 186 (D.D.C. 2008) (citing Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997)).  The Court must also "recognize the agency's expertise and experience with respect to questions involving scientific or technical matters or policy decisions based on uncertain technical information."  Fund for Animals, 903 F. Supp. at 105 (citing Marsh, 490 U.S. at 375-78; New York v. Reilly, 969 F.2d 1147, 1150-51 (D.C. Cir. 1992)).  And if an agency's decision is one possible interpretation among many, regardless whether it is the best of most logical decision, the Court must defer to the agency.  Nat'l Trust for Historic Pres. v. Dole, 828 F.2d 776, 782 (D.C. Cir. 1987).

### III.  LEGAL ANALYSIS

The plaintiff makes six arguments for why the Assistant Secretary's affirmance of the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence" in violation of the ADA, 5 U.S.C. § 706(2)(A), (E):  (1) the record before the Board was incomplete and included erroneous

information, Pl.'s Mem. at 9-20; (2) the plaintiff was not provided with an opportunity to respond

to all of the adverse information presented to the Board, id. at 20-22; (3) the Assistant Secretary

did not adequately consider evidence submitted by the plaintiff, id. at 23-24; (4) the Board was

not properly constituted under the Academy's own regulation, id. at 24-25; (5) the administrative

record before the Court is incomplete, id. at 25-28; and (6) recoupment of the costs related to the

plaintiff's enrollment at the Academy is improper under the facts of this case, id. at 28-29.  The

Secretary responds that all of the plaintiff's arguments are without merit.  Specifically, the

Secretary states that:  (1) the ultimate decision was well-founded based on the plaintiff's

complete academic record, including "four major conduct violations and nine minor conduct

offenses," Def.'s Mot. & Opp'n at 9-10, 12; (2) the plaintiff was afforded sufficient notice and

opportunity to respond to adverse information presented to the Board, id. at 13; (3) the Assistant

Secretary considered not only the Board's determination, but also all of the supplemental

evidence submitted by the plaintiff after the Board's determination, id. at 15-16; (4) the

constitution of the Board was proper and, contrary to the plaintiff's contentions, the Dean of

Admissions "fully staffed and served the Academic Board in compliance with the Naval

Academy regulations," id. at 16-17; (5) the administrative record cannot be challenged as

incomplete because by the time that the Assistant Secretary received the record, it contained all

of the documents submitted by the plaintiff throughout the process, including any challenges to

the evidence considered by the Board, id. at 18; and (6) the plaintiff's breach of his agreement

with the Academy entitles the Academy to recoup the costs of his education, id. at 19-22.

For the following reasons, the Court finds that the plaintiff's motion for summary

judgment must be granted in part and denied in part, and the defendant's cross-motion for

eZ

summary judgment must be denied.  Specifically, the Court finds that the constitution of the
Board violated the Academy's regulations and that the plaintiff was not given a full and fair
opportunity to respond to adverse evidence before the Secretary, thereby rendering the Assistant
Secretary's affirmance of the Board's disenrollment recommendation procedurally flawed, and
thus "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5
U.S.C. § 706(2)(A).

**A.     Whether the Board was Properly Constituted Given that the Dean of Admissions, as
the Board's Secretary, Did Not Attend the Board Meeting**

The plaintiff argues that "[t]he Academic Board was improperly constituted because the
Dean of Admissions did not serve as the Secretary of the Academic Board."  Pl.'s Mem. at 24.
Given this purported "compositional error," the plaintiff maintains that the Board's decision was
"prejudice[d]" because the Dean of Admissions had a three-year relationship with the plaintiff
and was "very likely [to] have served as an advocate for [the] plaintiff before the Academic
Board."  Id. at 24-25.  In other words, the plaintiff contends that "[i]t cannot be presumed that the
Board would have voted unanimously to disenroll [him] if the Dean of Admissions had served as
the Secretary of the Academic Board, as required."  Id. at 25.

The defendant maintains that the Board "was legally constituted and the Dean of
Admissions fully staffed and served the Academic Board in compliance with Naval Academy
regulations."  Def.'s Mot. & Opp'n at 16.  And, because "[n]othing requires the Dean of
Admissions to be present during the open session of the Academic Board," the defendant
contends that the Dean of Admissions fully complied with his duties by "sign[ing] the minutes of
the Academic Board which recommended the plaintiff's dis-enrollment to the Superintendent."

Id. at 17.   Further, the Secretary maintains that the Court must "accord[] judicial deference" to his interpretation of a properly constituted Board under the governing Academy Instruction.   Id.

The Court is not persuaded by the plaintiff's speculation as to what position the Dean of Admissions may or may not have taken at the Board meeting, and if the plaintiff is correct as to the position he would have taken, the impact it would have had on the Board given that the Dean of Admissions could not cast a vote and his duties were only administrative in nature.   See A.R. at 00472 (Acad. Instr. Article ("Art.") II.A.1.).   However, it is material that the Dean of Admissions was absent from the Board meeting despite having an official role to fill regarding the Board's proceedings, as Article II of the Academy Instruction requires the Dean of Admissions to "[p]repare the minutes of the meeting."   Id. (Acad. Instr. Art. II.A.1.c.).   Indeed, the Secretary does not dispute that the Dean of Admissions was not present for the meeting when the Board considered the plaintiff's performance and recommended his disenrollment from the Academy.   Def.'s Mot. & Opp'n at 16-17.   Nor do the minutes of the meeting reflect his attendance.   A.R. at 00342-46 (Minutes of Academy's Academic Board (Published June 4, 2004)).   Yet, his name and signature appear on the minutes of the meeting.   Id.   The Court finds that the Secretary's position that his mere signature satisfies the Academy's regulations governing the Board is untenable if the regulations are to be interpreted in any meaningful way.

A "minute book," as defined in the legal context, is "[a] record of the subjects discussed and actions taken at a . . . meeting."   Black's Law Dictionary 1087 (9th ed. 2009).   A "record" in the same context is defined as "[a] documentary account" or "official report of the proceedings."   Id. at 1387.   Minutes and records are produced and maintained to document what occurred at an event, and their accuracy is obviously critical to their reliability.   For example, the minutes at

issue in this case list the names of the Board members and other persons present when the plaintiff's matter was considered by the Board.  A.R. at 00346.  Without the Dean of Admissions having been present during the Board's proceedings or having reviewed a tape recording of the proceedings, about which there is no indication in the record he did, it is inconceivable that he complied with his obligation to prepare the minutes of the meeting in the manner intended by the Academy's Instructions, which it logically follows must be, at minimum, to create an accurate record of Board meetings.  As to who was in attendance, as denoted in these minutes, the Dean of Admissions would not know conclusively, based on firsthand knowledge, which Board members attended without actually attending the meeting himself.  While he could later learn this and other information regarding what occurred at the meeting from someone who claimed to have attended the meeting, that person, rather than the Dean of Admissions, would effectively have been acting as the secretary of the meeting.  In other words, the Dean of Admissions would not be fulfilling his obligation to prepare the minutes of the meeting if he was absent from the Board meetings (and did not review a tape recording or some other reliable recordation of the proceedings) because he could not personally vouch for the accuracy of the content of the minutes, which he purported to do when he affixed his signature to them.  Id.  This deficiency is material, considering that the Board's minutes may serve as a critical component of an administrative record if, as in this case, the Board's decision is later challenged, and, as in this case, the Secretary and a reviewing court must rely on the content of those minutes.  In a case raising a similar challenge by a military officer to the one asserted here, the Circuit Court indicated the importance of having a verbatim transcript of proceedings in order to review a military board's findings and characterizations of the evidence.

> Without a verbatim transcript of the Faculty Board Proceedings it
> is of course impossible to review its findings. If in fact the
> Summary of the Faculty Board's findings mischaracterized [the
> plaintiff's] position, serious prejudice might have resulted. It
> follows that the findings of the Faculty Board cannot legitimately
> have been used as the basis for any subsequent punitive action
> against [the plaintiff].

VanderMolen v. Stetson, 571 F.2d 617, 626 (D.C. Cir. 1977) (citation omitted).

It is the Secretary's position that the Court should defer to his interpretation of Article
II.A.1 of Academy Instruction 5420.24E. Def.'s Mot. & Opp'n at 17. Yet, reading the rule as the
Secretary does, as merely requiring the Dean of Admissions' pro forma signature on the Board's
minutes, is not the type of reasonable interpretation which the Court must afford any deference
because it does not appear to satisfy the purpose of having a secretary at Board meetings. See K
Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291-92 (1988) ("In ascertaining the plain meaning of
the statute, the court must look to the particular statutory language at issue, as well as the
language and design of the statute as a whole. . . . If the agency regulation is not in conflict with
the plain language of the statute, a reviewing court must give deference to the agency's
interpretation of the statute." (emphasis added and citations omitted)); see also Auer v. Robbins,
519 U.S. 452, 461 (1997) (indicating that an agency's interpretation of its own regulation
promulgated pursuant to a congressional grant of authority is "controlling unless plainly
erroneous or inconsistent with the regulation." (internal quotation marks omitted)). Without the
firsthand knowledge of someone attesting to the unanimous attendance and vote of the Board
members, as purportedly indicated by the Dean of Admission's signature, and the information
considered by the Board at the meeting, the "design of the [Academy's Instructions] as a whole"
is rendered meaningless, K Mart Corp., 486 U.S. at 291, and deference to the Secretary's

interpretation of the Academy Instruction need not be extended where the interpretation is "at odds with the document's plain meaning and patently contrary to [the] inten[ded meaning]," U.S. Dep't of the Treasury, I.R.S. v. Fed. Labor Relations Auth., 996 F.2d 1246, 1250 (D.C. Cir. 1993).  Indeed, meaningful review of agency action by this Court presumes the accuracy of the administrative record presented to it.  VanderMolen, 571 F.2d at 626 ("Without a verbatim transcript of the Faculty Board Proceedings it is of course impossible to review its findings."); see also Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971) (indicating that although subject to "a thorough, probing, in-depth review" by the courts upon a challenge under the APA, "the Secretary's decision is entitled to a presumption of regularity"); cf. Fayson v. Schmadl, 126 F.R.D. 419, 420 (1988) (observing that "in considering whether an official [government] report should be admitted under the Rule[s of Evidence], a district court should 'start from the premise that such reports of investigations are presumed to be reliable'" (citing In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 265 (3d Cir. 1983), rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986))). Accordingly, such deference is not appropriate here.

**B.      Whether the Plaintiff Had an Opportunity to Respond to Adverse Evidence Against Him**

Similarly, the Court cannot agree with the Secretary's position that his disenrollment decision, as set forth by the Assistant Secretary in his August 10, 2004 memorandum and October 19, 2004 reaffirmance letter, was well-founded based on the plaintiff's complete academic record, Def.'s Mot. & Opp'n at 9-10, 12, as both of the Assistant Secretary's statements are notably devoid of the factual findings underlying the rationale for the decision.

Federal law requires that "[a] midshipman upon whom a report is made [of unsatisfactory conduct] . . . shall be given an opportunity to examine the report and submit a written statement thereon."  10 U.S.C. § 6962(b).  Article I.C.(b) of the Academy Instruction also provides:

> A midshipman upon who a report is made [that he possesses insufficient aptitude to become a commissioned officer] . . . shall be given an opportunity to examine the report and submit a written statement thereon.  If the Secretary believes, on the basis of the report and statement, that the determination of the Superintendent or of the Academic Board is reasonable and well founded, he may discharge the midshipman from the Naval Academy and from the naval service.

A.R. at 00470 (emphasis added).  Failure to provide such an opportunity raises an inference of arbitrary or capricious decision-making, see MCI Worldcom, Inc. v. Gen. Servs. Admin., 163 F. Supp. 2d 28, 37 (D.D.C. 2001) (holding that the defendant's failure to adhere to its own Freedom of Information Act regulations was arbitrary and capricious where failure to adhere to procedures deprived plaintiffs of "the opportunity to submit any comments"); cf. Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 453 F. Supp. 2d 116, 123 (D.D.C. 2006) (applying the "arbitrary and capricious" standard in the context of notice-and-comment rulemaking and observing that "[i]f the agency fails to provide this notice and opportunity to comment or the notice and comment period is inadequate, the 'regulation must fall on procedural grounds . . . .'" (quoting AFL-CIO v. Donovan, 757 F.2d 330, 338 (D.C. Cir. 1985)), as does the failure to state the basis for a decision, D&F Afonso Realty Trust v. Garvey, 216 F.3d 1191, 1195 (D.C. Cir. 2000) ("'[T]he requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result . . . .'" (quoting Pub. Citizen, Inc. v. F.A.A., 988 F.2d 186, 197 (D.C. Cir. 1993)) (alterations in original)); Fuller, 538 F. Supp. 2d at 192 (finding that "the Secretary's silence in [the decision-making] render[ed] his ultimate

13

decision arbitrary and capricious because he ha[d] not given a reason that a court [could] measure for [his] decision" (internal quotation marks omitted) (citing Frizelle, 111 F.3d at 177)).

After the Board recommended the plaintiff's disenrollment, he was provided an initial opportunity to respond to the May 10, 2004 report by Vice Admiral Rodney P. Rempt, the Superintendent of the Academy ("Admiral Rempt"), to the Secretary that summarized the evidence against the plaintiff and the Board's decision.  A.R. at 00221, 00232, 00373, 00380. The plaintiff, who was provided a copy of the initial report, responded to it on June 3 and July 8, 2004, by raising objections to the procedures employed by the Board, the Board's recommendation to the Superintendent and the Superintendent's report to the Secretary.  Id. at 00273-98, 00306-41, 00361-64, 00387-412, 00419-22.  Having received the plaintiff's objections, Admiral Rempt prepared and submitted a second report to the Secretary on July 26, 2004, along with a statement from the Academy's Staff Judgment Advocate that rejected the objections raised by the plaintiff.  Id. at 00371, 00365-67, 00424-26.  On August 10, 2004, the Assistant Secretary affirmed the decision of the Board by the issuance of a memorandum, which stated in its entirety: "I have approved MIDN 3/C Stainback's disenrollment from the U.S. Naval Academy for insufficient aptitude to become a commissioned officer.  I direct that he repay his advanced education assistance through financial reimbursement of $122,055.67 instead of active service."  Id. at 00427 (Aug. 10, 2004 Memorandum for Superintendent U.S. Naval Academy from William A. Navas, Jr.).

It is notable that Article I.C. of Academy Instruction does not distinguish between a midshipman's right to respond to an initial adverse report and such subsequent reports submitted to the Secretary by the Superintendant of the Naval Academy.  See id. at 00470.  Instead, it states

14

that "[a] midshipman <u>upon who a report is made</u> . . . <u>shall be given an opportunity to examine the</u> <u>report and submit a written statement thereon</u>."  <u>Id.</u> (emphasis added).  The plaintiff was not afforded an opportunity to respond to Admiral Rempt's second report that was submitted to the Assistant Secretary prior to his August 10, 2004 decision affirming the decision of the Board.  Pl.'s Mem., Declaration of Matthew K. Stainback ¶¶ 18-21.  However, when the plaintiff learned about Admiral Rempt's second report, A.R. at 00419, he submitted a rebuttal to it on August 17, 2004.  Pl.'s Mot. 22; A.R. at 00428-30.  After receiving the plaintiff's rebuttal to Admiral Rempt's second report on October 19, 2004, the Assistant Secretary "reaffirm[ed] [his] decision to disenroll [the plaintiff] from the U.S. Naval Academy" based upon review of his file and the plaintiff's August 17, 2004 rebuttal letter challenging the evidence before the Board when it issued its disenrollment recommendation, stating that despite his subsequent review of the plaintiff's submissions, he still found that the plaintiff "possesses insufficient aptitude to become a commissioned officer."  A.R. at 00445 (Oct. 19, 2004 Letter from William A. Navas, Jr., to Mr. Eugne R. Fidell).

Even though the Assistant Secretary represented that he was reaffirming his adoption of the Board's disenrollment recommendation despite having considered the plaintiff's August 17 objections to Admiral Rempt's July 26 report that was received by the Assistant Secretary after his initial August 10 affirmance, <u>id.</u>, the Court finds that the Assistant Secretary's October 19 reaffirmance provides no meaningful analysis for his decision, and thus is insufficient to support that decision.[5]  The Secretary represents that his disenrollment decision, as set forth by the

---

[5]    To the extent the Secretary is offering any <u>post hoc</u> rationale for his disenrollment decision, <u>compare</u> Def.'s Mot. & Opp'n at 15-16; <u>and</u> Def.'s Reply at 6, 9, 13, <u>with</u> A.R. at 00445 (Oct. 19, 2004 Letter from William A. Navas, Jr., to Mr. Eugne R. Fidell), it cannot be the basis for the decision, <u>see</u> <u>Van</u> <u>Bourg v. Nitze</u>, 388 F.2d 557, 565 (D.C. Cir. 1967) (finding that "post hoc rationalizations cannot suffice"
(continued . . . )

Assistant Secretary in his August 10 memorandum and October 19 reaffirmance letter, is

sufficient to sustain his decision given that he "believed, on the basis of the report and

statements, that the determination of the Superintendent and of the Academic Board was

reasonable and well[-]founded, so he discharged the plaintiff from the Naval Academy and from

the naval service."  Def.'s Mot. & Opp'n at 16.  But no such explanation was provided in the

Assistant Secretary's October 19 reaffirmance.  See A.R. at 00445 (Oct. 19, 2004 Letter from

William A. Navas, Jr., to Mr. Eugne R. Fidell).  Indeed, in neither his August 10 affirmance

memorandum nor his reaffirmance letter of October 19, did the Assistant Secretary indicate what

documents or records he reviewed in reaching his decision to affirm the Board's disenrollment

recommendation, merely alluding to having reviewed the plaintiff's "file, in conjunction with the

August 17, 2004 rebuttal letter sent by [the plaintiff's] prior counsel."  Id.  Thus, all the

reaffirmance letter contains is a brief conclusory statement that, based on the plaintiff's file and

his lawyer's submission, the plaintiff "possesses insufficient aptitude to become a commissioned

officer," id., without pointing to any particular factor or factors that lend support for that

---

( . . . continued)
to justify decision of a naval review board where the board failed to set forth "the basis for its conclusion" as required by naval regulations).  Based on the record here, it is unclear whether the Assistant Secretary merely approved the Board's recommendation without further consideration or whether he made his own independent assessment.  Article III.J. of the Academy Instruction states that "[u]nless the Academic Board recommends otherwise, midshipmen found deficient will be discharged from the Naval Academy and from the naval service."  A.R. at 00474.  Because the plaintiff was found to be academically deficient by the Board, Article III.J. does not appear to leave any room for disagreement by the Secretary with the Board's recommendation, although 10 U.S.C. § 6962 provides for such discretion, as it states that the Secretary "may discharge [a] midshipman from the Naval Academy and from the naval service" upon finding that the Board's "unanimous[] determin[ation] that [the] midshipman possesses insufficient aptitude to become a commissioned officer in the naval service . . . . is reasonable and well founded."  10 U.S.C. § 6962(a)(2)-(b) (emphasis added).  Given that there appears to be conflict between the Academy Instruction and a congressional enactment, the Court is compelled to require that the Secretary, through his designee (the Assistant Secretary), show that he did not just rubberstamp the Board's recommendation, but independently assessed the merits of the Board's recommendation.

conclusion.  And a conclusion without an articulated basis for it is the essence of arbitrariness.
D&F Afonso Realty Trust, 216 F.3d at 1195; Fuller, 538 F. Supp. 2d at 192.

The Secretary cites in support of his ultimate disenrollment decision Dougherty v. Lehman, 539 F. Supp. 4 (E.D. Pa. 1981), aff'd on other grounds, Dougherty v. Lehman, 688 F.2d 158 (3d Cir. 1982), and Love v. Hidalgo, 508 F. Supp. 177 (D. Md. 1981), for the proposition that the Court's review of the Secretary's disenrollment decision is limited to assessing whether it was "arbitrary or capricious or otherwise unlawful" and that his decision should be afforded deference and not disturbed by this Court.  Def.'s Mot. & Opp'n at 15.  It is the Secretary's position that no procedural errors were committed in this case, and the Court assumes that Dougherty and Love are being cited for the position that even if procedural errors were committed, as was alleged in those cases, that just as those challenges were found to be insufficient to overturn the Secretary's disenrollment decisions, this Court should reach the same conclusions.  Id.  However, even considering the Court's supposition about why Dougherty and Love are being relied upon, the Secretary's reliance on the cases is not persuasive.

It is significant that in both Dougherty, 539 F. Supp. at 5, and Love, 508 F. Supp. at 179, the courts were considering whether they should grant the extraordinary remedy of injunctive relief, which because of the nature of the remedy takes into consideration not only the likelihood of success on the merits, but also the equitable merits of awarding emergency relief.  And yes, the Dougherty court did express concerns about the Naval Academy's compliance with its own procedural requirements, stating that is was "very concerned" about the presentation of information to the Secretary, including a hearsay statement that was made in the absence of the plaintiff because he had not been made aware of it and therefore had no opportunity to contest.

Dougherty, 539 F. Supp. at 7.  Nonetheless, the court found that there were "no facts presented

that the Secretary's action in issuing the discharge order was arbitrary or capricious" since the

Secretary found that the plaintiff's discharge was warranted based on the severity of his

undisputed misconduct, id., which Dougherty admitted to committing by entering a guilty plea,

see Dougherty, 688 F.2d at 159.  The Dougherty court therefore appeared more persuaded by the

equities in the case and the fact that the disenrollment decision appeared meritoriously correct on

the facts, especially given the plaintiff's admission to engaging in serious misconduct justifying

disenrollment, than did the fact that the decision was arrived at through a procedurally deficient

process.  However, while the due process issue was not appealed to the Third Circuit, that Court

did express in passing that a question of procedural due process could lie.  Id. at 160 n.1

("Dougherty contended before the district court that the Superintendent had not fully complied

with the requirements of [10 U.S.C. §] 6962 because he had not been presented with the

statements of the involved midshipmen, along with the Superintendent's report.  Whatever merit

this contention may have, since it is pertinent only to the Secretary's right to discharge

Dougherty from the Academy, it is not before us on this appeal." (emphasis added)).  Here, by

contrast, where the merits of the underlying disenrollment decision are more debatable, the

Dougherty court's decision does not support the Secretary's call for the rejection of the plaintiff's

procedural challenge.

    The Court reaches the same conclusion concerning the Secretary's reliance on Love.

Again, that case involved a midshipman who had pled guilty to serious misconduct.  Love, 508

F. Supp at 179.  The Love court was also considering a motion for injunctive relief and expressly

reserved ruling on the question of whether "the Navy . . . violated [the plaintiff's] constitutional

right to due process," while finding that "the plaintiff [had not] satisfied the standard for preliminary relief with regard to this issue." Id. at 180.  The Love court found it "particularly troublesome" that the Secretary originally failed to provide any explanation for choosing to discharge the plaintiff and "flatly rejected" the Secretary's position "that no explanation or statement of reasons was required" to justify the disenrollment.[6] Id. at 181.  Ultimately, the Love court found the Assistant Secretary's decision – which, as in this case, was rendered on Secretary's behalf – was sufficient because the Assistant Secretary in that case "considered a substantial number of factors in arriving at his [discharge] decision." Id.  It is inescapable that one factor that the Secretary undoubtedly considered was the fact that the midshipman Love had pled guilty to serious misconduct.  No such explanations were provided by the Assistant Secretary in this case, nor has the plaintiff admitted culpability for similar serious misconduct.

At bottom, this case must be governed by two firmly established principles.  First, agencies must follow their own regulations.  Frizelle, 111 F.3d at 177 ("The Coast Guard, like the military departments and agencies in general, is bound to follow its own regulations."); Fuller, 538 F. Supp. 2d at 186 (same).  And, second, a fair and impartial process is essential to the due process rights of military personnel faced with discharge from their military service. VanderMolen, 571 F.2d at 626-28 (finding that the plaintiff's discharge could not be based upon

---

[6]        Interestingly, the Love court explicitly noted:

> The law is clear that "the proper focus of a reviewing court is on the reasons given by the (administrative authority) and not on reasons that may come to light if and when a court rummages throughout the record in an effort to reconstruct on what basis the (administrative authority) might have decided the matter."

Id. (citing United States ex rel. Checkman v. Laird, 469 F.2d 773, 783 (2d Cir. 1972)).  This principle is particularly true where, as here, the Assistant Secretary's rationale given in support of the decision is sparse and conclusory.

a military review board's decision that was rendered in violation of the plaintiff's due process rights and entitlements under the applicable military regulations); <u>Grimm v. Brown</u>, 449 F.2d 654, 655-56 (9th Cir. 1971) (affirming the district court's voiding of a discharge decision until the denial of "a fair and impartial hearing" by the military review board was cured).

The District of Columbia Circuit Court's decision in <u>VanderMolen v. Stetson</u> is instructive. In that case, the Circuit Court determined that because the Air Force review board's findings stood to affect the former service member's status in the military, and in fact ultimately did, he was entitled to several due process rights under applicable Air Force regulation, which had been denied. 571 F.2d at 625-27. Having not been accorded those rights by his review board, the board's decision could not serve as the basis for his subsequent discharge. <u>Id.</u> The same is true in this case, as the procedural deficiencies alleged by the plaintiff render the Secretary's decision unworthy of any deference and therefore must be rejected by this Court on the record currently before it.

The Court is mindful that its scope of review is limited when considering challenges to agency action, however, given that the Board's recommendation was derived from a process that in several respects was procedurally at odds with the Academy's own regulations, thus subjecting it to doubts as to its trustworthiness, <u>see</u> <u>MCI Worldcom, Inc.</u>, 163 F. Supp. 2d at 37, and given that the Assistant Secretary made no factual findings detailing either why he agreed with the Board's rationale or why he came to the same conclusion upon an entirely independent ground for disenrolling the plaintiff, <u>D&F Afonso Realty Trust</u>, 216 F.3d at 1195, the Assistant Secretary's decision cannot withstand even the Court's limited scrutiny. Specifically, the Court is unable to find harmless the procedural error that occurred when the Dean of Admissions was

absent from the Board meeting and therefore unable to adequately serve as its secretary and certify the accuracy of the Board's minutes, including that all Board members were in attendance to render a unanimous decision.  Nor can the Court find that the Secretary's reaffirmance decision is adequately supported given that it is devoid of any factual findings.

## IV.  CONCLUSION

For the reasons set forth above, the Court must grant the plaintiff's motion and deny the defendant's cross-motion for summary judgment on the grounds that the Dean of Admissions, as Secretary for the Board, cannot adequately verify the Board's constitution and the Assistant Secretary failed to provide the factual findings for his decision, and remand the matter to the Secretary for a determination in accordance with this opinion.  And in light of the Court's findings that there were procedural errors in the underlying proceedings, resulting in this matter being remanded to the Secretary, the Court will deny both parties' motions on all other theories advanced in their motion.  Specifically, the parties' cross-motions are denied on the questions of whether the administrative record was adequate to serve as a basis for the Secretary's decision and whether the plaintiff had an opportunity to review and respond to the adverse information considered by the Assistant Secretary on behalf of the Secretary.[7]  Likewise, based on the foregoing conclusions, the Court need not at this time determine the remaining issue presented to

---

[7]     The naval regulations state that the Board must consider any material that the plaintiff presents to it.  A.R. at 00477-78 (Article IV(B) states that the Board "will examine the entire record forwarded by the Commandant of Midshipmen, and such other evidence as the midshipman concerned desires to present to the Board or the Board desires to hear." (emphasis added)).  Therefore, under the Court's reading of this provision, if upon issuance of this Memorandum Opinion, the Secretary were to remand his decision to the Board for a second recommendation instead of simply rendering his decision again with the supporting analysis that the Court found lacking, the plaintiff could resubmit any additional documents to the Board for its consideration pursuant to the regulations.

it, namely, whether the Secretary has properly required the plaintiff to reimburse the Academy

for the costs of his education.  A determination on that issue must be reserved for another time.[8]

_____/s/_____
Reggie B. Walton
United States District Judge

---

[8]     An Order consistent with the Court's ruling was issued on September 30, 2009.